LAW OFFICES OF JAMES W. SPERTUS
James W. Spertus (SBN 159825)
Ezra D. Landes (SBN 253052)
Amy M. Hinkley (SBN 274571)
1990 South Bundy Dr., Suite 705
Los Angeles, California  90025
Telephone: (310) 826-4700
Facsimile:  (310) 826-4711
jim@spertuslaw.com
ezra@spertuslaw.com
amy@spertuslaw.com

Attorneys for Plaintiff Robert A. Rizzo

Law Offices of James W. Spertus
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. RIZZO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation, and CHARTIS CLAIMS, INC., a Delaware corporation.<br><br>Defendants. | Case No. CV-12-04347-DMG (FMOx)<br><br>Hon. Dolly M. Gee<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        September 21, 2012<br>Time:        2:00 p.m.<br>Crtrm:      7 |

TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 21, 2012 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 7 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable Dolly M. Gee, Plaintiff Robert A. Rizzo ("Mr.

1   Rizzo") will and hereby does move the Court, pursuant to Rule 56 of the Federal

2   Rules of Civil Procedure, for partial summary judgment with regard to the issue

3   of whether Defendant The Insurance Company of the State of Pennsylvania

4   ("ICSOP") has a duty to defend Mr. Rizzo in various civil and criminal cases

5   now pending in Los Angeles Superior Court ("LASC").  The parties stipulated

6   that this motion may be heard with the minimum twenty-eight (28) days notice.

7   (Stipulation of Undisputed Material Facts ("Stipulation") (concurrently filed),

8   ¶ 25).

9                    **MOTION FOR SUMMARY JUDGMENT**

10          Pursuant to Federal Rules of Civil Procedure, Rule 56, Mr. Rizzo hereby

11   moves this Court for an Order granting partial summary judgment in Mr. Rizzo's

12   favor with respect to four separate issues:

13          1.   Whether ICSOP has a duty to defend Mr. Rizzo against the Attorney

14               General of the State of California's Civil Action against Mr. Rizzo

15               (LASC Case No. BC445497);

16          2.   Whether ICSOP has a duty to defend Mr. Rizzo against the City of

17               Bell's Cross-Complaint against Mr. Rizzo (LASC Case No.

18               BC445497);

19          3.   Whether ICSOP has a duty to pay defense costs associated with Mr.

20               Rizzo's defense of the Los Angeles County District Attorney's Office's

21               Criminal Actions against Mr. Rizzo (LASC Case Nos. BA376026,

22               BA377197 and BA382701); and,

23          4.   Whether ICSOP has a duty to pay defense costs associated with Mr.

24               Rizzo's Cross-Complaint against the City (LASC Case No.

25               BC445497).

26          This Motion is based upon this Notice of Motion and Motion, the attached

27   Memorandum of Points and Authorities, Mr. Rizzo's concurrently filed

28   Statement of Uncontroverted Facts and Conclusions of Law, the Stipulation of

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

ii.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

1  Undisputed Material Facts, the Court's file in this matter, and such other oral and

2  documentary evidence as may be presented at the hearing on this Motion.

3      This Motion is further made following a conference of counsel pursuant to

4  L.R. 7-3, which occurred on July 3, 2012, July 23, 2012 and August 1, 2012.

5  Dated:   August 24, 2012          LAW OFFICES OF JAMES W. SPERTUS

6

7                                      By:    /S_____

8                                             James W. Spertus
                                               Ezra D. Landes
9                                             Amy M. Hinkley
                                               Attorneys for Plaintiff Robert A. Rizzo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

1
2

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS ...................................................... 3

    A.   THE UNDERLYING POLICY ................................................ 3

    B.   THE UNDERLYING ACTIONS ............................................. 5

        1.   The Civil Actions .................................................. 5

        2.   The Criminal Actions ............................................. 7

    C.   ICSOP'S AGREEMENT TO PROVIDE A DEFENSE AND ITS
        SUBSEQUENT WITHDRAWAL OF A DEFENSE ............................ 8

III. DISCUSSION .................................................................. 10

    A.   THE PARTIES' RESPECTIVE BURDENS ON THIS MOTION ...... 10

    B.   MR. RIZZO IS AN "INSURED" UNDER THE POLICY. ............ 15

    C.   THE AG'S CIVIL ACTION SEEKS MONEY DAMAGES ............. 18

    D.   THE CITY'S CROSS-COMPLAINT AGAINST MR. RIZZO
        SEEKS MONEY DAMAGES ................................................ 22

    E.   MR. RIZZO'S CROSS-COMPLAINT AGAINST THE CITY IS
        A "REASONABLE AND NECESSARY" EXPENSE ...................... 23

    F.   MR. RIZZO'S DEFENSE OF THE CRIMINAL ACTION IS A
        "REASONABLE AND NECESSARY" EXPENSE. ...................... 24

IV.  CONCLUSION ................................................................. 25

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

i.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

## <u>CASES</u>

*Aerojet-General Corp. v. Transport Indem. Co.*,
  17 Cal.4th 38 (1997)................................................2, 14, 23, 24

*Alma W. v. Oakland Unified Sch. Dist.*,
  *123 Cal.App.*3d 133 (1981)........................................................17

*B & E Convalescent Center v. State Compensation Ins. Fund*,
  8 Cal.App.4th 78 (1992)........................................................11, 22

*Braxton-Secret v. A.H. Robins Co.*,
  769 F.2d 528 (9th Cir. 1985)....................................................12

*Briggs v. Lawrence*,
  230 Cal.App.3d 605 (1991)........................................................18

*Buss v. Super. Ct. (Transamerica Ins. Co.)*,
  16 Cal.4th 35 (1997)............................................................3, 12

*Cal. Ins. Guarantee Assn. v. Wood*,
  217 Cal.App.3d 944 (1990)........................................................11

*Caliber One Indem. Co. v. Wade Cook Fin. Corp.*,
  491 F.3d 1079 (9th Cir. 2007)....................................................12

*City of Ontario v. Super. Ct. (Dept. of Transp.)*,
  12 Cal.App.4th 894 (1993)........................................................18

*CNA Casualty of Cal. v. Seaboard Surety Co.*,
  176 Cal.App.3d 598 (1986)........................................................11

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

ii.

*Downey Venture v. LMI Ins. Co.*,
   66 Cal.App.4th 478 (1998)..................................................................12

*Gray v. Zurich Ins. Co.*,
   65 Cal.2d 263 (1966)...............................................2, 4, 10, 13, 17, 23

*Horace Mann Ins. Co. v. Barbara B.*,
   4 Cal.4th 1076 (1993) ........................................................................11

*J.B. Aguerre, Inc. v. Am. Guarantee & Liability Ins. Co.*,
   59 Cal.App.4th 6 (1997)................................................................12, 22

*Jogani v. Super. Ct.*,
   165 Cal.App.4th 901 (2008).........................................................21, 22

*Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*,
   2004 WL 1737297 (N.D. Cal. 2004) ................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ......................................................................19

*Mary M. v. City of Los Angeles*,
   54 Cal.3d 202 (1991)..........................................................................17

*Md. Casualty Co. v. Nat. Am. Ins. Co.*,
   48 Cal.App.4th 1822 (1996)........................................................13, 18

*Mirpad, LLC v. Cal. Ins. Guarantee Assn.*,
   132 Cal.App.4th 1058 (2005)............................................................11

*Montrose Chem. Corp. v. Super. Ct.*,
   6 Cal.4th 287 (1993) ..........................................................................11

*NextG Networks, Inc. v. One Beacon Am. Ins. Co.*,
   2012 WL 440885 (N.D. Cal. Feb. 10, 2012) ...........................2, 14, 24

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

iii.

*Stanson v. Mott,*
  17 Cal.3d 206 (1976)...........................................................................2, 20, 21

*White v. County of Orange,*
  *166 Cal.App.3d 566 (1985)* ...................................................................17

## **STATUTES AND RULES**

Cal. Civ. Proc. Code § 526a (2012) ...................................................5, 8, 15

Cal. Gov't Code § 905(i) (2012) ................................................................18

Cal. Gov't Code § 935 (2012) ....................................................................18

Cal. Gov't Code § 995 (2012) ......................................................................7

Cal. Gov't Code § 1090 (2012)..................................................5, 6, 7, 15, 16

Cal. Gov't Code § 1097 (2012) ....................................................................7

Cal. Gov't Code § 6200(c) (2012) ..........................................................7, 16

Cal. Gov't Code § 945.4 (2012) ................................................................18

Cal. Gov't Code § 950.2 (2012) ................................................................18

Cal. Labor Code § 2802 (2012) ...................................................................7

Cal. Penal Code § 182(a)(1) (2012)..............................................................7

Cal. Penal Code § 424(a) (2012) ...........................................................7, 8, 16

Fed. R. Civ. Proc. Rule 56(a) ....................................................................12

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

iv.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Robert A. Rizzo ("Mr. Rizzo") is entitled to a defense from Defendant The Insurance Company of the State of Pennsylvania ("ICSOP") against various civil and criminal complaints now pending in Los Angeles Superior Court ("LASC").  On September 15, 2010, the Attorney General of the State of California (the "AG") filed a civil action against Mr. Rizzo alleging professional negligence and seeking damages.  The City of Bell (the "City") then filed a cross-complaint against Mr. Rizzo alleging similar misconduct, and to minimize his personal liability Mr. Rizzo filed his own cross-complaint against the City for a contractual and statutory defense and indemnification from the City for these actions.  (The three complaints are collectively referred to as the "Civil Actions").  In addition, the Los Angeles District Attorney's Office ("DA") filed separate criminal complaints against Mr. Rizzo (the "Criminal Actions") arising from the same facts at issue in the Civil Actions.

Mr. Rizzo tendered the Civil and Criminal Actions to ICSOP for a defense.  After initially agreeing to defend Mr. Rizzo against the Civil Actions, but refusing to defend the Criminal Actions, ICSOP subsequently withdrew its defense of the Civil Actions based solely on statements made by the AG in an opposition to Mr. Rizzo's demurrer to the AG's First Amended Complaint ("FAC").  The AG argued that it was not seeking to recover money damages from Mr. Rizzo, and ICSOP then withdrew its defense based solely on the ground that the AG's suit did not, therefore, potentially seek damages falling within the scope of the policy.  Based solely on the AG's arguments in opposition to Mr. Rizzo's demurrer, ICSOP withdrew its defense of the Civil Actions.  ICSOP's position that it has no duty to defend Mr. Rizzo is meritless because coverage is determined by the allegations in a complaint, not the arguments a party makes in a pleading designed to avoid demurrer.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1    The AG expressly alleges in its FAC that it is seeking money damages

2  from Mr. Rizzo resulting from his negligence.  The AG even argues in the same

3  demurrer relied upon by ICSOP to deny coverage that Mr. Rizzo "failed to

4  exercise due care in <u>approving</u> public expenditures, including . . . Spaccia and

5  Adams employment contracts," and that under *Stanson v. Mott*, 17 Cal.3d 206,

6  226-27 (1976), Mr. Rizzo "'may be subject to <u>personal liability</u> for improper

7  <u>expenditures</u> made in the absence of such due care.'"  (Stipulation of Undisputed

8  Material Facts ("Stipulation"), Ex. O, p.19, lns.22-23).[1]

9    ICSOP has a clear duty to defend Mr. Rizzo if the AG's FAC and the

10  City's Cross-Complaint could <u>potentially</u> result in the payment of money

11  damages by Mr. Rizzo.  *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966)

12  ("[T]he carrier must defend a suit which *potentially* seeks damages within the

13  coverage of the policy.").  The AG's and City's complaints expressly seek

14  money damages from Mr. Rizzo for his negligence, which triggers the duty to

15  defend.  Mr. Rizzo is also entitled to defense costs for the Criminal Actions

16  because the Criminal Actions are parallel proceedings that "amount to a

17  reasonable and necessary effort to avoid or at least minimize liability."  *Aerojet-*

18  *General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61 (1997); *see also NextG*

19  *Networks, Inc. v. One Beacon Am. Ins. Co.*, 2012 WL 440885 (N.D. Cal. Feb. 10,

20  2012) (holding that *Aerojet-General Corp.* extends to "legal fees" incurred for

21  plaintiff's participation in parallel administrative investigation if "reasonably

22  necessary to minimize liability in the civil actions").  Defense costs also include

23  legal fees incurred in connection with Mr. Rizzo's Cross-Complaint against the

24  City because Mr. Rizzo was obligated to file that declaratory relief claim to

25  minimize his liability in the Civil Actions.  Mr. Rizzo is entitled to summary

26  judgment with respect to all four of the issues raised in this Motion, and ICSOP

27

28

---

[1]    Page numbers in citations to exhibits refer to the page numbers in the original pleadings, not CM/ECF page numbers.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

must defend Mr. Rizzo in both the Civil and Criminal Actions "meaningfully . . . immediately . . . [and] entirely." *Buss v. Super. Ct. (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48-49 (1997).

## II.   STATEMENT OF FACTS

### A.   THE UNDERLYING POLICY.

In 1993, Mr. Rizzo became the Chief Administrative Officer ("CAO") for the City, and held that position until July 2010. (Statement of Uncontroverted Facts and Conclusions of Law ("UF") 1). At all times relevant to this Motion, there was a valid insurance contract between the City and ICSOP (UF 2) under which Mr. Rizzo was an insured. The policy triggered by the underlying tenders in the instant action is Policy No. 6907991, dated July 1, 2010 to July 1, 2011 (the "Policy"), which is a renewal of previously issued policies. (UF 3).

Under the Policy, the insured is the City and (1) "[t]hose individuals who were or now are elected or appointed officials of the [City], including members of its governing body or any other agencies, districts, authorities, committees, trustees, boards, commissions, or similar entity of the [City], while acting on behalf of the [City]" and (2) "[a]ny of [the City's] employees . . . while acting within the course and scope of their employment." (UF 4). ICSOP stipulates that Mr. Rizzo was an appointed official and employee of the City (UF 5), but ICSOP will not stipulate that the allegations alleged in the Civil and Criminal Actions <u>potentially</u> relate to conduct by Mr. Rizzo while Mr. Rizzo was acting within the course and scope of his employment. However, as set forth below in greater detail, <u>all</u> of the allegations alleged in the Civil and Criminal Actions relate to conduct by Mr. Rizzo occurring while Mr. Rizzo was acting within the course and scope of his employment by the City. (UF 6). Each cause of action asserted in both the Civil and Criminal Actions <u>expressly</u> alleges misconduct by Mr. Rizzo while he was acting in his "official capacity" and/or alleges acts that <u>only</u> create liability if performed by a public official acting in his official

3.

Law Offices of James W. Spertus

1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

capacity.  (*Id.*)  Mr. Rizzo would face no liability or exposure in either the Civil or Criminal Actions if he was not a public official acting in his official capacity. A private citizen would not face liability for doing the things Mr. Rizzo is alleged to have done.  If Mr. Rizzo did not qualify as an insured because he was not acting within the course and scope of his employment, then all of the underlying claims against Mr. Rizzo in both the Civil and Criminal Actions would fail as a matter of law.

Under the Policy, ICSOP must defend its insured against any claims or suits alleging a "wrongful act" by the insured, which is as an "error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance," "even if such claim or suit is groundless, false or fraudulent," and ICSOP must also defend any "employee benefit wrongful acts," which is a "negligent act, error, or omission in the administration of" an employee benefit program.  (UF 7).  ICSOP's duty to defend such claims or suits arises from multiple sources.  First, pursuant to Sections I.A.2 and I.A.3 of the Policy, ICSOP has a contractual duty to defend and indemnify Mr. Rizzo because under the Policy, the duty to indemnify "shall include defense costs." (*Id.*)  Second, even if the Policy's duty to indemnify did not expressly "include defense costs," ICSOP would still have an implied obligation by law to defend Mr. Rizzo pursuant to *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966) and its progeny.  Third, pursuant to Section I.B.1 of the Policy, ICSOP has an express duty to defend Mr. Rizzo against any claim or suit seeking damages covered by the Policy.  (*Id.*)

In its defense withdrawal letter, ICSOP argues that it has no duty to defend because the Civil Actions do not seek money damages.  The Policy contains an exclusion relevant to this issue: "We will not defend or pay under this Policy for claims or suits against you: . . .  EE. For injunctions, equitable relief, or any other form of relief other than the payment of money damages[.]"  (UF 8).  However,

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

4.

all of the complaints comprising the Civil Actions that allege wrongdoing by Mr. Rizzo expressly seek money damages, along with exemplary and punitive damages.  Not only is ICSOP wrong about its position regarding "money damages," but the Policy does not contain any exclusions disclaiming ICSOP's duty to defend covered allegations seeking punitive or exemplary damages.  (UF 9).  Because the operative complaints expressly seek covered damages, the basis for ICSOP's denial of a defense to Mr. Rizzo is meritless.

**B.    THE UNDERLYING ACTIONS.**

**1.    The Civil Actions.**

On September 15, 2010, the Attorney General of the State of California (the "AG") filed in Los Angeles Superior Court ("LASC") a civil action against Mr. Rizzo, the City of Bell, and seven other city officials for the City of Bell (LASC Case No. BC445497) (the "Civil Action").  (UF 10).  Mr. Rizzo and the other individual defendants were all sued "in their official and personal capacities."  (UF 11).  On November 4, 2010, Mr. Rizzo demurred to the Complaint, and the trial court sustained the demurrer with leave to amend.  On November 15, 2010, the AG filed a First Amended Complaint ("FAC").  The FAC consolidated two negligence causes of action pled in the original Complaint, but otherwise did not change the claims.  (UF 12).

The FAC alleged the following six causes of action against Mr. Rizzo: (1) Waste of Public Funds under California Civil Procedure Code section 526a; (2) Negligence; (3) and (4) Fraudulent Deceit; (5) Conflict of Interest under California Government Code section 1090; and (6) Breach of Fiduciary Duty and Violation of Public Trust.  (UF 13).  Each of these causes of actions requires the AG to prove that Mr. Rizzo was a public official acting in his official capacity when doing the things alleged to be wrongful.

On November 24, 2010, in the Civil Action, the City of Bell filed a Cross-Complaint against Mr. Rizzo.  The City's Cross-Complaint alleged the following

5.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1  causes of action: (1) Intentional Misrepresentation; (2) Constructive Fraud;

2  (3) Breach of Fiduciary Duty; (4) Negligence; (5) Violation of Government Code

3  § 1090; (6) Declaratory Relief; and (7) Unjust Enrichment.  (UF 14).  The City

4  subsequently amended its Cross-Complaint three times after demurrers filed by

5  Mr. Rizzo were each sustained with leave to amend.  (The City's original cross-

6  complaint and its amended versions are collectively referred to as the "City's

7  Cross-Complaint.").  (*Id.*)  Like the AG, the City must prove as an element of

8  these causes of action that Mr. Rizzo was a public official acting in his official

9  capacity when doing the things alleged to be wrongful.  All of the allegations

10  alleged in the AG's FAC and the City's Cross-Complaint arise out of covered

11  "wrongful acts" or "employee benefit wrongful acts."  (UF 15).

12      The AG's FAC sought payment of money damages by Mr. Rizzo.  (UF

13  16).  Specifically, with regard to the AG's First Cause of Action for Waste of

14  Public Funds, the AG alleged that it was seeking to hold Mr. Rizzo personally

15  liable to pay an amount of money "to be proven at trial" that Mr. Rizzo allegedly

16  "wastefully expended" when Mr. Rizzo approved "excess compensation to [City

17  of Bell employees] Spaccia and Adams."  (UF 17).  With regard to the AG's

18  Second Cause of Action for Negligence, the AG expressly alleged that "Rizzo

19  failed to exercise due care and reasonable diligence in approving the employment

20  contracts of Spaccia and Adams," and that Mr. Rizzo is personally "liable for

21  damages to the City" as a result of his alleged approval of these expenditures.

22  (UF 18).  With regard to the AG's Third through Sixth Causes of Action, the AG

23  alleged that Mr. Rizzo's actions caused damages to the City and to its citizens.

24  (UF 19).  With regard to all causes of action, in its prayer for relief, the AG

25  sought "[a]n order requiring defendants, jointly and severally, to make restitution

26  to the City for compensation they approved and/or accepted, and which was in

27  excess of what was reasonable and appropriate, in an amount to be proven at

28  trial."  (UF 20).  The AG's FAC also sought "exemplary damages" to be paid by

6.

Mr. Rizzo.  (UF 21).  Meanwhile, the City's Cross-Complaint expressly seeks to recover from Mr. Rizzo general, special, incidental, consequential, and punitive damages.  (UF 22).

On October 15, 2010, in the Civil Action, Mr. Rizzo filed a Cross-Complaint for declaratory relief against the City.  (UF 23).  Mr. Rizzo asserted three causes of action against the City for a defense of the Civil and Criminal Actions based on his employment contract with the City and his statutory rights pursuant to California Government Code section 995 and California Labor Code section 2802.  (*Id.*)  Mr. Rizzo filed his Cross-Complaint against the City in order to minimize Mr. Rizzo's personal liability in the Civil and Criminal Actions. When ICSOP initially agreed to defend Mr. Rizzo, it agreed to include Mr. Rizzo's Cross-Complaint within the scope of the defense provided.  (UF 31).

## 2.    The Criminal Actions.

On September 20, 2010, October 20, 2010 and March 29, 2011, the Los Angeles District Attorney's Office ("DA") filed complaints against Mr. Rizzo (LASC Case Nos. BA376026, BA377197 and BA382701) (the "Criminal Actions").  (UF 24).  The complaints allege violations of: (1) Penal Code § 424(a) (Misappropriation of Public Funds); (2) Government Code §§ 1090 and 1097 (Conflict of Interest); (3) Government Code § 6200(c) (Falsification of Public Records by an Official Custodian); and (4) Penal Code § 182(a)(1) (Conspiracy to Misappropriate Public Funds (§ 424(a))).  (UF 25).

Most of the claims asserted against Mr. Rizzo in the Criminal Actions are based on the same facts asserted by the AG and/or the City in the Civil Actions. (UF 26).  Of the 64 claims asserted against Mr. Rizzo in the Criminal Actions, 57 claims are based on the same facts asserted by the AG and/or the City in the Civil Actions.  (UF 27).

Specifically, the Criminal and Civil Actions both allege that Mr. Rizzo wrongfully made loans of public money to City employees.  (Stipulation, Ex. D,

7.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel.: 310-826-4700; Fax: 310-826-4711

¶ 33; Ex. E, ¶ 33; Ex. G, ¶ 1; Ex. I, ¶¶ 11-53; Ex. J, ¶¶ 11-54).  Additionally, the Criminal and Civil Actions, under California Penal Code section 424(a) and California Civil Procedure Code section 526a respectively, both seek to hold Mr. Rizzo liable for waste of public funds for the alleged payment of unauthorized compensation.  (Stipulation, Ex. B, ¶¶ 22, 93-94; Ex. C, ¶¶ 22, 93-94; Ex. I, ¶ 1; Ex. J, ¶ 1; Ex. L, ¶ 1, 5).  The Criminal and Civil Actions also both seek to hold Mr. Rizzo liable for alleged salary increases caused by Addendum Nos. 5, 6 and 7 to Mr. Rizzo's employment contract, which are alleged to be fraudulent contract addendums, and both the Criminal and Civil Actions allege that Mr. Rizzo falsified public records in response to a Public Records Act request.  (Stipulation, Ex. B, ¶¶ 80-85, 119-22; Ex. C, ¶¶ 80-85, 119-23; Ex. D, ¶¶ 12-14, 17; Ex. E, ¶¶ 12-14, 17; Ex. F, ¶¶ 7, 11, 13-15, 17, 19-26, 28; Ex. G, ¶¶ 9, 14-15, 17, 20-22, 26-28, 34, 37, 42, 47; Ex. I, ¶¶ 1-5; Ex. J, ¶¶ 1-5; Ex. L, ¶ 1).  Separately, in its Cross-Complaint, the City confirms that it will rely on all of the criminal charges against Mr. Rizzo, and any subsequent convictions, as evidence against Mr. Rizzo to prove its cross-claims, and the City sets forth in detail in its Cross-Complaint all of the criminal charges filed against Mr. Rizzo in the Criminal Actions.  (Stipulation, Ex. G, ¶ 19).  The defense of the Criminal Actions is inextricably intertwined with the defense of the Civil Actions.

## C.    ICSOP'S AGREEMENT TO PROVIDE A DEFENSE AND ITS SUBSEQUENT WITHDRAWAL OF A DEFENSE.

In 2010, Mr. Rizzo tendered the Civil Actions and the Criminal Actions to ICSOP for a defense.  (UF 28).  On December 16, 2010, ICSOP informed Mr. Rizzo in writing that ICSOP would defend Mr. Rizzo against the Civil Actions, including Mr. Rizzo's Cross-Complaint against the City.[2]  (UF 29).  ICSOP

---

[2]    The parties have stipulated that former defendant Chartis was ICSOP's agent and that the acts of Chartis are binding on ICSOP.  (*See* Order re: Stipulation for Dismissal (Doc No. 14), p.2).

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

8.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

informed Mr. Rizzo, however, that it would not defend Mr. Rizzo against the Criminal Actions on the ground that the "Criminal Action is not a 'claim' or 'suit' as those terms are defined in the policies." (*Id.*; *see also* Stipulation, Ex. M, p.9).

On April 28, 2011, ICSOP withdrew its defense of the Civil Actions based on "Exclusion EE" of the Policy. (UF 30). ICSOP informed Mr. Rizzo that the AG, in responding to Mr. Rizzo's demurrer to the AG's FAC, asserted that "[t]he claims alleged in the complaint are not claims for money or damages subject to the Tort Claims Act" since the AG is "seeking restitution of excessive and wasteful compensation." (UF 31). Based on this argument alone, which ignores the express allegations of the complaint and mislabels as "restitution" express claims for "money damages," ICSOP took the position that the AG's "statements in opposition to Rizzo's demurrer clearly indicate the State has no claim that would be covered by the ICSOP policy" since "all of the State's claims are for equitable relief including restitution." (UF 32). ICSOP's April 28, 2011 withdrawal letter provided no explanation for withdrawing coverage for the defense of the City's Cross-Complaint and for Mr. Rizzo's Cross-Complaint against the City. (UF 33). The withdrawal letter simply ignored these related proceedings and terminated ICSOP's defense of these components of the Civil Actions without any explanation whatsoever.

On May 2, 2011, after ICSOP withdrew its defense, the trial court sustained without leave to amend Mr. Rizzo's demurrer to the AG's FAC with respect to the First through Fourth and Sixth Causes of Action, and sustained with leave to amend Mr. Rizzo's demurrer to the Fifth Cause of Action. The AG elected not to amend the Fifth Cause of Action and, on July 26, 2011, the trial court dismissed the AG's FAC in its entirety. (UF 34). Mr. Rizzo prevailed in his efforts to get the AG's complaint dismissed for the very reasons that triggered coverage in the first place despite the arguments advanced by the AG in

9.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1  opposition to the demurrer that ICSOP had relied upon to deny coverage, yet

2  ICSOP still refused to provide a defense.

3    On September 26, 2011, the AG filed a Notice of Appeal of the July 26,

4  2011 Order of Dismissal of the FAC.  (UF 35).  On September 28, 2011, Mr.

5  Rizzo's counsel separately tendered the appeal to ICSOP for a defense of the

6  appeal.  (UF 36).  Mr. Rizzo needed to defend the trial court's order dismissing

7  the AG's case in order to avoid a reversal of the order that would result in the

8  revival of the AG's dismissed claims.  On October 7, 2011, ICSOP denied

9  coverage for the appeal on the ground that, even if the AG could revive its

10 claims, the claims "are not potentially covered by the policy" since "the claims

11 are for restitution and not for damages."  (*Id.*)  Again, this assertion that the

12 claims were for restitution was made solely in the AG's opposition to Mr.

13 Rizzo's demurrer, which opposition was not even successful.  Separately, the

14 assertion ignored the express allegations in the AG's underlying complaint.

15    On June 6, 2012, the AG filed its opening brief on appeal (UF 37) and, on

16 July 27, 2012, ICSOP changed its prior determination and informed Mr. Rizzo

17 that, although ICSOP maintains that there is no duty to defend the AG's Civil

18 Action or the appeal, ICSOP would nonetheless, under a reservation of rights,

19 agree to defend the appeal only.  (UF 38).

20 **III.  DISCUSSION**

21    **A.   THE PARTIES' RESPECTIVE BURDENS ON THIS**

22       **MOTION.**

23    An insurer "must defend a suit which *potentially* seeks damages within the

24 coverage of the policy."  *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966).  A

25 defense is excused only when "the third party complaint can *by no conceivable*

26 *theory raise a single issue* which could bring it within the policy."  *Id.* at 275

27 n.15 ("Modern procedure has made for so much greater flexibility or plasticity in

28 pleading that this rule must be applied with extreme care to include all the

10.

potentialities of the pleading and the policy coverage."). "[C]ourts do not examine only the pleaded word but the potential liability created by the suit." *Id.* at 276 (holding that "duty to defend manifest at the outset" where "action presented the potentiality of a judgment based upon nonintentional conduct [i.e. negligent conduct] . . . [which] would fall within the indemnification coverage").

"[T]he duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is not covered." *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 606 (1986). "It is settled that 'the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it *cannot*.'" *Mirpad, LLC v. Cal. Ins. Guarantee Assn.*, 132 Cal.App.4th 1058, 1068 (2005) (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 289 (1993)). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299-300; *see also Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993); *B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 99-100 (1992) ("If the coverage provisions in any policy of insurance are unclear or the exclusions are ambiguous, so that a reasonable purchaser of the policy would not realize that the risk is excluded and thus would reasonably expect the insurer to furnish a defense, a defense is required."). The duty to defend even extends to those situations where "the complaint might be amended to give rise to a liability that would be covered under the policy." *Id.* at 299. "[A] bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty." *Id.* at 300.

"Although insurers and insured routinely speak of the insurer's duty to 'indemnify and defend' as if the duties were coextensive, it is well settled that the duty to defend is broader than the duty to indemnify." *Cal. Ins. Guarantee*

11.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

*Assn. v. Wood*, 217 Cal.App.3d 944, 947 (1990). A bar on indemnification does not affect the insurer's obligation to provide a defense to such claims. *Downey Venture v. LMI Ins. Co.*, 66 Cal.App.4th 478, 487 (1998). Additionally, even though "California public policy bars *indemnification* against punitive damage awards . . . the insurer's obligation to *defend* extends to punitive damage claims, provided the policy does not conspicuously disclaim this duty." *J.B. Aguerre, Inc. v. Am. Guarantee & Liability Ins. Co.*, 59 Cal.App.4th 6, 14 (1997).

Finally, the claims for which there is potential coverage need not predominate to trigger the insurer's duty to defend. *Id.* at 1084 ("We look not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy."). If even a single claim in a multi-count complaint is potentially covered, the insurer must defend the entire action. *Buss v. Super. Ct. (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48-49 (1997) ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not.").

The parties agree that the material facts in this case are undisputed. (FRCP, Rule 56(a)). The parties further agree that no additional facts related to the duty to defend issue need to be developed through discovery. (Stipulation, ¶ 25). If the undisputed facts support Mr. Rizzo's right to a defense, then partial summary judgment on the issues identified in this Motion is appropriate. *See Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1085 (9th Cir. 2007) ("Summary judgment is appropriate where, as here, the undisputed evidence supports only one reasonable inference.") (citing *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (holding that "where the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment").

12.

The parties stipulate that at all relevant times there was a valid insurance contract between ICSOP and the City.  (UF 2).  Also among the undisputed evidence are the complaints filed against Mr. Rizzo.  The only "reasonable inference" supported by these complaints is that the allegations in them potentially relate to conduct by Mr. Rizzo while Mr. Rizzo was acting as a public official within the course and scope of his employment and that the complaints potentially seek damages covered by the Policy.  Consequently, ICSOP has a clear duty to defend Mr. Rizzo.

On a motion for summary judgment on the insurer's duty to defend, the insurer must negate coverage as a matter of law:

> Once a prima facie showing is made that the underlying action fell within coverage provisions, an insurer may defeat a motion for summary judgment only by producing undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy.  Evidence that merely 'placed in dispute whether the insured's actions would eventually be determined not to constitute an occurrence or fall within one or more exclusions contained in the policies' is insufficient to defeat the insured's right to summary judgment.

*Md. Casualty Co. v. Nat. Am. Ins. Co.*, 48 Cal.App.4th 1822, 1832 (1996).

Mr. Rizzo's burden on this Motion is only to make a prima facie showing that the complaints filed by the AG and the City against Mr. Rizzo contain language or claims that create a possibility that Mr. Rizzo is an insured and can be held liable for payment of money damages.  If Mr. Rizzo meets his burden, then ICSOP must prove in opposition to this Motion that the AG's and City's respective complaints "can *by no conceivable theory raise a single issue*" that will result in Mr. Rizzo paying money damages that fall within the coverage of the Policy.  *Gray*, 65 Cal.2d at 275 & n.15.

Once established that Mr. Rizzo is potentially an insured and that the AG's and City's complaints potentially seek money damages, Mr. Rizzo would also be entitled to costs associated with Mr. Rizzo's Cross-Complaint against the City and Mr. Rizzo's defense of the Criminal Actions.  As a matter of law, Mr. Rizzo

13.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1    is entitled to defense costs associated with any parallel proceedings if they

2    "amount to a reasonable and necessary effort to avoid or at least minimize

3    liability."  *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61

4    (1997) (duty to defend extended to insured's site investigation expenses

5    undertaken to minimize liability); *see also NextG Networks, Inc. v. One Beacon*

6    *Am. Ins. Co.*, 2012 WL 440885 (N.D. Cal. Feb. 10, 2012) (holding that *Aerojet-*

7    *General Corp.* extends to "legal fees" incurred for plaintiff's participation in

8    parallel administrative investigation, which involved appearances at public

9    hearings and replying to commission's specific questions, because the

10   investigation would determine appropriate remedies for proven violations, and

11   rejecting insurer's argument "that because the CPUC proceeding is not a 'suit'

12   for 'damages' under the terms of the policy, it is not covered even though it

13   'shares facts' with civil actions for which a defense has been tendered").  In

14   *NextG Networks*, the court expressly held that "[e]xpenses assumed by an

15   insured are 'potentially recoverable even though they may serve more than one

16   objective.'  The costs of participating in the CPUC investigation may serve to

17   both satisfy the agency *and* minimize potential liability in the civil actions."  *Id.*

18   at *3; *see also Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*, 2004 WL

19   1737297, at *7 (N.D. Cal. 2004) (costs of prosecuting a patent infringement

20   claim are reasonable and necessary to minimize liability in a related

21   disparagement case where allegedly disparaging statements concerned

22   infringement of the patent).  The test for determining whether the costs incurred

23   are "reasonable and necessary" is whether the "expenses would be incurred

24   against liability by a reasonable insured under the same circumstances."  *Aerojet-*

25   *General Corp.*, 17 Cal.4th at 63.  Clearly a reasonable insured in Mr. Rizzo's

26   circumstances would defend the Criminal Actions to minimize liability in the

27   Civil Actions.

28

14.

**B.    MR. RIZZO IS AN "INSURED" UNDER THE POLICY.**

All claims raised in the Civil and Criminal Actions allege that Mr. Rizzo abused the powers of his office while serving as CAO for the City.  Each and every allegation in the complaints underlying the Civil and Criminal Actions alleges that Mr. Rizzo was a public official acting within the course and scope of his employment when he purportedly did the things alleged to be wrongful.

The AG's FAC alleged six causes of action relating entirely to Mr. Rizzo's conduct while acting in his official capacity for the City.  The AG filed the first cause of action for waste of public funds under Code of Civil Procedure section 526a, which creates a cause of action for waste "against any *officer* thereof . . . *acting in its behalf*."  *See* Cal. Civ. Proc. Code § 526a (2012) (emphasis added).  The fifth cause of action for conflict of interest under Government Code section 1090 can only be sustained if a *city officer* became "financially interested in any contract *made by them in their official capacity* . . . ."  *See* Cal. Gov't Code § 1090 (2012) (emphasis added).  The sixth cause of action for breach of fiduciary duty and violation of public trust requires, as an element of the charged offense, that Mr. Rizzo be an officer who owes a duty to the citizens he serves.  All other causes of action in the Attorney General Complaint similarly allege wrongdoing by Mr. Rizzo as a public official acting within the course and scope of his employment.  Specifically, the AG alleged that: (1) Mr. Rizzo "breached [his] dut[y] of due care in authorizing employment contracts;" (2) Mr. Rizzo "assist[ed] in the drafting of Ordinance No. 1158"; and (3) Mr. Rizzo "caused the false and incomplete salary information to be published to the public by publishing it in a memorandum to be distributed to the public."  (Stipulation, Ex. C, ¶¶ 107, 116, 120).

Like the AG's allegations, all of the allegations made by the City in its Cross-Complaint similarly allege that Mr. Rizzo was a public official acting in his official capacity when doing the things alleged to be wrongful.  For example,

15.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

the City alleged wrongdoing by Mr. Rizzo in "publishing . . . Ordinance No. 1158" and "act[ing] to modify the City retirement plan." (Stipulation, Ex. D, ¶ 17(c)-(d)). The City expressly alleged that "[a]s a *public officer* for the City, Rizzo was charged with and held a public trust and, as a result, owed a fiduciary duty to the City and its citizens." (*Id.* at ¶ 23). The City also alleged that Mr. Rizzo violated Government Code section 1090, which can only be violated if a city officer becomes "financially interested in any contract *made by them in their official capacity* . . . ." *See* Cal. Gov't Code § 1090 (2012) (emphasis added).

Separately, <u>all</u> of the allegations in the complaints filed by the DA specifically allege that Mr. Rizzo was a public official acting in his official capacity when doing the things alleged to be wrongful. For example, in order to prove a violation of Penal Code section 424(a), the DA <u>must</u> prove that Mr. Rizzo was an officer acting in his official capacity because the statute only applies to public officials: "each *officer* of this state, or of any county, city, town or district of this state, and every other person charged with the receipt, safekeeping, transfer or disbursement of public moneys . . . ." *See* Cal. Penal Code § 424(a) (2012) (emphasis added). Likewise, Government Code section 1090 requires that a city officer become financially interested in any contract *made by them in their official capacity*, and the DA expressly alleged that Mr. Rizzo "became financially interested in a contract made by him *in his official capacity*." *See* Cal. Gov't Code § 1090 (2012) (emphasis added). Finally, Government Code section 6200(c) only applies to "*an officer* having custody of a record, map . . . ." *See* Cal. Gov't Code § 6200(c) (2012) (emphasis added). Thus, in order for the DA to prove any of the criminal charges filed against Mr. Rizzo, the DA must first prove that Mr. Rizzo was a public official acting within the scope of his employment with the City, and the DA expressly made such allegations in each and every count now pending against Mr. Rizzo. (Stipulation, Ex. I, ¶¶ 1-53; Ex. J, ¶¶ 1-54; Ex. K, ¶¶ 1-2; Ex. L, ¶¶ 1-8).

16.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

Because Mr. Rizzo's authority of office was required to commit the wrongs alleged in the various complaints, he was acting "within the course and scope of his employment" while doing those things alleged to be wrongful.  *See*, *e.g.*, *White v. County of Orange*, 166 Cal.App.3d 566, 571 (1985) (where a police officer was charged with rape and the court held that "[t]he officer's method of dealing with this authority is certainly incidental to his duties; indeed, it is an integral part of them"); *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 209, 221 (1991) ("Even tortious conduct that violates an employee's official duties or disregards the employer's express orders can be within the scope of employment.").  In *White* and *Mary M.*, the courts held that, because the wrongful acts (including a rape committed by an on-duty police officer) were "incidental to [the] duties" of the employee, the wrongful acts were within the course and scope of the employee's employment.  *See also Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal.App.3d 133, 139 (1981) ("In assessing whether an employee's wrongful act was required by or incidental to his duties, the law defines the occupational duties *broadly*.").

Mr. Rizzo could *only* commit the torts and crimes alleged in the complaints if he were a public employee acting within the course and scope of his employment, and each plaintiff must prove that Mr. Rizzo was acting in that official capacity in order to prevail on the causes of action.  Mr. Rizzo is, therefore, an insured under the City's contract with ICSOP.  For purposes of the instant Motion, however, the only question is whether Mr. Rizzo is "potentially" an insured, and ICSOP certainly cannot prove that "by no conceivable theory" can Mr. Rizzo be an insured under the Policy.  *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 n.15 (1966).  ICSOP must therefore defend Mr. Rizzo against any actions that potentially seek damages covered by the Policy.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## C.   THE AG'S CIVIL ACTION SEEKS MONEY DAMAGES.

The AG's complaint in the AG's Civil Action expressly seeks money damages from Mr. Rizzo.  (UF 16-21).  ICSOP withdrew its defense, however, based solely on the following two statements asserted by the AG in its opposition to Mr. Rizzo's demurrer to the AG's FAC:  (1) "The claims alleged in the complaint are not claims for money or damages subject to the Tort Claims Act;" and (2) "[T]he People are seeking restitution of excessive and wasteful compensation and other relief not subject to the presentation of a tort claim." (Stipulation, Ex. Q, p.3, ¶ 4).  Neither of these statements "conclusively eliminate the potential for coverage under the policy."  *Md. Casualty Co.*, 48 Cal.App.4th at 1832.  Mr. Rizzo argued in his demurrer to the AG's FAC that the AG failed to comply with the claims presentation requirement of the California Governmental Tort Claims Act, under which suits for money or damages cannot be brought against a public entity or a public employee unless a formal claim has been presented to the entity and it has been rejected.  Cal. Gov't Code §§ 945.4, 950.2 (2012); *Briggs v. Lawrence*, 230 Cal.App.3d 605, 613 (1991).[3]

In response to Mr. Rizzo's demurrer, in an ultimately unsuccessful effort to salvage its FAC, the AG asserted numerous arguments including the argument that the "restitution" the AG was seeking to recover from Mr. Rizzo did not qualify as "'money or damages' as that phrase is used in the Act."  (Stipulation, Ex. O, p.11, ln.16).  In this argument, the AG made the two statements subsequently relied upon by ICSOP to withdraw its defense of the AG case.  The allegations in the FAC, however, <u>confirm</u> that the damages sought by the AG are

---

[3]   Although under Government Code section 905(i), the AG's claims would normally be exempt from compliance with the Tort Claims Act, Mr. Rizzo argued that the AG was not exempt under section 905(i) because an exception to 905(i) set forth in section 935 gives precedence to the procedures set forth in the City of Bell's charter over section 905(i)'s exemption.  *See* Cal. Gov't Code § 935 (2012); *City of Ontario v. Super. Ct. (Dept. of Transp.)*, 12 Cal.App.4th 894, 898 (1993).  The City's charter required that the AG first present its claim for money damages to the City before filing the complaint.

18.

1   not "restitution damages," regardless of the label applied by the AG in an effort

2   to salvage the claims.  The AG expressly alleges as part of its damage claim that

3   it is seeking payment of money damages by Mr. Rizzo for compensation paid to

4   others that was allegedly "approved" by Mr. Rizzo.  (UF 17, 18).  The AG is

5   seeking to recover from Mr. Rizzo an amount equivalent to those funds that Mr.

6   Rizzo allegedly "wastefully expended" (*id.*), and is not attempting to recover

7   through the Civil Action only specific money or property in Mr. Rizzo's

8   possession that unjustly enriched Mr. Rizzo.  In other words, the damages sought

9   by the AG are not "restitution" damages, they are "money damages."

10      Restitution is the return of specific funds in defendant's possession in

11   which plaintiff has an "ownership interest" or a "vested interest."  *Korea Supply*

12   *Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) ("[P]laintiff

13   described its requested remedy as 'restitution.'  This term does not accurately

14   describe the relief sought by plaintiff. . . .  The object of restitution is to restore

15   the status quo by returning to plaintiff funds in which he or she has an ownership

16   interest. . . . The remedy sought by plaintiff in this case is not restitutionary

17   because plaintiff does not have an ownership interest in the money it seeks to

18   recover from defendants.").  The money that the AG seeks to recover from Mr.

19   Rizzo is not money in Mr. Rizzo's possession in which the AG (or any third

20   party) has an ownership or vested interest.  It is not money that could be

21   "returned" by Mr. Rizzo since any money that was allegedly "wastefully

22   expended" by Mr. Rizzo when he "approved" compensation to be paid to others

23   (namely, Spaccia and Adams as expressly alleged in the FAC) is in the

24   possession of those other individuals.  The liability that Mr. Rizzo faces from the

25   AG's FAC would require Mr. Rizzo to pay "money damages," not "return

26   money."

27      Remarkably, in the exact same opposition that contains the statements now

28   relied upon by ICSOP to deny coverage, the AG confirms that the damages it

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

19.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

seeks are not "restitution damages." In arguing that the AG stated a valid claim for negligence, the AG asserted that Mr. Rizzo "failed to exercise due care in approving public expenditures, including . . . Spaccia and Adams employment contracts," and that under *Stanson v. Mott*, 17 Cal.3d 206, 226-27 (1976), Mr. Rizzo "may be subject to <u>personal liability</u> for improper <u>expenditures</u> made in the absence of such due care.'" (Stipulation, Ex. O, p.19, lns.22-23). The AG expressly argued in its opposition that "the complaint therefore alleges sufficient facts to state a claim under the rule of *Stanson v. Mott*." (*Id.* at p.20, lns.1-2).

In *Stanson*, plaintiff filed a taxpayer suit against Mott, Director of the California Department of Parks and Recreation, alleging that Mott "had authorized the department to expend more than $5,000 of public funds to promote passage of [a] bond issue. Asserting the illegality of such use of public funds, plaintiff sought a judgment that would require Mott personally to repay the funds to the state treasury." *Id.* at 209. The California Supreme Court held that Mott "may be held personally liable to repay expended funds . . . if he failed to exercise due care in authorizing the expenditure of the funds." The AG's "claim under the rule of *Stanson v. Mott*" is subject to only one interpretation: that the AG seeks to hold Mr. Rizzo personally liable for money damages for his alleged failure to exercise <u>due care in authorizing the expenditure</u> of funds. This is a claim for money damages, not for restitution.

For purposes of the instant Motion, however, the issue is not even whether the AG in fact seeks to hold Mr. Rizzo personally liable for money damages, but whether the complaint provides <u>any</u> potential for damages covered by the Policy and whether ICSOP can conclusively prove that Mr. Rizzo, "by no conceivable theory," can face liability for payment of money damages. The AG's own citation to *Stanson* conclusively establishes that Mr. Rizzo faces liability for money damages, and the AG's stated intent to recover the same damages sought

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  by the plaintiff in *Stanson* is dispositive of the entire issue and is fatal to

2  ICSOP's attempts to deny Mr. Rizzo a defense in all relevant actions.

3      Separately, setting aside for the moment the rule of *Stanson*, and the AG's

4  inconsistent positions in its opposition regarding its effort to recover damages,

5  and accepting the AG's erroneous "restitution" label as proper, the damages <u>still</u>

6  do not fall within "Exclusion EE."  The AG never asserted that its suit against

7  Mr. Rizzo was "[f]or injunctions, equitable relief, or any other form of relief

8  other than the payment of money damages," and "Exclusion EE" makes no

9  express reference to claims for "restitution."  None of the terms within

10 "Exclusion EE," such as "equitable relief" or "money damages," are defined

11 terms, and ICSOP unilaterally determined that any claim for restitution falls

12 within the undefined term "equitable relief" found in "Exclusion EE."  The April

13 28, 2011 defense withdrawal letter reads:  "[I]t has come to our attention that the

14 State has explained that it is not seeking money or damages from Rizzo; all of

15 the State's claims are for equitable relief including restitution."[4]  (Stipulation, Ex.

16 Q, p.1, ¶ 3).  ICSOP's withdrawal of coverage is based on the erroneous belief

17 that restitution is exclusively a form of equitable relief.  However, restitution is

18 neither exclusively equitable nor exclusively legal, and suits for payment of

19 money by way of restitution are treated as actions at law and not equity.  *Jogani*

20 *v. Super. Ct.*, 165 Cal.App.4th 901, 909-10 (2008) ("The courts of this state have

21 repeatedly explained that '[t]he fact that equitable principles are applied in the

22 action does not necessarily identify the <u>resultant relief</u> as equitable.'") (emphasis

23 added).  *Jogani* further held:

---

24

25 [4]     Additionally, the AG did not disavow that its claims were for "money or
   damages."  Rather, the AG merely asserted that its claims are not money or
26 damage claims "subject to the Tort Claims Act."  Separately, the AG never stated
   in its opposition to the demurrer that it was <u>exclusively</u> seeking restitution, and
27 the AG's vague and erroneous statements could just as easily be understood to be
   saying that the AG is seeking restitution among other damages, including money
28 damages and exemplary damages as expressly set forth in the Prayer for Relief.

21.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

> Defendants also contend that Jogani's quantum meruit claim is equitable because it seeks "restitution," which, according to defendants, is an equitable remedy.  We disagree. . . .  On the contrary, as this case illustrates, <u>restitution can be a legal, as opposed to equitable</u>, remedy. . . .  see generally Rest., Restitution, introductory note, pp. 9–10 [explaining that historically <u>restitution was neither exclusively equitable nor exclusively legal</u>]; *id.,* § 5 [describing "[t]he appropriate proceeding in an action at law for the payment of money by way of restitution"].)

*Jogani*, 165 Cal.App.4th at 909-10 (emphasis added).

Consequently, there is no basis for treating payment by way of restitution as falling under "Exclusion EE's" equitable relief provision, and any ambiguities with respect to an exclusion in the Policy must be resolved in Mr. Rizzo's favor. *B & E Convalescent Center*, 8 Cal.App.4th at 99-100.  More importantly, as set forth above, the AG expressly seeks additional payment of money damages that cannot possibly be labeled "restitution" under any circumstance.

Finally, in its coverage withdrawal letter, ICSOP completely ignored the fact that the AG's FAC expressly alleged that it was seeking to recover "exemplary damages" from Mr. Rizzo.  The law is clear that, even though ICSOP does not have a duty to indemnify Mr. Rizzo against these damages, it must defend exemplary damage claims.  *J.B. Aguerre, Inc.*, 59 Cal.App.4th at 14. Exemplary damages are a form of money damages.  ICSOP's duty to defend Mr. Rizzo for all claims was therefore also triggered by the AG's exemplary damage claim, regardless of the "restitution" issues.

## D.    THE CITY'S CROSS-COMPLAINT AGAINST MR. RIZZO SEEKS MONEY DAMAGES.

In its April 28, 2011 letter, ICSOP did not provide a basis for simultaneously withdrawing its defense against the City's claims.  All of the reasons for denying a defense set forth in the withdrawal letter relate to the statements made by the AG in its opposition to Mr. Rizzo's demurrer, and ICSOP does not contend that the City is only seeking "restitution" from Mr. Rizzo, not money damages.  The City's Cross-Complaint expressly seeks to

22.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

recover money damages from Mr. Rizzo, separate and apart from any restitution damages. In its prayer for relief, the City "prays for damages as follows: (1) For general, special, incidental and consequential damages according to proof at trial; . . . (3) For restitution . . . ; (4) For punitive damages according to proof at trial." The City's Cross-Complaint clearly distinguishes between restitution and money damages, which prevents ICSOP from raising the same argument that it raised with respect to the AG's Civil Action.

Apparently, ICSOP withdrew a defense for the City's Cross-Complaint on the basis that, without a duty to defend the AG's Civil Action, there is no coverage for the City's Cross-Complaint. However, ICSOP has a duty to defend Mr. Rizzo against the City's Cross-Complaint regardless of whether ICSOP defends Mr. Rizzo against the AG's Civil Action. These are separate actions that were each tendered under the Policy, and ICSOP has a duty to defend Mr. Rizzo pursuant to Sections I.A.2, I.A.3 and I.B.1 of the Policy, in addition to its implied obligation by law to defend Mr. Rizzo pursuant to *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966) and its progeny.

### E.   MR. RIZZO'S CROSS-COMPLAINT AGAINST THE CITY IS A "REASONABLE AND NECESSARY" EXPENSE.

ICSOP confirmed with its December 16, 2010 determination letter that Mr. Rizzo's Cross-Complaint against the City for a defense and indemnification "amount[ed] to a reasonable and necessary effort to avoid or at least minimize liability." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61 (1997). Unlike the parallel Criminal Actions, ICSOP originally agreed to cover this expense, and only withdrew coverage upon making the erroneous determination that the underlying action filed by the AG did not seek damages within the scope of the Policy. The reason Mr. Rizzo filed his Cross-Complaint against the City was to minimize his personal liability, which included his defense costs. It was "reasonable and necessary" for Mr. Rizzo to file an action

23.

against the City for a defense and indemnification from the City when the City refused to provide a defense and indemnification in breach of the City's contract with Mr. Rizzo and in violation of several statutes. But for the Cross-Complaint filed by Mr. Rizzo, Mr. Rizzo would not have the ability to compel the City to defend and indemnify him against the damages sought in the AG's FAC or the City's Cross-Complaint. As ICSOP originally recognized, the action was reasonable and necessary to minimize Mr. Rizzo's liability.

### F.    MR. RIZZO'S DEFENSE OF THE CRIMINAL ACTION IS A "REASONABLE AND NECESSARY" EXPENSE.

Mr. Rizzo's successful defense of the Civil Actions is dependent on his successful defense of the Criminal Actions. There is significant factual overlap between the Criminal Actions and the Civil Actions (UF 26-27), and the City has confirmed in its pleadings that it intends to rely heavily on the criminal charges against Mr. Rizzo to support its civil claims. (Stipulation, Ex. G, ¶ 19). Mr. Rizzo must defend the Criminal Actions to defend his alleged liability in the Civil Actions. A "reasonable insured under the same circumstances" would incur the same expenses. *Aerojet-General Corp.*, 17 Cal.4th at 63.

In the instant action, ICSOP informed Mr. Rizzo that ICSOP would not defend Mr. Rizzo against the Criminal Actions on the ground that the "Criminal Action is not a 'claim' or 'suit' as those terms are defined in the policies." (UF 29). Similarly, in *NextG Networks, Inc. v. One Beacon Am. Ins. Co.*, 2012 WL 440885, at *3 (N.D. Cal. Feb. 10, 2012), the insurer argued "that because the CPUC proceeding is not a 'suit' for 'damages' under the terms of the policy," no defense was required. The district court in *NextG Networks, Inc.*, however, rejected this argument because it was inconsequential whether the parallel action on its own fell within the scope of the policy. *Id.* Here too, ICSOP is deliberately confusing the issue of whether the parallel action independently falls within the scope of the Policy with the separate issue of whether defending the

24.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

parallel action is a reasonable and necessary expense to minimize Mr. Rizzo's liability in the Civil Actions.  Moreover, it is inconsequential that Mr. Rizzo has other incentives for defending the Criminal Actions.  *Id.* ("Expenses assumed by an insured are 'potentially recoverable even though they may serve more than one objective.' . . .  The costs of participating in the CPUC investigation may serve to both satisfy the agency *and* minimize potential liability in the civil actions.").  A defense is mandatory if it is reasonably necessary to minimize liability for a potentially covered claim, regardless of whether the parallel proceeding would itself constitute a covered claim.

## IV.   **CONCLUSION**

For the foregoing reasons, Mr. Rizzo respectfully requests that the Court grant this Motion and determine that ICSOP must defend Mr. Rizzo in the Civil and Criminal Actions.

Dated:   August 24, 2012          LAW OFFICES OF JAMES W. SPERTUS

By:   /S_____
James W. Spertus
Ezra D. Landes
Amy M. Hinkley
Attorneys for Plaintiff Robert A. Rizzo

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*