1  LAW OFFICES OF JAMES W. SPERTUS
   James W. Spertus (SBN 159825)
2  Ezra D. Landes (SBN 253052)
   Amy M. Hinkley (SBN 274571)
3  1990 South Bundy Dr., Suite 705
   Los Angeles, California  90025
4  Telephone:  (310) 826-4700
   Facsimile:  (310) 826-4711
5  jim@spertuslaw.com
   ezra@spertuslaw.com
6  amy@spertuslaw.com

7  Attorneys for Plaintiff Robert A. Rizzo

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  ROBERT A. RIZZO, an individual,        Case No. CV-12-04347-DMG
                                           (FMOx)
            Plaintiff,
13                                         Hon. Dolly M. Gee
        v.
14
   THE INSURANCE COMPANY OF              **MEMORANDUM OF POINTS
15  THE STATE OF PENNSYLVANIA,           AND AUTHORITIES IN
   a Pennsylvania corporation, and       OPPOSITION TO
16  CHARTIS CLAIMS, INC., a              DEFENDANT'S MOTION FOR
   Delaware corporation.                 SUMMARY JUDGMENT**
17
            Defendants.                   Date:      September 21, 2012
18                                        Time:      2:00 p.m.
                                          Crtrm:     7
19

20

21

22

23

24

25

26

27

28

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR

2    ATTORNEYS OF RECORD:

3        Plaintiff Robert A. Rizzo ("Mr. Rizzo"), by and through his counsel of

4    record, the Law Offices of James W. Spertus, hereby opposes Defendant The

5    Insurance Company of the State of Pennsylvania's ("ICSOP") Motion for

6    Summary Judgment or, in the Alternative, Partial Summary Judgment.

7        This Opposition is based upon the attached Memorandum of Points and

8    Authorities, Mr. Rizzo's concurrently filed Statement of Genuine Disputes of

9    Material Fact, the previously filed Stipulation of Undisputed Material Facts

10   (Docket ("Doc.") No. 20) and exhibits (Doc. Nos. 20-1 through 20-20), Mr.

11   Rizzo's previously filed Notice of Motion and Motion for Partial Summary

12   Judgment; Memorandum of Points and Authorities in Support Thereof (Doc. No.

13   18) and Mr. Rizzo's Statement of Uncontroverted Facts and Conclusions of Law

14   (Doc. No. 19), which are both incorporated herein by this reference, the Court's

15   file in this matter, and such other oral and documentary evidence as may be

16   presented at or before the hearing on this Motion.

17   Dated:  August 31, 2012         LAW OFFICES OF JAMES W. SPERTUS

18

19                      By:  /S_____

20                           James W. Spertus
                             Ezra D. Landes
21                           Amy M. Hinkley
                             Attorneys for Plaintiff Robert A. Rizzo
22

23

24

25

26

27

28

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

ii.

# **TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS .................................................................................2

III. DISCUSSION .....................................................................................................4

    A.   THE PARTIES' RESPECTIVE BURDENS ON THIS MOTION. ........4

    B.   MR. RIZZO IS AN "INSURED" UNDER THE POLICY. ....................6

    C.   THE COMPLAINTS SEEK DAMAGES FROM MR. RIZZO. ...........13

    D.   ICSOP CANNOT DENY MR. RIZZO A DEFENSE BASED ON "EXCLUSIONS O AND P." .....................................................................17

    E.   THE DEFENSE OF THE CRIMINAL ACTIONS IS A "REASONABLE AND NECESSARY" EXPENSE TO MINIMIZE LIABILITY IN THE CIVIL ACTIONS. ..........................20

IV.  CONCLUSION .................................................................................................25

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

i.

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>PAGE</u>

3

## <u>CASES</u>

4

5
*Aerojet-General Corp. v. Transport Indem. Co.*,
  17 Cal.4th 38 (1997)..........................................................................6, 21, 25

6

7
*Alma W. v. Oakland Unified School Dist.*,
  123 Cal.App.3d 133 (1981)...............................................................8, 9, 13

8

9

10
*B & E Convalescent Center v. State Compensation Ins. Fund*,
  8 Cal.App.4th 78 (1992).............................................................................21

11

12
*Bodell v. Walbrook Ins. Co.*,
  119 F.3d 1411 (9th Cir. 1997)..........................................................23, 24, 25

13

14

15
*Buss v. Super. Ct. (Transamerica Ins. Co.)*,
  16 Cal.4th 35 (1997)....................................................................................5

16

17
*Cal. Ins. Guarantee Assn. v. Wood*,
  217 Cal.App.3d 944 (1990)...........................................................................5

18

19
*Cassady v. Morgan, Lewis & Brockius LLP*,
  145 Cal.App.4th 220 (2006)..........................................................................8

20

21

22
*CNA Casualty of Cal. v. Seaboard Surety Co.*,
  176 Cal.App.3d 598 (1986)...........................................................................4

23

24
*Computer Entertainment America, Inc. v. American Home Assurance Co.*,
  532 F.3d 1007 (9th Cir. 2008)...............................................................16, 17

25

26
*Downey Venture v. LMI Ins. Co.*,
  66 Cal.App.4th 478 (1998)............................................................................5

27

28

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

ii.

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S*
*MOTION FOR SUMMARY JUDGMENT*

*Farr v. Farm Bureau Insurance Co.*,
  61 F.3d 677 (8th Cir. 1995)................................................................12

*Gray v. Zurich Ins. Co.*,
  65 Cal.2d 263 (1966)..............................................................4, 5, 25

*Horace Mann Ins. Co. v. Barbara B.*,
  4 Cal.4th 1076 (1993) ...............................................................5, 18

*J.B. Aguerre, Inc. v. Am. Guarantee & Liability Ins. Co.*,
  59 Cal.App.4th 6 (1997)............................................................5, 17

*Jogani v. Super. Ct.*,
  165 Cal.App.4th 901 (2008) .........................................................16

*Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*,
  2004 WL 1737297 (N.D. Cal. 2004) ............................................21

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ...............................................................15

*Lomes v. Hartford Financial Services Group, Inc.*,
  88 Cal.App.4th 127 (2001)..............................................10, 11, 13

*Los Osos Cmty. Servs. Dist. v. Am. Alternative Ins. Corp.*,
  585 F. Supp. 2d 1195 (C.D. Cal. 2008) ..............................13, 14, 15

*Low v. Golden Eagle Ins. Co.*,
  99 Cal.App.4th 109 (2002)......................................................16, 17

*Mary M. v. City of Los Angeles*,
  54 Cal.3d 202 (1991)....................................................................9

*Md. Casualty Co. v. Nat. Am. Ins. Co.*,
  48 Cal.App.4th 1822 (1996)...........................................................6

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

iii.

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S*
*MOTION FOR SUMMARY JUDGMENT*

*Milazo v. Gulf Insurance Co.*,
 224 Cal.App.3d 1528 (1990)...................................................................11, 12

*Mirpad, LLC v. Cal. Ins. Guarantee Assn.*,
 132 Cal.App.4th 1058 (2005).....................................................................4, 6

*Montrose Chem. Corp. v. Super. Ct.*,
 6 Cal.4th 287 (1993) ......................................................................................4

*NextG Networks, Inc. v. One Beacon Am. Ins. Co.*,
 2012 WL 440885 (N.D. Cal. Feb. 10, 2012) ............................................21, 22

*People v. Dillon*,
 199 Cal. 1 (1926)........................................................................................19, 24

*People v. Holtzendorff*,
 177 Cal.App.2d 788 (1960)...............................................................................19

*People v. Qui Mei Lee*,
 48 Cal.App.3d 516 (1975)................................................................................19

*Stanson v. Mott*,
 17 Cal.3d 206 (1976)..........................................................................14, 15, 16

*Stark v. Super. Ct.*,
 52 Cal.4th 368 (2011) ......................................................................................19

*Stein v. International Insurance Co.*,
 217 Cal.App.3d 609 (1990)..............................................................................24

*White v. County of Orange*,
 166 Cal.App.3d 566 (1985)..................................................................8, 9, 13

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

iv.

*Wilson v. City of Chicago*
   120 F.3d 681 (7th Cir. 1997)...............................................................9

*Wolfes v. Burlington Insurance Co.*,
   2010 WL 842327 (N.D. Cal. 2010) .........................................12, 13

## **STATUTES**

Cal. Bus. & Prof. Code § 17200 (2012) ..............................................23

Cal. Bus. & Prof. Code § 17500 (2012) ..............................................23

Cal. Civ. Code § 1668 (2012)......................................................24, 25

Cal. Civ. Proc. Code § 526a (2012)...............................................6, 13

Cal. Gov't Code § 1090 (2012).......................................................6, 7

Cal. Ins. Code § 533.5 (2012)......................................................23, 25

Cal. Penal Code § 424 (2012)......................................................19, 24

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

v.

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In its Motion for Summary Judgment (the "Motion"), Defendant ICSOP ignores or misstates (i) the express allegations of the complaints in the Civil and Criminal Actions, (ii) the express terms of the Policy, and (iii) the law in California that governs an insurer's duty to defend its insured against potentially covered claims.  ICSOP's Motion is permeated by critical omissions.  The AG and the City have each *expressly* alleged that Mr. Rizzo was *negligent* in performing his *official* duties, and each has sought money damages from Mr. Rizzo arising from that negligence.  The duty-to-defend issues raised in the instant Motion and in Mr. Rizzo's separately filed cross-motion for summary judgment can be quickly resolved by referencing the express negligence allegations in the complaints underlying the Civil Actions.  This case, therefore, is unlike a typical bad faith case involving disputes over facially *uncovered* allegations that may create the *potential* for liability under a policy.  Mr. Rizzo has been sued for professional negligence while acting in his official capacity, and since that fact triggers a defense under the express terms of the Policy, ICSOP must provide Mr. Rizzo a defense.

ICSOP's Motion conceals the negligence allegations that form the foundation for the Civil Actions and withholds other dispositive facts that establish its duty to defend.  For example, ICSOP deleted the AG's negligence causes of action from its list of underlying claims made by the AG against Mr. Rizzo.  (Motion, p.3, lns.19-24; (ICSOP's Separate Statement of Uncontroverted Facts (Doc. 17-2) ("ICSOP's UF") 2).  ICSOP implies by its word choice that it listed all causes of action for the Court, but it omitted the negligence claims from the list.  This tactic is effectively a concession that the negligence allegations are fatal to its Motion.  The fact that the words "negligence" and "negligent"

1.

1   permeate the AG's allegations and fall within the definition of "wrongful act" in

2   the Policy (Stipulation, Ex. A, p.9), but never once appear in ICSOP's Motion, is

3   revealing.  ICSOP cannot change the express allegations in the AG's complaint

4   by ignoring the professional negligence claims, or the allegations in the City's

5   complaints based on the same alleged breaches of duty.  Because ICSOP fails to

6   meet its burden on this Motion, ICSOP must defend Mr. Rizzo against the

7   allegations in the Civil Actions, and because the defense of the Criminal Actions

8   in necessary to minimize liability in the Civil Actions, ICSOP must also defend

9   the Criminal Actions.

10  **II.   STATEMENT OF FACTS**

11          For the convenience of the Court, Mr. Rizzo incorporates by reference the

12  Statement of Facts (Section II) set forth in his own Motion for Summary

13  Judgment (Doc. No. 18) as though set forth in full herein.  The instant cross-

14  motions filed by Mr. Rizzo and ICSOP are based on the same Stipulation of

15  Undisputed Facts, filed on August 24, 2012  (Doc. No. 20).  However, ICSOP's

16  statement of facts is woefully incomplete.  In addition to deliberately omitting

17  any reference to the AG's negligence cause of action, ICSOP ignores express

18  allegations in the underlying complaints that are dispositive of the Motion and

19  Mr. Rizzo's cross-motion.

20          ICSOP stipulated that, at all relevant times, Mr. Rizzo was an appointed

21  official and employee of the City (ICSOP's UF 1) and acknowledges that under

22  the Policy Mr. Rizzo is an insured for allegations of misconduct while he was

23  acting on behalf of the City or within the course and scope of his employment by

24  the City.  (ICSOP's UF 12).  In its recitation of the allegations in the underlying

25  complaints, however, ICSOP failed to cite to the express allegations in both the

26  Civil and Criminal Actions that Mr. Rizzo was an official acting on behalf of the

27  City, or an employee acting within the course and scope of his employment

28

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

2.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   while doing the things alleged to be wrongful.  (*See* Mr. Rizzo's Statement of

2   Uncontroverted Facts (Doc. No. 19) ("Rizzo's UF") 6; *see also* Mr. Rizzo's

3   Statement of Genuine Disputes of Material Facts (concurrently filed) (Opposition

4   Separate Statement) ("Rizzo's OSS") 21).  Such allegations require ICSOP to

5   defend Mr. Rizzo and are dispositive of the Motion, so ICSOP left them out of its

6   statement of facts.

7       Similarly, ICSOP's Motion contains many of the relevant Policy

8   provisions and acknowledges that under the Policy ICSOP must defend its

9   insured against claims or suits alleging "wrongful acts" and "employee benefit

10  wrongful acts."  (ICSOP's UF 10-11).  However, ICSOP's recitation of fact does

11  not include the definition for "wrongful act," which includes an "error or

12  misstatement, omission, negligent act, or breach of duty including misfeasance,

13  malfeasance, and nonfeasance," or "employee benefit wrongful acts," which

14  includes a "negligent act, error, or omission in the administration of" an

15  employee benefit program.  Moreover, ICSOP fails to acknowledge the many

16  allegations in the complaints that arise out of "wrongful acts" or "employee

17  benefit wrongful acts."  (Rizzo's UF 15; Rizzo's OSS 28).

18      Finally, ICSOP's recitation of the allegations in the complaints omits any

19  reference to the numerous allegations in the AG's and City's Civil Actions

20  alleging that the AG and City are seeking money damages.  ICSOP simply

21  ignores the undisputable fact that, with regard to the AG's First Cause of Action

22  for Waste of Public Funds, the AG expressly alleges that it is seeking to hold Mr.

23  Rizzo personally liable to pay an amount of money "to be proven at trial" that

24  Mr. Rizzo allegedly "wastefully expended" when Mr. Rizzo approved "excess

25  compensation to [City of Bell employees] Spaccia and Adams."  (Rizzo's UF 17,

26  52).  With regard to the AG's Second Cause of Action for Negligence, ICSOP

27  also ignores that the AG expressly alleged: "Rizzo failed to exercise due care and

28

3.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   reasonable diligence in approving the employment contracts of Spaccia and

2   Adams," and that Mr. Rizzo is personally "liable for damages to the City" as a

3   result of his alleged approval of these expenditures.  (Rizzo's UF 18, 56).

4   Similarly, ICSOP's Motion ignores that the City's Cross-Complaint expressly

5   seeks to recover from Mr. Rizzo general, special, incidental, consequential, and

6   punitive damages.  (UF 22).

7   **III.   DISCUSSION**

8       **A.     THE PARTIES' RESPECTIVE BURDENS ON THIS**

9           **MOTION.[1]**

10      An insurer "must defend a suit which *potentially* seeks damages within the

11  coverage of the policy."  *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966).  A

12  defense is excused only when "the third party complaint can *by no conceivable*

13  *theory raise a single issue* which could bring it within the policy."  *Id.* at 275

14  n.15.  "[T]he duty to defend is so broad that as long as the complaint contains

15  language creating the potential of liability under an insurance policy, the insurer

16  must defend an action against its insured even though it has independent

17  knowledge of facts not in the pleadings that establish that the claim is not

18  covered."  *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598,

19  606 (1986).  "It is settled that 'the insured need only show that the underlying

20  claim may fall within policy coverage; the insurer must prove it *cannot*.'"

21  *Mirpad, LLC v. Cal. Ins. Guarantee Assn.*, 132 Cal.App.4th 1058, 1068 (2005)

22  (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 289 (1993)).  "[A]

23  bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty."  *Id.*

24

25  [1]     A more detailed statement of the law regarding the parties' respective
26  burdens on their cross-motions is set forth in Part III.A of Mr. Rizzo's own
    Motion for Partial Summary Judgment (Doc. 18, p.10-14) and in Mr. Rizzo's
27  Statement of Uncontroverted Facts and Conclusions of Law (Doc. 19, p.23-27).
    Mr. Rizzo incorporates by reference those statements of the law into this
28  Opposition, as though set forth in full herein.

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S*
*MOTION FOR SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1  at 300.   "Any doubt as to whether the facts establish the existence of the defense

2  duty must be resolved in the insured's favor."  *Id.* at 299-300.

3       "Although insurers and insured routinely speak of the insurer's duty to

4  'indemnify and defend' as if the duties were coextensive, it is well settled that

5  the duty to defend is broader than the duty to indemnify."  *Cal. Ins. Guarantee*

6  *Assn. v. Wood*, 217 Cal.App.3d 944, 947 (1990).  A bar on indemnification does

7  not affect the insurer's obligation to provide a defense to such claims.  *Downey*

8  *Venture v. LMI Ins. Co.*, 66 Cal.App.4th 478, 487 (1998).  Additionally, even

9  though "California public policy bars *indemnification* against punitive damage

10  awards . . . the insurer's obligation to *defend* extends to punitive damage claims,

11  provided the policy does not conspicuously disclaim this duty."  *J.B. Aguerre,*

12  *Inc. v. Am. Guarantee & Liability Ins. Co.*, 59 Cal.App.4th 6, 14 (1997).

13       Finally, the claims for which there is potential coverage need not

14  predominate to trigger the insurer's duty to defend. *Horace Mann Ins. Co. v.*

15  *Barbara B.*, 4 Cal.4th 1076, 1081, 1084 (1993) ("We look not to whether

16  noncovered acts predominate in the third party's action, but rather to whether

17  there is *any* potential for liability under the policy.").  If even a single claim in a

18  multi-count complaint is potentially covered, the insurer must defend the entire

19  action.  *Buss v. Super. Ct. (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48-49 (1997).

20       ICSOP's burden on this Motion is to prove that the AG's and City's

21  respective complaints "can *by no conceivable theory raise a single issue*" that

22  will result in Mr. Rizzo potentially being an insured and paying money damages

23  that fall within the coverage of the Policy.  *Gray*, 65 Cal.2d at 275 & n.15.  If

24  ICSOP meets its burden, then Mr. Rizzo's burden is only to make a prima facie

25  showing that the complaints filed by the AG and the City against Mr. Rizzo

26  contain language or claims that create a possibility that Mr. Rizzo is an insured

27  and can be held liable for payment of money damages.  *See Gray*, 65 Cal.2d at

28

5.

275 & n.15; *Md. Casualty Co. v. Nat. Am. Ins. Co.*, 48 Cal.App.4th 1822, 1832 (1996) (holding the insurer must produce "undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy").  Once established that Mr. Rizzo is potentially an insured and that the complaints potentially seek money damages, Mr. Rizzo would also be entitled to costs associated with any parallel proceedings if they "amount to a reasonable and necessary effort to avoid or at least minimize liability."  *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61 (1997).

### B.    MR. RIZZO IS AN "INSURED" UNDER THE POLICY.

ICSOP argues that Mr. Rizzo is not an insured under the Policy because he was not acting either on behalf of the City or within the course and scope of his employment by the City when doing the things alleged to be wrongful.  (Motion, p.11, lns.5-6).  ICSOP's burden on the Motion is to prove that Mr. Rizzo <u>cannot</u> be an insured under the Policy, while Mr. Rizzo's burden is only to make a prima facie showing that he is <u>potentially</u> an insured under the Policy.  *See Mirpad, LLC*, 132 Cal.App.4th at 1068.  ICSOP fails to meet its burden, while Mr. Rizzo easily meets his burden, because all claims raised in the Civil and Criminal Actions expressly allege that Mr. Rizzo abused the powers of his office while serving as CAO for the City.

The AG filed the first cause of action for waste of public funds under Code of Civil Procedure section 526a, which creates a cause of action for waste "against any *officer* thereof . . . *acting in its behalf*."  *See* Cal. Civ. Proc. Code § 526a (2012) (emphasis added).  The fifth cause of action for conflict of interest under Government Code section 1090 can only be sustained if a *city officer* became "financially interested in any contract *made by them in their official capacity* . . . ."  *See* Cal. Gov't Code § 1090 (2012) (emphasis added).  The sixth cause of action for breach of fiduciary duty and violation of public trust requires,

6.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

as an element of the charged offense, that Mr. Rizzo be an officer who owes a duty to the citizens he serves.  All other causes of action in the AG's complaint similarly allege wrongdoing by Mr. Rizzo as a public official acting within the course and scope of his employment.  Specifically, the AG alleged that: (1) Mr. Rizzo "breached [his] dut[y] of due care in authorizing employment contracts;" (2) Mr. Rizzo "assist[ed] in the drafting of Ordinance No. 1158"; and (3) Mr. Rizzo "caused the false and incomplete salary information to be published to the public by publishing it in a memorandum to be distributed to the public." (Stipulation, Ex. C, ¶¶ 107, 116, 120).

Like the AG's allegations, all of the allegations made by the City in its Cross-Complaint similarly allege that Mr. Rizzo was a public official acting in his official capacity when doing the things alleged to be wrongful.  For example, the City alleged wrongdoing by Mr. Rizzo in "publishing . . . Ordinance No. 1158" and "act[ing] to modify the City retirement plan."  (Stipulation, Ex. D, ¶ 17(c)-(d)).  The City expressly alleged that "[a]s a *public officer* for the City, Rizzo was charged with and held a public trust and, as a result, owed a fiduciary duty to the City and its citizens."  (*Id.* at ¶ 23).  The City also alleged that Mr. Rizzo violated Government Code section 1090, which can only be violated if a city officer becomes "financially interested in any contract *made by them in their official capacity* . . . ."  *See* Cal. Gov't Code § 1090 (2012) (emphasis added).[2]

ICSOP ignores all of these express allegations from the underlying complaints, and instead relies on highly distinguishable cases involving highly distinguishable policies interpreted under highly distinguishable facts, and

_____

[2]     Separately, all of the allegations in the complaints filed by the DA specifically allege that Mr. Rizzo was a public official acting in his official capacity when doing the things alleged to be wrongful.  (*See* Mr. Rizzo's Motion for Partial Summary Judgment (Doc. 18), at p.16, lns.9-28.)

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  simply pulls quotes from those cases out of context to establish its own made-up

2  rule that whenever an insured acts "contrary to the interests" of his employer

3  (ICSOP's Motion, p.1, ln.13), the insured "could not have been acting" (*id.* at

4  p.12, ln.4) within the course and scope of his employment.  ICSOP's analysis

5  disregards clear California authority defining the meaning of the phrase "course

6  and scope of employment."

7      Courts in California construe "course and scope of employment" very

8  broadly.  For example, "[a]n employee's conduct may fall within the scope of his

9  or her employment even though the act does not benefit the employer, even

10  though the act is willful or malicious, and even though the act may violate the

11  employer's direct orders or policies."  *Cassady v. Morgan, Lewis & Brockius*

12  *LLP*, 145 Cal.App.4th 220, 230-31 (2006).  Two cases that address the type of

13  conduct that falls within and without the course and scope of one's employment

14  are *Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133 (1981) and

15  *White v. County of Orange*, 166 Cal.App.3d 566, 570-71 (1985).

16      *Alma W.* held that a tort falls within the course and scope of one's

17  employment when the act performed is either <u>required or incidental</u> to the

18  employee's duties.  *Alma W.*, 123 Cal.App.3d at 139.  In *Alma W.*, the court

19  considered whether a school custodian acted within the course and scope of his

20  employment when he sexually molested a student.  In finding the conduct outside

21  the scope of the janitor's employment and not incidental to his duties, *Alma W.*

22  held that the conduct was simply too attenuated to his duties to be considered

23  within the course and scope of employment.  *Id.*  The sexual molestation "in no

24  way related to mopping floors, cleaning rooms, or any of the other tasks that are

25  required of a school custodian."  *Id.* at 140.

26      In *White*, however, the court applied the *Alma W.* test to find that threats

27  made by a deputy sheriff to rape and murder a motorist he had stopped <u>was</u>

28                                          8.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

within the course and scope of the deputy sheriff's employment.  The key to the court's holding was that the police officer was using the authority inherent in his position to commit the offense.  "The officer's method of dealing with this authority is certainly incidental to his duties; indeed, it is an integral part of them."  *White*, 166 Cal.App.3d at 571; *see also Mary M. v. City of Los Angeles*, (1991) 54 Cal.3d 202, 209, 221 ("When he committed a sexual assault through misuse of his authority, the public employer must be held accountable.  Even tortious conduct that violates an employee's official duties or disregards the employer's express orders can be within the scope of employment.").[3]

In the instant case, applying the *Alma W.* test to the allegations in the underlying complaints establishes that the allegations involve conduct falling within the course and scope of Mr. Rizzo's employment by the City.  Mr. Rizzo would face no liability or exposure in either the Civil or Criminal Actions if he were not a public official acting in his official capacity when doing the things alleged to be wrongful.  A private citizen would not face liability for doing the things Mr. Rizzo is alleged to have done.  If Mr. Rizzo did not qualify as an insured because he was not acting within the course and scope of his

---

[3]    Indeed, on August 10, 2011, the mayor of Chicago, Illinois publicly stated that "the city has an obligation to pay for former Mayor Richard Daley's legal defense if he is sued for alleged police brutality conspiracies that happened under former Chicago police Commander Jon Burge" because "Jon Burge's conduct, however objectionable, was within the scope of his employment."  *See* Kristen Mack, *Emanuel Says City Obligated to pay for Daley Defense in Burge Case*, Chicago Tribune, August 10, 2011, *available at* http://www.chicagotribune .com/news /politics/clout/chi-emanuel-says-city-obligated-to-pay-for-daley-defense-in-burge-case-20110810,0,972808.story ("Even if we had no legal obligation to represent him, we would still be required to indemnify him against any judgments resulting from these cases.  For that reason, it is in the best interest of taxpayers that the city continue to provide representation in these matters."); *see also Wilson v. City of Chicago* (7th Cir. 1997) 120 F.3d 681 (holding that Jon Burge's actions that included "extracting confessions from criminal suspects by improper means" were "squarely within the scope of his employment").

9.

*PLAINTIFF ROBERT A. RIZZO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1   employment, then all of the underlying claims against Mr. Rizzo in both the Civil

2   and Criminal Actions would fail as a matter of law.

3        Ironically, in support of its Motion, ICSOP requests that the Court take

4   judicial notice of the trial court's May 2, 2011 ruling sustaining Mr. Rizzo's

5   demurrer to the AG's FAC.  In so ruling, the trial court held that the AG's claims

6   are barred by the doctrine of <u>legislative</u> immunity.  (ICSOP's Req. for Jud. Not.,

7   Ex. U, p.6, ln.20-p.7, ln.8 ("[T]he principle of legislative immunity protects not

8   only the conduct of municipal legislators, but also the acts of municipal

9   administrators and executives taken in direct assistance of legislative activity.

10  [Citation omitted].  Here plaintiff alleges the excess compensation was approved

11  by City ordinances.  These allegations therefore trigger the doctrine of legislative

12  immunity.").  ICSOP's argument now that the AG's FAC does not contain <u>any</u>

13  allegations that Mr. Rizzo was acting on behalf of the City or within the course

14  and scope of his employment is directly refuted not only by the express

15  allegations in the AG's FAC, but also by the trial court's ruling that the AG's

16  claims are subject to demurrer on the ground that they allege conduct for which

17  Mr. Rizzo is entitled to legislative immunity.  ICSOP ignores this ruling, does

18  not cite to any of the relevant authorities that specifically address the meaning of

19  "course and scope of employment," and instead concocts its own definition of

20  the term based on inferences drawn from distinguishable cases and selective

21  quotes from the underlying pleadings.

22       ICSOP first cites to *Lomes v. Hartford Financial Services Group, Inc.*, 88

23  Cal.App.4th 127, 132 (2001) (ICSOP's Motion, p.12, lns.6-18), which involved a

24  <u>former</u> employee who allegedly defamed his <u>former</u> employer "long after he left"

25  the company.  The court in *Lomes* held that Lomes was not entitled to a defense

26  because, by the time Lomes engaged in the alleged conduct, "Lomes had already

27  been fired and was working elsewhere, and Lomes testified at his deposition that

28                              10.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   he could not recall performing *any* services on behalf of Newton Wholesale after

2   August of 1995." *Id.* at 133.  Moreover, the policy in Lomes defined the insured

3   as the company and its officers and directors, "but <u>only</u> with respect to their

4   duties as your officers and directors."  The specific duties of officers and

5   directors provides a much more narrow scope of coverage than the Policy at

6   issue in the instant case, and cannot be interpreted as broadly as the terms "on

7   behalf of" or "within the course and scope of their employment," which are the

8   operative terms of the Policy at issue in the Motion.  Additionally, the court in

9   *Lomes* found it significant that "Lomes was sued as an individual, not as a

10  director." *Id.*  In the instant case, it is undisputed that that Mr. Rizzo was sued

11  "in his <u>official</u> and personal capacity."  (Rizzo's UF 11).  The mere fact that

12  Rizzo was sued by the AG "in his official capacity" is, in and of itself, sufficient

13  prima facie evidence to establish that the AG's complaint alleges that Mr. Rizzo

14  was acting in his official capacity on behalf of the City or within the course and

15  scope of his employment.

16        ICSOP also relies on the distinguishable case *Milazo v. Gulf Insurance*

17  *Co.*, 224 Cal.App.3d 1528 (1990), which made no attempt to define the term

18  "course and scope of employment" because the policy at issue in that case did

19  not contain any such provision.  In *Milazo*, the policy defined the insured as the

20  "partnership" and "and any partner or member thereof but <u>only</u> with respect to

21  his [partnership] liability." *Id.* at 1535-36; *see also id.* at 1537 ("The purpose of

22  the policies at issue here is to protect the partnership from *partnership* liabilities

23  . . . but *only* to the extent of their liability as partners.").  The *Milazo* court then

24  proceeded to analyze whether Milazo's conduct in that case could create

25  "partnership liability" under the Corporations Code (*id.* at 1538 n.10), and

26  concluded that there could not be partnership liability for the alleged conduct at

27  issue since Milazo's authority to act required the "consent of all of the remaining

28

11.

partners." *Id.* at 1538.  Had the policy in *Milazo* insured Milazo with respect to his partnership liability <u>and</u> with respect to any acts within the course and scope of his employment the outcome would have been different, but such a policy was not at issue in *Milazo*.

ICSOP's reliance on the Eighth Circuit's non-controlling authority in *Farr v. Farm Bureau Insurance Co.*, 61 F.3d 677 (8th Cir. 1995) is even more misguided.  In *Farr*, the Eighth Circuit obviously made no attempt to define the term "course and scope of employment" under California law, but, more importantly, the court held that there was no duty to defend in that case because the underlying complaints "require a breach of one of more fiduciary duties" and "the language of the . . . policies do[es] not cover injuries caused by a breach of duty." *Id.* at 681-82.  In the instant case, however, the Policy issued by ICSOP expressly covers any "breach of duty" by Mr. Rizzo.  (Rizzo's UF 7).  It is no wonder that ICSOP omitted from its Motion the definition of the term "wrongful act," which contains the "breach of duty" language, despite including all other relevant Policy definitions.  *Farr* does not stand for ICSOP's stated proposition that whenever an employee acts in a manner "antagonistic toward the corporation's business interests" he "is not acting on its behalf" or within the course and scope of his employment.  (Motion, p.13, lns.6-7).  Rather, *Farr* explains that such "antagonistic" conduct simply does not entitle an employee to a defense when the policy only covers an insured "with respect to their duties as officers and directors" and does not otherwise cover their "breach of duty."

Similarly in *Wolfes v. Burlington Insurance Co.*, 2010 WL 842327 (N.D. Cal. 2010), the final case relied upon by ICSOP in its Motion, the policy at issue similarly does not contain the language "on behalf of" or "within the course and scope of their employment."  The policy in *Wolfes* simply states that officers and directors are insured "but <u>only</u> with respect to their duties as your officers or

12.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

directors." *Id.* at *2.  As *Wolfes* notes, citing to *Lomes*, "an individual director has no authority to take action on behalf of the corporation without the consent of the board of directors." *Id.* at *5.  A policy that is limited to the "duties of an officer or director" of a corporation is much more narrow than a policy that insures an employee acting "within the course and scope of his employment." California law clearly defines "course and scope of employment" to include even those acts that are <u>incidental</u> to an employee's duties.  *Alma W.*, 123 Cal.App.3d at 139; *White*, 166 Cal.App.3d at 571.

For purposes of the instant Motion, the only question is whether Mr. Rizzo is "potentially" an insured.  Since ICSOP failed to establish that "by no conceivable theory" can Mr. Rizzo be an insured under the Policy, ICSOP must defend Mr. Rizzo.

## C.   THE COMPLAINTS SEEK DAMAGES FROM MR. RIZZO.

In response to Mr. Rizzo's demurrer, in an ultimately unsuccessful effort to salvage its FAC, the AG argued that the "restitution" the AG was seeking to recover from Mr. Rizzo did not qualify as "'money or damages' as that phrase is used in the [Tort Claims] Act."  (Stipulation, Ex. O, p.11, ln.16).  ICSOP seized upon those statements to withdraw its defense.  (ICSOP UF 17).  ICSOP acknowledges in its Motion that the Honorable A. Howard Matz in this Court expressly held that money sought to be recovered under Civil Procedure Code section 526(a), the same cause of action asserted by the AG as its First Cause of Action in the instant case, is "within the definition of 'damages' . . . [and] <u>even if the damages sought by [] plaintiffs might in some contexts be called 'restitution'.</u> . . they are 'damages' for the purpose of interpreting the insurance policy." *Los Osos Cmty. Servs. Dist. v. Am. Alternative Ins. Corp. (Los Osos)*, 585 F. Supp. 2d 1195, 1205-06 (C.D. Cal. 2008) ("On its face, this requested relief satisfies all of the elements of the ordinary definition of damages: it constitutes

13.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

compensation in money, albeit indirect, recovered by a party for loss or detriment.  Plaintiffs have therefore satisfied there burden of showing that there is a potential for coverage under the policy.  The burden thus shifts to Defendant to show there is no possibility that [Plaintiffs'] claims are covered.").  ICSOP's argument, therefore, has already been rejected by this Court.

ICSOP attempts to avoid the express holding in *Los Osos* by asserting the factually false statement that the AG in this case does not allege that it is seeking to recover any "payments the insured made <u>to someone else</u>" (Motion, p.17, ln.18), and that the AG only alleges in its FAC that it is seeking to recover money from which "Rizzo personally benefit[ted]."  (*Id.* at p.19, ln.2).  However, the AG expressly alleges in its FAC and in its opposition to Mr. Rizzo's demurrer that Mr. Rizzo "failed to exercise due care in <u>approving</u> public expenditures, including . . . Spaccia and Adams employment contracts," and that under *Stanson v. Mott*, 17 Cal.3d 206, 226-27 (1976), Mr. Rizzo "'may be subject to <u>personal liability</u> for improper <u>expenditures</u> made in the absence of such due care.'"  (Stipulation, Ex. O (AG's Opposition), p.19, ln.19-p.20, ln.2; Rizzo's UF 52, 56 (citing to Stipulation, Ex. C (AG's FAC)), ¶¶ 98, 106).  Consequently, since the AG expressly alleges that Mr. Rizzo did authorize payments "to someone else" and "may be subject to personal liability," *Los Osos* is directly on point and requires ICSOP to defend Mr. Rizzo.

*Los Osos* and other authorities confirm that the damages sought by the AG are covered "damages" regardless of the label applied to the damages by the AG in an effort to salvage the claims from dismissal on demurrer.  The AG expressly alleges as part of its damage claim that it is seeking payment of money damages by Mr. Rizzo for compensation paid to others that was allegedly "approved" by Mr. Rizzo.  (Rizzo's UF 17, 18, 52, 56).  The AG is seeking to recover from Mr. Rizzo an amount equivalent to those funds that Mr. Rizzo allegedly "wastefully

14.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    expended" (*id.*), and is not attempting to recover through the Civil Action only

2    specific money or property in Mr. Rizzo's possession that unjustly enriched Mr.

3    Rizzo.  In other words, the damages sought by the AG are not "restitution"

4    damages, they are "money damages," as the court held in *Los Osos*.  *See also*

5    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003)

6    (holding that restitution is the return of specific funds in defendant's possession

7    in which plaintiff has an "ownership interest" or a "vested interest.").  The

8    money that the AG seeks to recover from Mr. Rizzo is not money in Mr. Rizzo's

9    possession in which the AG (or any third party) has an ownership or vested

10   interest.  It is not money that could be "returned" by Mr. Rizzo since any money

11   that was allegedly "wastefully expended" by Mr. Rizzo when he "approved"

12   compensation to others (namely, Spaccia and Adams) is in the possession of

13   those other individuals.  The liability that Mr. Rizzo faces from the AG's FAC

14   would require Mr. Rizzo to pay "money damages," not "return money."

15        The AG's citation to *Stanson* is dispositive of the entire issue.  The AG

16   expressly argued in the same opposition that contains the statements relied upon

17   by ICSOP to deny coverage that "the complaint . . . alleges sufficient facts to

18   state a claim under the rule of *Stanson v. Mott*."  (Stipulation, Ex. O, p.20, lns.1-

19   2).  In *Stanson*, plaintiff filed a taxpayer suit against Mott, Director of the

20   California Department of Parks and Recreation, alleging that Mott "had

21   authorized the department to expend more than $5,000 of public funds to

22   promote passage of [a] bond issue.  Asserting the illegality of such use of public

23   funds, plaintiff sought a judgment that would require Mott personally to repay

24   the funds to the state treasury."  *Id.* at 209.  The California Supreme Court held

25   that Mott "may be held personally liable to repay expended funds . . . if he failed

26   to exercise due care in authorizing the expenditure of the funds."  The AG's

27   "claim under the rule of *Stanson v. Mott*" is subject to only one interpretation:

28

15.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

that the AG seeks to hold Mr. Rizzo personally liable for money damages for his alleged failure to exercise due care in authorizing the expenditure of funds. This is a claim for money damages, not for restitution.

ICSOP asserts that the AG, in its opposition to the demurrer, "clarified" its position with respect to the damages alleged in the FAC (ICSOP UF 17), but the AG makes the same assertions regarding Mr. Rizzo's "personal liability" in the same opposition in which it allegedly "clarified" its position, and eighteen months later the AG made the same assertions regarding Mr. Rizzo's "personal liability for improper expenditures" in its opening brief on appeal. (Stipulation, Ex. S, p.37-38). The AG never "clarified" its position, as ICSOP asserts. Rather, the AG asserted contrary positions in the same pleading depending on the specific cause of action for which the AG was then attempting to avoid demurrer or obtain a reversal on appeal. [4]

ICSOP argues in its Motion that the AG "disclaimed any intent to seek 'damages'" and such "[e]xpress disclaimers by a party can be used for purposes of determining whether there is a duty to defend." (Motion, p.16, lns.13-15). The cases cited by ICSOP—*Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 113 (2002) and *Computer Entertainment America, Inc. v. American Home*

---

[4]    Mr. Rizzo also incorporates by reference the additional arguments set forth in his own Motion for Summary Judgment (Doc. No. 18), as though set forth in full herein, including the arguments that even accepting the AG's erroneous "restitution" label as proper, the damages still do not fall within "Exclusion EE." None of the terms within "Exclusion EE," such as "equitable relief" or "money damages," are defined terms, and ICSOP has unilaterally declared that any claim for restitution falls within the undefined term "equitable relief" found in "Exclusion EE." ICSOP's withdrawal of coverage is based on the erroneous belief that restitution is exclusively a form of equitable relief. However, restitution is neither exclusively equitable nor exclusively legal, and suits for payment of money by way of restitution are treated as actions at law and not equity. *Jogani v. Super. Ct.*, 165 Cal.App.4th 901, 909-10 (2008). According to the Declaration of Michelle Duluc filed by ICSOP in support of its Motion (Doc. 17-4), the legal conclusion that payment by way of restitution is exclusively equitable was made by a claims director, Ms. Duluc, and not by an attorney.

16.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*Assurance Co. (Computer Entm't)*, 532 F.3d 1007, 1020 (9th Cir. 2008)—both involve an insured "speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Low*, 99 Cal.App.4th at 113.  Mr. Rizzo is not speculating about claims that the AG might file in the future.  The claims for which Mr. Rizzo seeks a defense are claims expressly pled in the AG's FAC.  Moreover, the AG is not "expressly disclaiming" its damage claim when it argues in the same pleading where the purported "disclaimer" appears that the AG is also seeking to hold Mr. Rizzo personally liable for money damages.  (Stipulation, Ex. O, p.19, ln.19-p.20, ln.2).  Separately, the *Low* and *Computer Entm't* courts referred to disclaimers appearing on the face of the complaints.  *Low*, 99 Cal.App.4th at 113-14; *Computer Entm't*, 532 F.3d at 1020.  In the instant case, the underlying complaint expressly seeks covered damages, and ICSOP is relying solely on a purported disclaimer appearing in a non-binding pleading that also contains arguments that directly contradict the purported disclaimer.

Finally, as set forth in Mr. Rizzo's Motion, ICSOP also ignores the fact that the AG's FAC expressly alleged that it was seeking to recover "exemplary damages" from Mr. Rizzo.  The law is clear that, even though ICSOP does not have a duty to indemnify Mr. Rizzo against these damages, it must defend exemplary damage claims.  *J.B. Aguerre, Inc.*, 59 Cal.App.4th at 14.  Exemplary damages are a form of money damages.  ICSOP's duty to defend Mr. Rizzo for all claims was therefore also triggered by the AG's exemplary damage claim, regardless of the "restitution" issues.

### D. ICSOP CANNOT DENY MR. RIZZO A DEFENSE BASED ON "EXCLUSIONS O AND P."

Although ICSOP did not rely on "Exclusions O and P" when it initially agreed to defend Mr. Rizzo, and also did not rely on these exclusions as a basis

17.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

to subsequently withdraw its defense, ICSOP now asserts that it can exercise its discretion to deny Mr. Rizzo a defense based on these exclusions.  "Exclusions O and P" of the Policy purport to afford ICSOP the discretion to deny Mr. Rizzo a defense for claims or suits against Mr. Rizzo arising out of: (1) "an alleged willful commission of a crime;" (2) "[a] dishonest, fraudulent or malicious act;" or (3) "[a] wrongful act for gain, profit, or advantage to which you are not legally entitled."  (Stipulation, Ex. A, p.16).

ICSOP's new reliance on these exclusions is flawed for many reasons, and the fact that it did not rely on these exclusions earlier highlights the fact that they do not provide a sufficient basis to support denial of a defense under the facts of this case.  ICSOP argues that "Exclusions O and P" apply because "Rizzo allegedly enriched himself at the City's expense by awarding himself and others excessive and unwarranted compensation packages."  (Motion, p.19, lns.22-23). However, ICSOP does not accurately summarize the allegations in the complaints, and ICSOP simply ignores the many allegations that cannot possibly fall within "Exclusions O and P."  As set forth above, the AG's FAC includes claims for <u>negligence</u>, specifically that Mr. Rizzo's "failed to exercise due care and reasonable diligence in approving the employment contracts of Spaccia and Adams."  (Rizzo's UF 56 (citing Stipulation, Ex. C, ¶ 106)).  Similarly, the City repeatedly alleges that Mr. Rizzo breached his duties and acted negligently. (Rizzo's UF 66-69).  Under no circumstances can these negligence claims fall under "Exclusions O or P," and if even a single claim in a multi-count complaint is potentially covered, the insurer must defend the entire action.  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 1084 (1993).

Additionally, the allegations relied upon by ICSOP do not even fall within the exclusions.  The first category under "Exclusion O" relates to "an alleged willful commission of a crime," but Mr. Rizzo is not alleged to have <u>willfully</u>

18.

committed any crime.  The majority of the criminal charges against Mr. Rizzo are for misappropriation of public funds under California Penal Code section 424.  Section 424 is a general intent crime, and there is no requirement that Mr. Rizzo act "willfully" or otherwise have a dishonest motive.  *People v. Dillon*, 199 Cal. 1 (1926).  Fraudulent intent is not an element of the crime of misappropriation of public funds.  *People v. Qui Mei Lee*, 48 Cal.App.3d 516 n.2 (1975).  Section 424 is not an embezzlement statute and does not require proof of an intent to steal or misappropriate, but rather the intentional doing of an act that results in the misappropriation.  *People v. Holtzendorff*, 177 Cal.App.2d 788, 795-96 (1960).  The criminal complaints filed against Mr. Rizzo do not allege willful violations of section 424 (Stipulation, Exs. I-L), and the reason they do not is because most of the criminal counts against Mr. Rizzo involved a loan program that everyone in the City believed was legal.  These are the same loans that form the basis of the City's breach of fiduciary duty claim against Mr. Rizzo.  (Stipulation, Ex. D, ¶ 33; Ex. E, ¶ 33).  If Mr. Rizzo technically lacked authority to approve a City expenditure, even if he negligently believed that he was authorized to make the expenditure, he would be guilty of a section 424 violation even though he had an innocent state of mind.  *Stark v. Super. Ct.*, 52 Cal.4th 368, 398 (2011).

With regard to the two remaining categories of "Exclusions O and P"—a "dishonest, fraudulent or malicious act" and a "wrongful act for gain, profit, or advantage"—these exclusions cannot possibly apply until there has been a final adjudication.  The word "alleged" does not even appear with regard to these exclusions, and ICSOP confirmed in its withdrawal letter that any reliance on "Exclusions O and P," even for the category relating to "an alleged willful commissions of a crime," requires a final adjudication before the exclusions could apply.  ICSOP stated in its withdrawal letter: "Furthermore, to the extent

19.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   <u>any damages awarded</u> fall within the exclusions relating to crime and fraudulent

2   acts or personal profit (Exclusions O and P), coverage would not apply."

3   (Stipulation, Ex. Q, p.4).  Since there has not yet been an adjudication of any

4   claims against Mr. Rizzo, the exclusions cannot possibly apply.  In fact, the only

5   adjudication to date has been the trial court's <u>dismissal</u> of the AG's claims,

6   which further confirms the inapplicability of "Exclusions O and P."

7         **E.**    **THE DEFENSE OF THE CRIMINAL ACTIONS IS A**

8               **"REASONABLE AND NECESSARY" EXPENSE TO**

9               **MINIMIZE LIABILITY IN THE CIVIL ACTIONS.**

10         Mr. Rizzo is seeking defense costs associated with the pending Criminal

11   Actions only because there are pending Civil Actions for which Mr. Rizzo faces

12   liability covered by the Policy, and Mr. Rizzo's successful defense of the Civil

13   Actions is dependent on his successful defense of the Criminal Actions.  Of the

14   64 claims asserted against Mr. Rizzo in the Criminal Actions, 57 claims are

15   based on the same facts asserted by the AG and/or the City in the Civil Action.

16   (Rizzo's UF 27; Rizzo's OSS 37).  The Civil and Criminal Actions are

17   inextricably intertwined and, in fact, the AG and DA "brought a <u>joint</u> motion to

18   stay the civil action pending resolution of the criminal actions . . . to prevent [Mr.

19   Rizzo] from circumventing criminal discovery procedures by seeking civil

20   discovery for the benefit of [his] criminal defense."  (Stipulation, Ex. S, p.7-8).

21   The AG and DA argued that "judicial economy" would be served by staying the

22   Civil Action because "completion of the criminal action first would . . . possibly

23   resolve the civil action without further litigation."  (*Id.* at p.46).  The AG admits

24   in its opening brief on appeal that Mr. Rizzo will face liability in the Civil

25   Actions if there is a conviction in the Criminal Actions.  (*Id.*)  Mr. Rizzo,

26   therefore, <u>must</u> defend the Criminal Actions to avoid liability in the Civil

27   Actions, and Mr. Rizzo would not be seeking a defense of the Criminal Actions

28

20.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    if those Criminal Actions were the only actions pending against him.  All of the

2    law relied upon by ICSOP in its Motion in opposition to Mr. Rizzo's claim that

3    ICSOP must defend the Criminal Actions relates to circumstances where an

4    insured is seeking a defense of a criminal action only, not when there are parallel

5    civil and criminal actions pending that base liability on the exact same facts.

6        Mr. Rizzo is entitled to "defense costs" under the Policy, and "defense

7    costs" is not a defined term.  (Stipulation, Ex. A, p.1 (Sections I.A.2, I.A.3, I.B.1

8    (insuring agreements); p.8 (Section II.HH) (defining "ultimate net loss")).  Any

9    ambiguities in a policy are to be resolved in the insured's favor.  *B & E*

10   *Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 99-100

11   (1992).  Mr. Rizzo is entitled to defense costs associated with any parallel

12   proceedings if they "amount to a reasonable and necessary effort to avoid or at

13   least minimize liability."  *Aerojet-General Corp. v. Transport Indem. Co.*, 17

14   Cal.4th 38, 61 (1997) (duty to defend extended to insured's site investigation

15   expenses undertaken to minimize liability); *see also NextG Networks, Inc. v. One*

16   *Beacon Am. Ins. Co.*, 2012 WL 440885 (N.D. Cal. Feb. 10, 2012) (holding that

17   *Aerojet-General Corp.* extends to "legal fees" incurred for plaintiff's

18   participation in parallel administrative investigation, which involved appearances

19   at public hearings and replying to commission's specific questions, because the

20   investigation would determine appropriate remedies for proven violations); *Kla-*

21   *Tencor Corp. v. Travelers Indem. Co. of Il.*, 2004 WL 1737297, at *7 (N.D. Cal.

22   2004) (costs of prosecuting a patent infringement claim are reasonable and

23   necessary to minimize liability in a related disparagement case where allegedly

24   disparaging statements concerned infringement of the patent).  The test for

25   determining whether the costs incurred in a parallel proceeding are "reasonable

26   and necessary" is whether the "expenses would be incurred against liability by a

27   reasonable insured under the same circumstances."  *Aerojet-General Corp.*, 17

28

21.

1   Cal.4th at 63.  Clearly a reasonable insured in Mr. Rizzo's circumstances would

2   defend the Criminal Actions to minimize liability in the Civil Actions because

3   both proceedings are based on the same facts.

4          In its Motion, ICSOP asserts that it is not required to defend Mr. Rizzo

5   against the Criminal Actions because the Criminal Actions are not "claims" or

6   "suits" as those terms are defined in the policies.  (Motion, p.20, lns.17-25).  This

7   same argument was raised by the insurer in *NextG Networks, Inc.*, where the

8   insurer argued "that because the CPUC proceeding is not a 'suit' for 'damages'

9   under the terms of the policy," no defense was required.  *NextG Networks, Inc.*,

10  2012 WL 440885, at *3.  The district court in *NextG Networks, Inc.*, however,

11  rejected this argument because it was inconsequential whether the parallel action

12  on its own fell within the scope of the policy.  *Id.*  Here too, ICSOP is

13  deliberately confusing the issue of whether the parallel Criminal Actions

14  independently fall within the scope of the Policy with the separate issue of

15  whether defending the parallel Criminal Actions is a reasonable and necessary

16  expense to minimize Mr. Rizzo's liability in the Civil Actions.

17         ICSOP further makes the point that the Criminal Actions do not seek

18  "damages" covered by the Policy.  (Motion, p.20, lns.26-27).  Again, this is

19  irrelevant.  Mr. Rizzo is not seeking indemnification for any fines or penalties he

20  may be required to pay as a result of the Criminal Actions.  Rather, Mr. Rizzo is

21  seeking a defense of the Criminal Actions because, without such a defense, he is

22  certain to face liability in the Civil Actions for damages covered by the Policy.

23  The AG expressly argued that a conviction in the Criminal Action will "resolve

24  the civil action without further litigation."  (Stipulation, Ex. S, p.46).  A defense

25  is mandatory if it is reasonably necessary to minimize liability for a potentially

26  covered claim, regardless of whether the parallel proceeding would itself

27  constitute a covered claim, and Mr. Rizzo's defense of the Criminal Actions is

28                                    22.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   not just "reasonably necessary," but it is absolutely required because the claims

2   in both actions are identical and a criminal conviction is guaranteed to result in

3   civil liability.

4        ICSOP's reliance on Insurance Code section 533.5 as a basis for denying a

5   defense in the Criminal Actions is similarly unavailing.  ICSOP suggests that

6   there is a "public policy" against paying defense costs associated with Mr.

7   Rizzo's defense of the Criminal Actions.  (Motion, p.21, ln.28; p.23, ln.18).

8   There is, however, no such public policy.  Section 533.5 is not a bar to the

9   defense of criminal actions.  Courts interpreting section 533.5, including the

10   Ninth Circuit, have limited section 533.5 to apply only to cases where an insured

11   is seeking <u>indemnification</u> for a "fine, penalty, or restitution" sought by a

12   government agency, and only with respect to claims brought under the Unfair

13   Competition Laws ("UCL"), sections 17200 and 17500 of the California

14   Business and Professions Code.  *Bodell v. Walbrook Ins. Co.*, 119 F.3d 1411 (9th

15   Cir. 1997).  In *Bodell* , the Ninth Circuit expressly held:

16        In 1990, § 533.5 was revised.  The statute was narrowed to apply
     just to specified sections of the Business and Professions Code.

17        . . .  The change in the order of the phrases referring to "criminal"
     and "civil" proceedings was not, as the carriers contend, an

18        attempt to expand the "criminal" clause to include *any* actions by
     *any* prosecutorial agency.  More likely, it was an effort to make

19        the revised statute clear by not burying the "criminal" clause
     behind all the "Chapter" and "Section" information of the newly

20        revised and narrowed "civil" clause.

21   *Id.* at 1416-17.

22        First, Mr. Rizzo is not seeking indemnification for a "fine, penalty or

23   restitution" that he may face in the Criminal Actions.  Second, in any event, none

24   of the claims in the Criminal or Civil Actions are UCL claims.  Section 533.5

25   therefore has no application to this case.  The only authority cited by ICSOP in

26   support of its broad proposition that section 533.5 bars ICSOP from paying

27   defense costs associated with Mr. Rizzo's defense of the Criminal Actions is

28                          23.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1   *Stein v. International Insurance Co.*, 217 Cal.App.3d 609, 614 (1990), a case that

2   confirms that there is no such public policy precluding ICSOP from paying these

3   defense costs.  In *Stein*, there was <u>no</u> pending civil case at the time a criminal

4   case was tendered for a defense, and the court held that since "Stein's <u>only</u>

5   damages were the amount spent on a criminal defense for Warner, we readily

6   conclude International is not responsible for the cost of such a defense."  *Id.*  The

7   court then went on to say that "[w]hile <u>nothing</u> would preclude International

8   from choosing such a course of action itself . . .  [a defense] was not warranted

9   by the nebulous possibility of a future civil suit."  *Id.* at 615.

10      In addition, ICSOP's erroneous assertion that public policy precludes

11   ICSOP from defending Mr. Rizzo against the Criminal Actions is refuted by the

12   language of the Policy itself.  As set forth above, "Exclusion O" of the Policy

13   purports to afford ICSOP the discretion to defend Mr. Rizzo against suits or

14   claims "[a]rising out of an alleged willful commission of a crime."  As

15   previously explained, this exclusion does not apply to the instant case, but the

16   exclusion demonstrates that the Policy allows ICSOP to defend Mr. Rizzo

17   against the Criminal Actions, which means there is no public policy bar to a

18   defense of the Criminal Actions.

19      Finally, ICSOP also asserts in its Motion that under California Civil Code

20   section 1668, "contracts that cover willful conduct are contrary to the law."

21   (Motion, p.22, lns.11-12).  First, as set forth above in greater detail, the

22   allegations against Mr. Rizzo do not involve "willful" conduct.  *People v. Dillon*,

23   199 Cal. 1 (1926) (holding that Penal Code § 424 is a general intent crime).

24   Second, this same exact argument was raised by the insurer in *Bodell*, and in that

25   case the Ninth Circuit expressly rejected the argument and held:  "Although

26   § 1668 has been construed as prohibiting an insurer from indemnifying an

27   insured for liability caused by his or her willful misconduct [citation omitted],

28

24.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   neither § 1668 nor the case law suggests that providing representation to an

2   individual in a proceeding involving such conduct violates public policy."

3   *Bodell*, 119 F.3d at 1417.

4        *Bodell* found a duty to defend regardless of Insurance Code section 533.5

5   and Civil Code section 1668 by citing to *Gray v. Zurich Insurance Co.*, 65

6   Cal.2d 263 (1966), and noting that in referring to section 533 and section 1668,

7   *Gray* "teaches that an insurer has a duty to defend in a civil assault action despite

8   the contention that such a construction of the policy would violate California

9   public policy" since defending the insured in the criminal proceeding "'d[id] not

10   encourage' criminal conduct." *Id.* at 1417-18.

11        There is simply no basis for ICSOP to deny Mr. Rizzo a defense of the

12   Criminal Actions because these costs are "reasonable and necessary . . . to avoid

13   or at least minimize liability." *Aerojet-General Corp. v. Transport Indem. Co.*,

14   17 Cal.4th 38, 61 (1997).  Consequently, ICSOP must defend Mr. Rizzo against

15   the Criminal Actions.

16   **IV.   CONCLUSION**

17        For the foregoing reasons, Mr. Rizzo respectfully requests that the Court

18   deny ICSOP's Motion, and grant Mr. Rizzo's own Motion for Partial Summary

19   Judgment in its entirety.

20   Dated:  August 31, 2012          LAW OFFICES OF JAMES W. SPERTUS

21

22                        By:  /S_____

23                             James W. Spertus
                             Ezra D. Landes
24                             Amy M. Hinkley
                             Attorneys for Plaintiff Robert A. Rizzo

25

26

27

28                                25.