1  **SARA M. THORPE (SBN:  146529)**
2  **VANESSA O. BEARY  (SBN:  225699)**
   GORDON & REES LLP
3  275 Battery Street, Suite 2000
   San Francisco, CA  94111
4  Telephone:  (415) 986-5900
   Facsimile:   (415) 986-8054
5
6
   Attorneys for Defendant
7  THE INSURANCE COMPANY OF
   THE STATE OF PENNSYLVANIA
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11

12  ROBERT A. RIZZO, an Individual,      )  Case No.:  CV-12-04347 DMG (FMOx)
                                         )
13                        Plaintiff,     )  OPPOSITION OF THE INSURANCE
                                         )  COMPANY OF THE STATE OF
14           vs.                         )  PENNSYLVANIA'S TO PLAINTIFF
                                         )  ROBERT RIZZO'S MOTION FOR
15  THE INSURANCE COMPANY OF             )  SUMMARY JUDGMENT OR, IN THE
    THE STATE OF PENNSYLVANIA, a         )  ALTERNATIVE, PARTIAL
16  Pennsylvania corporation, and        )  SUMMARY JUDGMENT
    CHARTIS CLAIMS, INC., a Delaware     )
17  corporation,                         )  Accompanying Papers:
                                         )  Response to Separate Statement of Undisputed
18                        Defendants.    )  Facts; Declaration of Vanessa Beary (attaching
                                         )  Declaration of Michelle Duluc); [Proposed]
19                                       )  Order
                                         )
20                                       )
                                         )  Date:        September 21, 2012
21                                       )  Time:        2:00 p.m.
                                         )  Courtroom: 7
22                                       )  Judge:       Hon. Dolly M. Gee
                                         )
23                                       )  Complaint filed:  May 18, 2012
                                         )
24                                       )
                                         )
25                                       )
                                         )
26  ─────────────────────────────────── )
27
28

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ....................................................................... 2

    A. The State's Civil Action Against Rizzo .......................................... 2

    B. Rizzo's Demurrer To The State's Civil Action ............................... 4

    C. The State's Opening Brief on Appeal ............................................. 5

    D. Criminal Action Against Rizzo ...................................................... 5

    E. The ICSOP Policy .......................................................................... 6

    F. ICSOP's Response to Rizzo's Tenders ........................................... 8

III. ARGUMENT ........................................................................................... 9

    A. There Is No Duty To Defend As A Matter of Law ......................... 9

        1. Rizzo Fails To Meet His Burden ............................................ 9

        2. The Duty To Defend Is A Question Of Law ........................... 9

    B. There Is No Duty To Defend The Civil Action ............................ 11

        1. Rizzo Does Not Qualify As An Insured Under The Policy .... 11

            a. Rizzo's Alleged Conduct is Antagonistic To The City ............................................................................ 11

            b. Rizzo's Authorities Relate To A Different Issue .......... 14

        2. The Civil Action Does Not Seek Damages ........................... 15

        3. The State's And City's Claims Are Excluded ....................... 20

        4. ICSOP Has No Duty To Defend Punitive Damages ............. 21

    C. There Is No Duty to Prosecute Rizzo's Cross-Complaint .............. 22

    D. There Is No Duty To Defend The Criminal Actions Even If Defense Of The Criminal Actions Were A Means To Minimize Rizzo's Liability ............................................................................ 23

IV. CONCLUSION ...................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon & Rees LLP**
**633 West Fifth Street, 52nd Floor**
**Los Angeles, CA 90071**

i

# TABLE OF AUTHORITIES

**Page No.**

## Cases

*Aerosafe Int. v. ITT Hatford,*
1993 U.S. Dist. LEXIS 10443, at \*19-20 (N.D. Cal. 1993. ................................23

*Alma W. v. Oakland Unified School Dist.,*
123 Cal.App.3d 133 (1981) .........................................................................15

*Aydin Corp. v. First State Ins. Co.,*
18 Cal.4th 1183 (1998) ................................................................................9

*Bank of the West v. Superior Court,*
2 Cal.4th 1254 (1992) ..........................................................................passim

*Bareno v. Employers Life Ins. Co.,*
7 Cal.3d 875 (1972) ....................................................................................10

*California Union Ins. Co. v. Poppy Ridge Partners,*
224 Cal.App.3d 897 (1990) .........................................................................10

*Chemstar, Inc. v. Liberty Mutual Ins. Co.,*
797 F.Supp. 1541 (C.D. Cal. 1992) .............................................................10

*Continental Cas. Co. v. City of Richmond,*
763 F.2d 1076 (9th Cir. 1985) .....................................................................21

*Farmers Ins. Group v. County of Santa Clara,*
11 Cal.4th 992 (1995) .................................................................................15

*Farr v. Farm Bureau Insurance Co.,*
61 F.3d 677 (8th Cir. 1995) ........................................................12, 13, 14, 24

*First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.,*
891 F.Supp. 510 (N.D. Cal. 1985) ................................................................9

*Foster-Gardner, Inc. v. National Union Fire Ins. Co.,*
18 Cal.4th 857 (1998) .................................................................................24

*J.B. Aguerre, Inc. v. American Guarantee & Liab. Ins. Co.,*
59 Cal.App.4th 6 (1997) .............................................................................22

*Jaffe v. Cranford Ins. Co.,*
168 Cal.App.3d 930 (1985) ...................................................................24, 25

*James 3 Corporation v. Truck Ins. Exchg.,*
91 Cal.App.4th 1093 (2001) .......................................................................22

*Jogani v. Superior Court,*
165 Cal.App.4th 901 (2008) .......................................................................17

*John R v. Oakland Unified School Dist.,*
48 Cal.3d 438 (1989) ..................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

**Page No.**

*Lomes v. Hartford Financial Services Group, Inc.*,
88 Cal.App.4th 127 (2001) .................................................12, 13, 24

*Low v. Golden Eagle Ins. Co.*,
99 Cal.App.4th 109 (2002) .............................................................16

*Mary M. v. City of Los Angeles*,
54 Cal.3d 202 (1991) ....................................................................15

*Medill v. Westport Ins. Co.*
143 Cal.App.4th 819 (2006) ..........................................................21

*Milazo v. Gulf Insurance Co.*,
224 Cal.App.3d 1528 (1990) ...................................................12, 24

*Montrose Chem. Corp. v. Superior Court*,
6 Cal.4th 287 (1993) ..............................................................10, 22

*Pacific Indemnity Co. v. Truck Ins. Exchg.*,
270 Cal.App.2d 700 (1969) ...........................................................21

*Perzik v. St. Paul Fire & Marine Insurance Co.*,
228 Cal.App.3d 1273 (1991) ..........................................................25

Peters v. Firemen's Ins. Co.,
*67 Cal.App.4th 808 (1998)* ...........................................................10

*PPG Industries, Inc. v. Transamerica Ins. Co.*,
20 Cal.4th 310 (1999) ...................................................................21

*Silva & Hill Construction Co. v. Employers Mutual Liability Ins. Co.*,
19 Cal.App.3d 914 (1971) .............................................................22

*Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*,
532 F.3d 1007 (9th Cir. 2008) .......................................................16

*Southern California Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ...........................................................9

*Stanson v. Mott*,
17 Cal.3d 206 (1976) ....................................................................18

*State Farm Fire & Cas. Co. v. Century Indem. Co.*,
59 Cal.App.4th 648 (1997) ............................................................15

*State Farm Fire and Casualty Co. v. Superior Court*,
191 Cal.App.3d 74 (1987) .............................................................25

*Stein v. International Ins. Co.*,
217 Cal.App.3d 609 (1990) ...........................................................23

*The Los Osos Community Services District v. American Alternative Insurance Corporation*,
585 F.Supp.2d 1195 (C.D. Cal. 2008) ........................................18, 19

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

# TABLE OF AUTHORITIES

**Page No.**

*United Pacific Ins. Co. v. Hall,*
 199 Cal.App.3d 551 (1988) ........................................................................23

*Waller v. Truck Ins. Exch.,*
 11 Cal.4th 1, 19 (1995) ...........................................................10, 11, 22, 24

*White v. County of Orange,*
 166 Cal.App.3d 566 (1985) ......................................................................15

*Wolfes v. Burlington Ins. Co.,*
 2010 U.S. Dist. LEXIS 21753 (N.D. Cal. 2010) .................................12, 13

## <u>Statutes</u>

California Civil Code
 section 1644 ......................................................................................11, 24

California Civil Code
 section 1668 ......................................................................................23, 25

California Civil Code
 section 3294 ............................................................................................22

California Code of Civil Proc.
 section 526a ....................................................................................2, 18, 19

California Insurance Code
 section 533.5 ....................................................................................23, 25

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ICSOP'S OPPOSITION TO RIZZO'S MOTION FOR SUMMARY JUDGMENT
CASE NO.:  CV-12-04347 DMG (FMOX)

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## I.      INTRODUCTION

In his motion for summary judgment ("Rizzo MSJ"), Robert Rizzo argues The Insurance Company of the State of Pennsylvania ("ICSOP") has a duty to defend him, the City of Bell's former city manager, against claims that he allegedly embezzled, stole, and misappropriated millions of dollars from the City. Rizzo was sued civilly by the State of California and the City of Bell, as well as criminally charged. Rizzo acknowledges the civil and criminal actions are based on the same facts. (Rizzo MSJ at 7:22-26.)

ICSOP issued an insurance policy providing coverage to the City for its liability to third parties. The policy also covers the City's officials and employees, but only for liability arising out of work they perform on behalf of the City. Rizzo concedes the State's and City's allegations are that he abused the powers of his office. (*Id.* at 15:2-3.) Yet, Rizzo would have the City's own insurance policy defend him against the claims by the City's and the State (standing in the shoes of the City).

There is no duty to defend Rizzo against the civil lawsuit (the State's Complaint and the City's Cross-Complaint [the "Civil Action"]) for three separate and independent reasons. First, the State's and City's allegations against Rizzo arise from acts which were contrary to the City's interests and for Rizzo's own personal financial gain. Therefore, Rizzo does not qualify as an insured under the City's policy. Second, the Civil Action does not seek damages covered by this liability policy. Third, exclusions in the ICSOP policy preclude coverage for dishonest acts and for wrongful acts for gain or profit.[1]

There is also no duty to defend the claims of punitive damages in the Civil Action. Furthermore, the conduct that supports a punitive damage claim is not

---

[1] Rizzo argues a duty to defend arises because there is coverage for negligent acts and "misfeasance, malfeasance, and nonfeasance." (Rizzo MSJ at 4:10-11.) However all of the State's and City's allegations are disposed of by a ruling that Rizzo does not qualify as an insured, the claims are not for damages, and/or the claims are excluded.

1

1   potentially covered by the policy, and punitive damages are not covered as a matter

2   of public policy in California.

3       There is no duty to "defend" Rizzo's Cross-Complaint against the City for

4   these same reasons and because there is no duty to prosecute affirmative claims.

5       There also is no duty to defend Rizzo against the multiple criminal charges

6   (collectively the "Criminal Actions").  Again, Rizzo does not qualify as an insured.

7   Plus, the Criminal Actions are neither "claims" nor "suits" under the ICSOP

8   policy, the Criminal Actions do not seek damages, and imposing a duty to defend

9   the Criminal Actions would violate California statute and public policy.

10       For these reasons, Rizzo's motion should be denied in its entirety.

11   ## II.   STATEMENT OF FACTS

12       Rizzo's summary of the facts giving rise to this insurance coverage dispute

13   do not tell the whole story.  Below is more from the pleadings (the undisputed facts

14   upon which the motion is brought), including about the claims against Rizzo, the

15   State's explanation of its claims, and the applicable ISCOP policy provisions, that

16   should be taken into account in ruling on this motion.

17   ### A.   The State's Civil Action Against Rizzo

18       The State Attorney General filed a civil action against Rizzo and others on

19   September 15, 2010 and thereafter a first amended complaint ("FAC").  (Rizzo's

20   Statement of Uncontroverted Material Facts ["UMF"] # 10, 12.)  The FAC asserts

21   causes of action against Rizzo for Waste of Public Funds/Illegal Expenditure of

22   Public Funds (Code of Civil Proc. § 526a); Fraudulent Deceit; Conflict of Interest

23   (Gov. Code § 1090); and Breach of Fiduciary Duty and Violation of Public Trust.

24   (UMF #13.)

25       The State's Civil Action alleges Rizzo and a group of other City officers and

26   employees "enriched themselves at the expense of the City and its citizens" by

27   awarding themselves "salaries and benefits that grossly exceeded what were

28   reasonable and commensurate with their … offices and duties."  (UMF # 39-40

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

2

1   [FAC at ¶¶ 1-2].)  Allegedly, "Rizzo dictated the terms of the employment

2   contracts" and council members "approved those contracts without ever reviewing

3   them or even seeking to learn the terms…."  (*Id.* [FAC at ¶ 3].)  Rizzo and the

4   other underlying defendants allegedly "carefully crafted their contracts and other

5   documents authorizing pay and benefit increases to avoid discovery by the public

6   of their full, wasteful compensation."  (UMF # 12 [FAC at ¶ 62].)

7          The State alleged that the City and its citizens ultimately are the victims of

8   Rizzo's alleged conduct.  They will "foot[] the bill left by the [alleged] self-

9   enriching activities."  (*Id.* [FAC at ¶ 6].)  Rizzo's and his colleagues' compensation

10   "was paid out of public funds" and "the City is responsible for a much larger bill in

11   the future when it must pay for … wrongfully-gained retirement benefits."  (*Id.*)

12          The State seeks orders requiring restitution, precluding Rizzo from receiving

13   retirement benefits, appointing a receiver, and prohibiting the City from paying

14   excess salaries, making retirement contributions or disbursing benefits.  (UMF #

15   12.)  The State seeks rulings that Rizzo's employment contract is null and void,

16   and an award of costs and punitive damages.  (*Id.*)  The State's prayer does not

17   seek damages.  (*Id.*)

18          Rizzo filed a Cross-Complaint against the State on October 15, 2010.  (UMF

19   # 23.)  Rizzo states three causes of action for declaratory relief regarding the City's

20   alleged obligation to defend and indemnify him in both the civil and criminal

21   actions.  (*Id.*)  Rizzo's claims are based on his employment contracts, as well as

22   employment provisions in the Government and Labor Codes.  (*Id.*)

23          The City filed a Cross-Complaint against Rizzo on November 24, 2010.

24   (UMF # 14.)  The current operative version is the City's Third Amended Cross-

25   Cross-Complaint ("TACC").  (*Id.*)  The City alleges Rizzo "embezzled, stole and

26   misappropriated millions of dollars in City funds," which the City seeks to recover

27   by its cross-complaint.  (*Id.* [TACC at ¶ 1].)  The City further alleges Rizzo

28   backdated agreements between himself and the City; misrepresented salary

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

3

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1   information to City citizens; modified the City retirement plan so he would receive

2   improper and excessive retirement benefits; and falsely created written contracts

3   between himself and the City to conceal his true compensation. (*Id.*)  Rizzo

4   allegedly executed a series of seven 'addendums' to his employment contract,"

5   increasing his own salary or adding benefits. (*Id.* [TACC at ¶¶ 9-15].)  "The last

6   three resulted in Rizzo receiving astronomical pay increases to an already overly

7   generous compensation package." (*Id.* [TACC at ¶ 9].)

8       The City's Cross-Complaint states causes of action for Intentional

9   Misrepresentation, Breach of the Covenant of Good Faith and Fair Dealing,

10   Conflict of Interest (Gov. Code § 1090), Rescission and Restitution, and

11   Declaratory Relief. (*Id.*)  In its cause of action for declaratory relief, the City seeks

12   an order that there is no duty to defend or indemnify Rizzo in the civil or criminal

13   actions because "[a]ll of the conduct by Rizzo which triggered the criminal charges

14   … and this lawsuit .. was outside of the course and scope of Rizzo's employment

15   duties as City Chief Administrative Officer." (*Id.* [TACC at ¶ 68].)

16   **B.    Rizzo's Demurrer To The State's Civil Action**

17       On November 30, 2011, Rizzo filed a demurrer to the FAC in the State's

18   Civil Action. (Additional Material Fact ["AMF"] #70.)  In its motion, Rizzo

19   argued the State, to the extent it sought to recover money damages, would have to

20   comply with the Government Tort Claims Act. (*Id.*)  On January 21, 2011, the

21   State in opposing the demurrer clarified the nature of its allegations. (*Id.*)

22   Summarizing its position, the State in its Opposition ("Opp.") argued each of its

23   causes of action alleged "sufficient facts  . . . on which restitution and other

24   equitable relief may be granted." (*Id.* [Opp. at 2].)

25       The State argued the Tort Claims Act did not apply because the State's

26   "claims are not ones for 'money or damages' within the meaning of the Act." (*Id.*

27   [Opp. at 10].)  Specifically, the State argued:  "[T]he People seek restitution of

28   excess compensation and benefits" and a "constructive trust." (*Id.* [Opp. at 10-

4

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

11].)  "This situation is no different than if one of the defendants had wrongly walked off with two paychecks for the same period and someone sued to compel him to return the excess paycheck."  (*Id.* [Opp. at 11].)  The State explained it does not seek to hold Rizzo and others liable for "'basic policy decisions' necessary for city governance," but rather to hold them "accountable for their operational actions in wrongfully, indeed illegally, orchestrating excess compensation and benefits and then receiving that compensation."  (*Id.* [Opp. at 15].)

### C.     The State's Opening Brief on Appeal

Following granting of the demurrer and dismissal of the State's complaint, the State filed a Notice of Appeal.  (UMF #35.)  In its Opening Brief ("OB"), the State continued to argue that its FAC alleged a "wide-ranging conspiracy to divert City funds in the form of excessive and wasteful compensation and sufficiently stated grounds for restitution and other equitable relief."  (UMF # 37, [OB at 1].)  The State reiterated it was "not seeking to recover money or damages for the State …. [but rather] restitution and other equitable relief."  (*Id.* [OB at 28, 30].)  The State alleged the "defendants have a duty to return specific property (compensation) received while employed by the city."  (*Id.* [OB at 31].)  The State continued to contend authorizing and accepting excess compensation "was an abuse of discretion and ultra vires" and Rizzo and the other defendants performed these acts to "further their personal agendas."  (*Id.* [OB at 5-6].)  The State was not seeking money from the City, but "effectively stepping into the shoes of the City, … which will be the ultimate beneficiary of any recovery achieved in [the] action." (*Id.* [OB at 29 (emphasis omitted)].)

### D.     Criminal Action Against Rizzo

The Los Angeles District Attorney ("DA") filed a Felony Complaint for Arrest Warrant against Rizzo and others on September 20, 2010.  (UMF #24, 25.)  The criminal complaint includes 53 counts against Rizzo, including misappropriation of public funds (Penal Code § 424 (a)), conflict of interest (Gov.

5

Code § 1090), and falsification of public records by the official custodian (Gov. Code § 6200 (c)).  (*Id.*)  An amended Felony Complaint was filed on February 4, 2011 adding a 54th count against Rizzo for "public officer crime" (Penal Code § 424 (a)).  (*Id.*)

On October 20, 2011, the DA filed a second criminal action against Rizzo asserting one count each of conflict of interest and misappropriation of public funds.  (*Id.*)  A grand jury proceeding resulted in a March 29, 2011 Indictment in a third criminal action.  (*Id.*)  This Indictment includes eight additional charges against Rizzo for misappropriation of public funds (Penal Code § 424 (a)), conspiracy to misappropriate funds (Penal Code § 182 (a)(1)), conflict of interest (Gov. Code § 1097), and secretion and falsification of official records (Gov. Code § 6200).  (*Id.*)  "Criminal Actions" collectively refers to the three complaints and the amended complaint filed by the DA against Rizzo.  (*Id.*)

### E. The ICSOP Policy

ICSOP issued to the City of Bell policy no. 6907991, in effect from July 1, 2010 to July 1, 2011 (the "Policy").  (UMF # 3.)  In relevant part, the Policy provides coverage for the City of Bell with limits of $10,000,000 per occurrence/wrongful act and in the aggregate, subject to a $250,000 retained limit for each occurrence/wrongful act.  (*Id.*)

Under Section I, "What We Shall Pay On Your Behalf," the policy provides:

### A. INSURING AGREEMENTS

1. **BODILY INJURY** AND **PROPERTY DAMAGE** LIABILITY

   **We** shall pay **you**, or on **your** behalf, the **ultimate net loss**, in excess of the retained limit, that the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury** or **property damage** arising out of an **occurrence** during the policy period.

2. ERRORS AND OMISSIONS LIABILITY

   **We** shall pay **you**, or on **your** behalf, the **ultimate net loss**, in excess of the retained limit, that the **insured** becomes legally obligated to pay to compensate others for loss arising out of **your**

6

**wrongful act** that takes place during the Policy Period and arises solely in performing or failing to perform duties of the **public entity**.

3. **EMPLOYEE BENEFIT** LIABILITY

**We** shall pay **you**, or on **your** behalf, the **ultimate net loss**, in excess of the retained limit, that the **insured** becomes legally obligated to compensate others for loss arising out of **your employee benefit wrongful act** that takes place during the Policy Period, in the **administration** of **your employee benefit program.** (AMF # 71.)

The Policy provides under "Defense and Defense Costs":

**We** shall have the right and duty to defend, investigate and settle any **claim** or **suit** seeking damages covered by the terms and conditions of this Policy when the applicable limits of insurance of the **underlying insurance** listed in the Schedule of **Underlying Insurance**, the limits of insurance of any other **underlying insurance** providing coverage to **you**, or **your** self insured retention of the **retained limit** have been exhausted by payment to a third party of judgments, settlements, or defense costs, or by payment of covered first party automobile expenses. (AMF # 72.)

Under Section, IV, "Who Is An Insured," the policy provides:

**Insured** means each of the following:

A. The **Named Insured** designated in the Declarations;

B. Those individuals who were or now are elected or appointed officials of the **Named Insured**, including members of its governing body or any other agencies, districts, authorities, committees, trustees, boards, commissions, or similar entity of the **Named Insured**, while acting on behalf of the **Named Insured**;

C. Any of **your employees**, servants, or volunteers while acting within the course and scope of their employment or duties as volunteers; … (UMF # 4.)

The Policy includes the following pertinent definitions:

**D.**   **Claim(s)** means a demand for money.

**G.**   **Employee** includes a **leased worker** or a volunteer while acting within the scope of his/her duties as such.

**GG.**   **Suit** means a civil proceeding in which damages are alleged because of **bodily injury** or **property damage**, **wrongful act** or **employee benefit wrongful act** to which this insurance applies.   **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which **you** must submit or do submit with **our** consent; or

Gordon & Rees LLP
633 West Fifth Street, 52ⁿᵈ Floor
Los Angeles, CA 90071

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

2.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which **you** submit with **our** consent.

HH.   Ultimate net loss means the sum actually paid or payable due to a claim or suit for which you are liable either by a settlement to which we agreed or a final judgment, and shall include defense costs.  Such sum will include proper adjustments for recoveries and salvage.  (AMF # 73.)

Under Section V, "**Exclusions**," the policy provides in relevant part:

**We** will not defend or pay under this Policy for **claims** or **suits** against **you:**

O.   Arising out of an alleged willful commission of a crime by you or other dishonest, fraudulent, or malicious act.  At our discretion, however, we will pay for defense costs until final adjudication, judgment, or settlement to which we have agreed.  If the judgment or final adjudication is adverse to you, you will reimburse us for all costs associated with the defense.

This exclusion shall not apply to any vicarious liability that any insured has with regard to the managerial, advisory, supervisory, or controlling obligations over the actions of another insured.

P.   Arising out of your wrongful act for gain, profit, or advantage to which you are not legally entitled.  At our discretion, however, we will pay for defense costs for any claim or suit arising from an alleged willful commission of a crime by you or other dishonor, fraudulent or malicious act, for any claim or suit arising out of your wrongful act for gain, profit, or advantage to which you are not legally entitled until final adjudication, judgment or settlement to which we have agreed.  If the judgment or final adjudication is adverse to you, you will reimburse us for all costs associated with the defense;

This exclusion shall not apply to any vicarious liability that any insured has with regard to the managerial, advisory, supervisory, or controlling obligations over the actions of another insured;

EE.   For injunctions, equitable relief, or any other form of relief other than the payment of money damages … (AMF # 74.)

**F.   ICSOP's Response to Rizzo's Tenders**

Rizzo tendered the civil and criminal lawsuits to ICSOP for defense under the liability policy ICSOP issued to the City.  (UMF # 28.)  ICSOP initially agreed to defend Rizzo under a full reservation of rights against the Civil Action while ICSOP continued to investigate the claims.  (AMF # 75.)  ICSOP advised Rizzo that significant coverage issues existed, and ICSOP's participation was subject to a

8

1  full and complete reservation of all rights under the policy and the law.  (*Id*.)

2  ICSOP declined to defend Rizzo against the Criminal Actions.  (*Id*.)

3   In light of the State's clarification of its claims in opposing Rizzo's

4  demurrer, ICSOP withdrew from Rizzo's defense.  (AMF # 76.)  Rizzo requested

5  that ICSOP reconsider this decision in light of the State's appeal of the dismissal of

6  its lawsuit.  ICSOP did and, while denying any obligation to defend, agreed to

7  defend the appeal under a full reservation of rights.  (AMF # 77.)

8  **III.   ARGUMENT**

9   **A.   There Is No Duty To Defend As A Matter of Law**

10    **1.   Rizzo Fails To Meet His Burden**

11   As the party moving for summary judgment, Rizzo has the burden to prove

12  every element he would have to prove at trial.  *First Pacific Networks, Inc. v.*

13  *Atlantic Mut. Ins. Co.,* 891 F.Supp. 510, 513 (N.D. Cal. 1985).  Here, in this

14  coverage dispute, that means Rizzo has to prove ICSOP had a duty to defend him

15  against the Civil Action and Criminal Actions.  *See Southern California Gas Co. v.*

16  *City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).  As a threshold, this means

17  Rizzo must prove he qualifies as an insured under the ICSOP Policy and that the

18  State's and City's complaints and the Criminal Actions allege claims potentially

19  covered by the ICSOP Policy.

20   The burden is on the one seeking coverage to establish the claim falls within

21  the basic scope of insurance coverage.  *Aydin Corp. v. First State Ins. Co.,* 18

22  Cal.4th 1183, 1188 (1998).  For a duty to defend, Rizzo must show there was a

23  potential that the claims against him were covered by the ICSOP Policy.  *Montrose*

24  *Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993) ("*Montrose*").

25    **2.   The Duty To Defend Is A Question Of Law**

26   Whether there is a duty to defend is a question of law for the court to decide.

27  *Peters v. Firemen's Ins. Co.,* 67 Cal.App.4th 808, 811 (1998).

28   While Rizzo indicates there are "multiple sources" for a duty to defend (Rizzo

9

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MSJ at 4:14-23), the ICSOP policy has one provision setting forth that duty (AMF # 72 [Policy at pp. 1-2]).  The Policy provides the Company will defend "any claim or suit seeking damages covered by the terms and conditions of this Policy . . ." (*Id.*)

Rizzo suggests that ICSOP was not clear or was incomplete in the rationale it gave for its conclusion there was no duty to defend.  (Rizzo MSJ at 1:24-27, 9:5-6.)  ICSOP's letters set forth the policy provisions upon which it relied in coming to its decision and also generally reserved all rights.  All of the arguments made in this motion are contained in those communications.  Furthermore, even a general reservation of rights is sufficient to preserve the right to rely on all provisions of the policy.  *California Union Ins. Co. v. Poppy Ridge Partners,* 224 Cal.App.3d 897, 902 (1990).

Regardless of what the insured understood the basis for denial of coverage to have been, this Court will determine based on its review of the Policy and the facts, whether there is any duty to defend.  *See Chemstar, Inc. v. Liberty Mutual Ins. Co.,* 797 F.Supp. 1541, 1545 (C.D. Cal. 1992); *see also Bareno v. Employers Life Ins. Co.,* 7 Cal.3d 875, 881 (1972) (interpretation of an insurance policy is an issue of law and even an appellate court must "make its own independent determination of the meaning of the language used in the contract under consideration").

The duty to defend is determined in the first instance by comparing the allegations of the complaint with the terms of the policy.  *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 19 (1995) ("*Waller*").  In addition, facts extrinsic to the complaint should be considered.  *Id.*  These may give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy, or they may eliminate the potential for coverage.  *Id.*  An insurer may decline to defend based on extrinsic facts, even when the bare allegations in the complaint suggest potential liability.  *Id.*  "This is because the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Id.*

In interpreting the insurance policy, the Court should apply the terms

ICSOP'S OPPOSITION TO RIZZO'S MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

according to their plain meaning.  Cal. Civ. Code § 1644; *Waller, supra,* 11 Cal.4th at 18.

Based on the language of the Policy and the facts, ICSOP has no duty to defend Rizzo against the Civil Action or Criminal Actions, and Rizzo's motion should be denied.

**B.**      **There Is No Duty To Defend The Civil Action**

    **1.**      **Rizzo Does Not Qualify As An Insured Under The Policy**

        **a.**      **Rizzo's Alleged Conduct is Antagonistic To The City**

Rizzo claims ICSOP owed a duty to defend him against the Civil Action – the State's First Amended Complaint and the City's Third Amended Cross-Complaint - because he is an insured under the City's Policy. Rizzo claims he qualifies as an insured even while he admits that: "All claims raised in the Civil and Criminal Actions allege that Mr. Rizzo abused the powers of his office while serving as [Chief Administrative Officer] for the City."  (Rizzo MSJ at 15:2-3.) Rizzo claims he is an insured under the City's insurance policy because, according to Rizzo, the underlying complaints allege he "was a public official acting within the course and scope of his employment when he purportedly did the things alleged to be wrongful."  (*Id.* at 15:5-6.)  He argues that, because being an official or employee is a necessary element in the claims against him, he must qualify as an insured.

Rizzo mixes apples and oranges, and his position is contrary to California law.  While Rizzo was wearing the hat and holding the title of a City official, his conduct was antagonistic to the City's interests.  An individual may be a partner, officer, director or employee acting in his "official capacity" when the allegedly wrongful acts were committed.  However, that individual's conduct is antagonistic to the partnership, corporation or employer, that individual is not acting on behalf of the partnership or employer nor in the course and scope of his duties to the partnership or employer for purposes of insurance coverage under the entity's

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

insurance policy.  *Lomes v. Hartford Financial Services Group, Inc.*, 88 Cal.App.4th 127 (2001); *Milazo v. Gulf Insurance Co.*, 224 Cal.App.3d 1528 (1990); *Farr v. Farm Bureau Insurance Co.*, 61 F.3d 677 (8th Cir. 1995) (cited in *Lomes*); *Wolfes v. Burlington Ins. Co.,* 2010 U.S. Dist. LEXIS 21753 (N.D. Cal. 2010).

In *Milazo*, the partnership's complaint against Milazo alleged he committed "various wrongful acts … both in his capacity as a partner of the … partnership and as an individual."  *Milazo, supra,* 224 Cal.App.3d at 1532.  Milazo sought to be defended by the partnership's insurer.  The court held Milazo would only be covered under the policy as a partner (not individual) but could not have been acting on behalf of the partnership when he allegedly misappropriated the partnership's economic opportunity (a new sublease on the partnership's premises) even though clearly a "partner" at the time.  As that court explained:

> *To hold that a partner could be covered under a partnership general liability policy for his acts against the very business organization that gives him status as an insured person would turn the concept of partnership coverage on its head.*  We therefore conclude that when a partner acts to misappropriate a partnership asset, interest or economic opportunity or to otherwise deprive the partnership thereof he cannot, as a matter of law, be deemed to be acting in his capacity as a partner.  *Id.* at 1539 (emphasis added).

In *Lomes,* the claims against Lomes alleged that as a "director" of the corporation, Lomes telephoned a lender and made false and defamatory comments that caused the corporation to lose its financing.  *Lomes*, *supra,* 88 Cal.App.4th at 130.  The insurer, Hartford, contended Lomes was not an insured under a policy issued to the corporation because he was not acting as an officer or director would be expected to act when the alleged wrongful acts occurred.  The Court of Appeal agreed with Hartford, explaining that "while it was undisputed Lomes was still a director at the time of his alleged acts, he would also have had to be fulfilling his duties as an officer or director to qualify for coverage."  *Id.* at 133.  As the court observed in finding no duty to defend:

> *General liability insurance is intended to protect an insured corporation (and its officers and directors) against corporate liability to third parties,* not to provide coverage for suits between directors or officers.  *Id.* (emphasis added).

In *Farr* (cited by the *Lomes* court)*,* the court held the applicable insurance policies did not provide coverage "for a situation in which the corporate insured suffers injury arising from a breach of duty by corporate directors and/or officers." *Farr, supra*, 61 F.3d at 681.  The court found that:

> The policies are intended to cover injuries caused by corporate officers when these officers are properly carrying out their duties to the corporation and are *designed to protect the officer who acts to advance the business interests of the corporation, not the officer who acts in a manner that is antagonistic toward the corporation's business interests.*  It follows that the policies provide no coverage for injuries arising from a corporate officer's breach of a duty owed to the corporation….Any injuries caused by a breach of fiduciary duty by Farr and/or Markley cannot be said to be "while acting in the scope of [their] duties as [officer, director, stockholder or employee of DPPI]." Nor can it be said to be "with respect to their duties as [DPPI's] officers or directors." *Id.* (emphasis added).

*See also Wolfes v. Burlington Ins. Co.,* 2010 U.S. Dist. LEXIS 21753, at *5-6 (N.D. Cal. 2010) (although an officer and director of the corporation when Wolfes allegedly interfered with the nightclub's decision to sell its assets to a third party, she was not acting on behalf of the corporation, and therefore was not an insured when she attempted to interfere with the sale of the club's assets as her actions were in contravention of the board of director's interests).

Here, the State's lawsuit alleges Rizzo and a group of other City officers and employees "enriched themselves at the expense of the City and its citizens" by awarding themselves "salaries and benefits that grossly exceeded what were reasonable and commensurate with their … offices and duties."  (UMF # 39-40 [FAC at ¶¶ 1-2].)  The City alleges Rizzo "embezzled, stole and misappropriated millions of dollars in City funds." (UMF # 14 [TACC at ¶ 1].)  In its Cross-Complaint, the City seeks an order that it has no duty to defend or indemnify Rizzo in the Civil or Criminal actions because: *"All of the conduct by Rizzo which*

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

13

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  *triggered the criminal charges ... and this lawsuit .. was outside of the course and*

2  *scope of Rizzo's employment duties as City Chief Administrative Officer*." (*Id.*

3  [TACC at ¶ 68]; emphasis added.)  Rizzo was not acting in the City's interests

4  when he allegedly stole millions of dollars in City funds and enriched himself "at

5  the expense of the City and its citizens," leaving the public to "foot[] the bill left by

6  the [alleged] self-enriching activities." (UMF # 14, 39, 40 [FAC at ¶¶ 1, 2, 6];

7  [TACC at ¶ 1].)

8        There is no duty to defend an individual where, despite the individual's

9  status as an officer, director, partner, or employee of the named insured entity, the

10  individual's allegedly wrongful acts were "antagonistic toward that entity's

11  business interests" *Farr, supra,* 61 F.3d at 681.

12        Therefore, Rizzo does not qualify as an insured and there is no duty to

13  defend Rizzo against the Civil Action, including the State's Complaint and City's

14  Cross-Complaint (nor, as discussed later, the Criminal Actions).

15  **        b.        Rizzo's Authorities Relate To A Different Issue**

16        The authorities Rizzo relies upon are factually and legally distinguishable.

17  None of Rizzo's cases address the issue of whether the City's insurance policy

18  should be required to defend an official and employee of the City against the *City's*

19  claims that the official/employee was acting in a manner antagonistic to the City's

20  interests.  Rather,  Rizzo's cases concern whether an entity can be held vicariously

21  liable for the conduct of its employees.

22        One case Rizzo cites, *White v. County of Orange,* 166 Cal.App.3d 566, 571

23  (1985) (county vicariously liable for deputy sheriff's threats to rape and murder a

24  motorist he had stopped), was later disapproved in *John R. v. Oakland Unified*

25  *School Dist.,* 48 Cal.3d 438, 452 (1989).  *John R.* held a school district <u>could not</u>

26  be held vicariously liable for the actions of a teacher who sexually molested his

27  student.  Rizzo's other authorities are no more helpful.  *Alma W. v. Oakland*

28  *Unified School Dist.*, 123 Cal.App.3d 133, 144 (1981) (no factual basis for trial

14

court to find custodian acted in the scope of his employment because his sexual misconduct was neither required nor an incident of his employment and was not a reasonably foreseeable consequence of the educational enterprise); *Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 221 (1991) (when a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable).

In contrast, in the insurance context, while a person may wear the hat or hold the title of his employer, that does not translate into the right to be defended by the employer's insurance policy. An employee is not entitled to be defended where he "substantially deviates from the employment duties for personal purposes." *Farmers Ins. Group v. County of Santa Clara,* 11 Cal.4th 992, 1005 (1995) (county's insurer had no duty to defend county employee accused of sexual misconduct); *State Farm Fire & Cas. Co. v. Century Indem. Co.,* 59 Cal.App.4th 648, 658 (1997) (school district's insurance policy, which defined "insured" to include teachers and other employees "while acting within the scope of their duties as such" did not cover a teacher against sexual molestation claims).

The State's Complaint and City's Cross-Complaint allege Rizzo's conduct was antagonistic to the interests of Rizzo's employer, the City. Thus, Rizzo does not qualify as an insured under the ICSOP Policy and, for that reason, there is no duty to defend Rizzo.

### 2.    The Civil Action Does Not Seek Damages

Rizzo argues ICSOP has a duty to defend because the State's lawsuit against Rizzo seeks "money damages," not "restitution." Despite the State's arguments to the contrary, Rizzo insists the State is still seeking to recover damages.

The pleadings, demurrer, opposition to that demurrer, and appellate briefs filed by Rizzo and the State are not in dispute. The heart of the disagreement is whether the State has disavowed its claim for damages in opposing Rizzo's demurrer and in appealing the court's dismissal of the State's lawsuit. Express

15

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

disclaimers by a party can be used for purposes of determining whether there is a duty to defend. *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 114 (2002) (court relied on disclaimer, even while acknowledging complaint could be amended to revoke disclaimer, refusing to speculate this might happen); *Sony Computer Entertainment America, Inc. v. American Home Assurance Co.,* 532 F.3d 1007 (9th Cir. 2008) (no duty to defend where class representatives in depositions expressly denied asserting "property damage" claims). That should be the end of this argument.

The ICSOP Policy defends a "suit" which is defined as a "a civil proceeding in which damages are alleged ..." (AMF # 72.) The Policy covers "ultimate net loss" which is defined as "the sum actually paid or payable due to a claim or suit ...". (AMF # 73.) Exclusion EE in the Policy explicitly excludes coverage for "injunctions, equitable relief, or any other form of relief other than the payment of money damages." (AMF # 74.)

California law is well-established that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies ..." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992). Restitution, in the sense of "disgorgement of money that has been wrongfully obtained," is not damages under a liability policy. *Id.* As the California Supreme Court explained:

> When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer. *Id.* at 1269.

Thus, coverage for restitution also violates public policy. *Id.*

The State in opposing Rizzo's demurrer explained it was only seeking restitution and other equitable relief. (AMF # 70 [Opp. at 2].) The State explained it was "seeking to recover what the defendants have *wrongfully received*, not to

16

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  recover 'money or damages' as that phrase is used in the Act" at all.  (*Id.* [Opp. at

2  11].)  Moreover, on appeal, the State emphasized that "*defendants* have a duty to

3  return specific property (compensation) received while employed by the city."

4  (UMF # 37  [OB at 31]) (emphasis added).  Rizzo is only one of those defendants.

5      The State further explained it was "effectively stepping into the shoes of the

6  City, … which will be the ultimate beneficiary of any recovery achieved in [the]

7  action."  (UMF # 37 [OB at 29 (emphasis omitted)].)

8      Rizzo posits several arguments in response to this.  Rizzo argues the State

9  did not really mean what it said.  Rizzo argues "restitution" is not necessarily an

10  equitable claim.  Rizzo also argues that, despite the State's position during the

11  demurrer and on appeal, there still is not only a claim being made for return of

12  monies from Rizzo for what was paid to him, but also for what was paid to others.

13  According to Rizzo, this claim is not "restitution."

14      First, as to Rizzo's argument that restitution is "neither exclusively equitable

15  nor exclusively legal" (Rizzo MSJ at 21:17-19), Rizzo relied on *Jogani*, but that

16  case is inapplicable.  *Jogani v. Superior Court*, 165 Cal.App.4th 901, 909-10

17  (2008).  In *Jogani,* the court explained that Jogani's "sole remedy … -- the

18  reasonable value of services rendered -- was routinely available in common law

19  courts before 1850, so it is a legal remedy."  *Id.*  Here, the State does not seek the

20  reasonable value of services rendered but, rather, recovery of property

21  (compensation) Rizzo and other defendants wrongfully received while employed

22  by the City.  Rizzo agrees restitution includes the return of specific funds in

23  defendant's possession in which plaintiff has an "ownership interest" or a "vested

24  interest." (Rizzo MSJ at 19:10-12.)  The type of restitution the State seeks is return

25  of property (compensation).  This is disgorgement of wrongfully obtained money

26  and is not correct. *Bank of the West*, *supra,* 2 Cal.4th at 1266.

27      As to Rizzo's claim that the State is still seeking damages, Rizzo cites to the

28  State's reliance on *Stanson* in opposing Rizzo's demurrer.  *Stanson v. Mott,* 17

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Cal.3d 206 (1976).  According to Rizzo, the State cited *Stanson* in support of its claim that Rizzo may be held personally liable for the wasteful expenditures of the City's funds towards the Rizzo, Spaccia and Adams employment contracts.  (MSJ at 20:1-8.)  The question is whether the State is making a claim for return from Rizzo of amounts wrongly paid to other defendants, and whether if that were the State's claim, that gives rise to a potential of coverage.  The State in disavowing any claim it is seeking "damages," put that claim to rest.  Further, a "waste claim" in this context is restitution and not covered.

Although not cited by Rizzo, this Court has addressed this issue before but in a materially different context.  Applying the analysis of that decision here, leads to the conclusion that there is no duty to defend.

In *The Los Osos Community Services District v. American Alternative Insurance Corporation*, 585 F.Supp.2d 1195, 1206 (C.D. Cal. 2008) ("*Los Osos*"), there was a coverage dispute over an action for waste brought under Code of Civil Procedure Section 526a by a taxpayer group against a community services district (the "District").  Claimants alleged the District's mismanagement of the wastewater facility project led to increased construction costs and the District's settlement with a group that opposed the construction "was a sham settlement with the Board's cronies."  *Id*.  The taxpayer group sought to recover from the District the excessive construction costs and settlement payment.  The insurer declined to defend the District, concluding there was no potential recovery of "damages."

The *Los Osos* court held that while Section 526a does not explicitly grant any right to seek damages, courts have interpreted the section to allow suits for repayment of wasted funds.  *Id.* at 1206.  Money awards under the section, according to the Court, can satisfy the "ordinary definition of 'damages.'"  *Id*. at 1206.  Important to that court's decision was that the claimants explicitly stated in discovery responses they were seeking "damages" – "to wit, for reimbursement of the settlement monies wrongfully paid … and for reimbursement of the monies

18

1    taken unlawfully to pay other allegedly wasteful expenses." *Id*. at 1200. Based on

2    the facts before the court, the *Los Osos* court concluded any damages award was

3    not restitution because "the damages sought … [were] neither punitive nor meant

4    to restore to the [underlying claimants] something wrongfully acquired by the

5    [District]." *Id*. at 1207. Further, that court noted, the District could be liable under

6    Section 526a for wasting funds even if they "did not themselves wrongfully

7    acquire funds … [and] this potential for monetary liability *in the absence of*

8    *personal benefit* trigger[ed a] duty to defend. *Id*. at 1208 (emphasis added).

9           The State's claims here differ in several significant respects from the facts in

10   *Los Osos*. In contrast to *Los Osos,* the State expressly disavows that it is seeking

11   money damages. Unlike the amounts sought in *Los Osos,* here the State seeks

12   restoration of funds to the City that were wrongfully acquired by Rizzo and his

13   colleagues. Further, while in *Los Osos,* there was an "absence of a personal

14   benefit" to the District, here the State alleges Rizzo personally benefitted from the

15   "astronomical pay increases" and other benefits he orchestrated. (UMF # 14

16   [TACC, ¶ 9].)

17          Thus, the conclusion reached in *Los Osos* cannot be reached here. The

18   State's claims are quite plainly for disgorgement of ill-gotten gains and therefore

19   restitution and not damages for purposes of determining whether they are covered

20   by the ICSOP Policy. *Bank of the West, supra*, 2 Cal.4th at 1266.

21          Rizzo also contends the City has a damages claim potentially covered by the

22   ICSOP Policy in that the City's Cross-Complaint "expressly seeks to recover …

23   general, special, incidental and consequential damages." (Rizzo MSJ at 23:2-4.)

24   But the City's "damages" are the very same recovery of "millions of dollars stolen

25   from the City and its citizens by Robert Rizzo" and "improperly paid to Rizzo as

26   salary and pension benefits." (UMF # 14  [TACC, ¶¶ 1].)  The City alleges it was

27   "tricked into paying Rizzo millions of dollars in unearned and unwarranted

28   compensation." (*Id*. [TACC, ¶ 32].)  Accordingly, the City seeks the return of

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

19

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  specific funds in Rizzo's possession.  The City does not allege any facts indicating

2  any "damages" other than return of specific funds wrongfully acquired by Rizzo

3  and other defendants.  (*Id.* [TACC, ¶¶ 32, 38].)

4       Thus, the State's and City's claims are, as the State explained, for restitution

5  – the return of money or property wrongfully acquired.  As such, these are not

6  claims for "damages" covered by the ICSOP Policy.  *Bank of the West, supra,* 2

7  Cal.4th at 1266.  Therefore, for this reason as well, ICSOP has no duty to defend.

8           **3.      The State's And City's Claims Are Excluded**

9       Furthermore, the State's and City's allegations against Rizzo are excluded

10  under Exclusions O and P in the ICSOP Policy.  Those exclusions provide there is

11  no duty to defend or pay claims against Rizzo "arising out of an alleged willful

12  commission of a crime by [Rizzo] or other dishonest, fraudulent, or malicious act"

13  (Exclusion O) or arising out of Rizzo's "wrongful act for gain, profit, or advantage

14  to which [Rizzo is] not legally entitled" (Exclusion P).  (AMF # 74.)

15       The State and City allege Rizzo enriched himself at the City's expense by

16  awarding himself and others excessive and unwarranted compensation packages,

17  making personal loans in excess of a million dollars from the City's general funds

18  to City employees, and otherwise embezzling, stealing and misappropriating

19  millions of dollars in City funds.  (UMF # 12 , 14 [FAC, ¶¶ 1-2]; [TACC, ¶ 1].)

20  There can be no question but that the State and City at least alleges "dishonest"

21  acts and "wrongful acts for gain [or], profit."  (AMF # 74.)

22       The phrase "arising out of" is broad.  Courts have applied "arising out of" to

23  claims that "originate[e] or flow from" the excluded conduct.  *Continental Cas.*

24  *Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("Continental");

25  *Pacific Indemnity Co. v. Truck Ins. Exchg.,* 270 Cal.App.2d 700, 704 (1969).

26  Courts decline to carve out a small covered claim where the damages relate to and

27  originate from the excluded conduct.  *Continental, supra*, 736 F.3.2d at 1081 (in

28  action alleging excluded injury from police brutality, court declined to find

1  coverage for alleged alternate theories of negligent training or supervision); *Medill*

2  *v. Westport Ins. Co.*, 143 Cal.App.4th 819 (2006) (court concluded all claims,

3  including for negligence, breach of fiduciary duty and concealment, arose from

4  excluded breach of contract).  There is not a single claim made by either the State

5  or City that does not "aris[e] out of" allegations that Rizzo's conduct was not only

6  wrong but dishonest, and not only wrong but for his own gain or profit.  Rizzo

7  concedes that all of the facts supporting the civil action are included in the criminal

8  actions.  (Rizzo MSJ at 7:22-26; UMF 21.)

9       Therefore, for this additional reason, there is no duty to defend Rizzo against

10  the Civil Actions.  While these Exclusions provide ICSOP can elect to defend,

11  there is no obligation for ICSOP to defend if it does not elect to do so.

### 4.   ICSOP Has No Duty To Defend Punitive Damages

13       Rizzo argues ICSOP should at least defend the State's and the City's claims

14  for punitive damages because punitive damages are "damages."  However,

15  punitive damages are not covered by the Policy as a matter of public policy, and

16  the conduct necessary to support an award of punitive damages is excluded.  Thus,

17  there is no duty to defend.

18       Punitive damages cannot be covered by insurance.  *PPG Industries, Inc. v.*

19  *Transamerica Ins. Co.*, 20 Cal.4th 310, 317-318 (1999).

20       For an award of punitive damages, the State or City would have to prove

21  Rizzo acted with oppression, fraud, or malice.  Civ. Code § 3294.  That type of

22  conduct is expressly excluded under Exclusion O in the ICSOP Policy, which

23  provides there is no duty to defend or pay claims "arising out of an alleged willful

24  commission of a crime by [Rizzo] or other dishonest, fraudulent, or malicious act."

25  (AMF # 74.)  Because a claim against Rizzo for that type of conduct cannot be

26  covered by the Policy, there is no potential for coverage and no duty to defend.

27  *Waller, supra,* 11 Cal.4th at 19; *Montrose, supra,* 6 Cal.4th at 300-01.

28       The one case Rizzo cites supports ICSOP's position.  *J.B. Aguerre, Inc. v.*

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

21

1    *American Guarantee & Liab. Ins. Co.*, 59 Cal.App.4th 6, 14 (1997).  As that court

2    observed, "the insurer's obligation to defend *extends* to punitive damage claims,

3    *provided the policy does not conspicuously disclaim this duty*."  *Id.* (emphasis

4    added) (in case where insurer defending other claims, also had to defend punitive

5    damage claims).  Here, the ICSOP policy expressly disclaims coverage for the very

6    conduct that will have to be proven to obtain punitive damages – malice, fraud.  A

7    punitive damages claim, by itself, does not create a duty to defend.

8        Thus, there is no potential for coverage for punitive damages and ICSOP has

9    no duty to defend the claims based solely on a request for punitive damages.

10   **C.    There Is No Duty to Prosecute Rizzo's Cross-Complaint**

11       Rizzo also argues ICSOP should "defend" the Cross-Complaint Rizzo filed

12   against the City.  (Rizzo MSJ at 23:19-24:7.)  Rizzo's Cross-Complaint seeks

13   indemnification based on his employment agreements and statutory employment

14   indemnification provisions contained in the Government and Labor Codes.  (*Id.*)

15   Rizzo seeks a declaration that the City is required to defend and indemnify him in

16   the Civil Action and Criminal Actions.  (*Id.*)

17       An insurer's duty to defend does not encompass an obligation to prosecute

18   an insured's affirmative claims against third parties.  *James 3 Corporation v. Truck*

19   *Ins. Exchg.*, 91 Cal.App.4th 1093, 1104 (2001); see also *Silva & Hill Construction*

20   *Co. v. Employers Mutual Liability Ins. Co.*, 19 Cal.App.3d 914, 927 (1971) ("duty

21   to defend could not extend to requiring the insurer to take affirmative action to

22   recover money…").  Because, for the reasons set forth above, ICSOP has no duty

23   to defend the Civil Action, ICSOP has no duty to "defend" Rizzo's pursuit of the

24   City for indemnification.[2]

25

26   [2] If there were a duty to defend, an affirmative claim inextricably linked to aiding
     the insured's defense may be part of that defense.  *Aerosafe Int. v. ITT Hatford*,
27   1993 U.S. Dist. LEXIS 10443, at *19-20 (N.D. Cal. 1993.  (court noted federal
     anti-trust action appeared related because federal antitrust claims are frequently
28   brought in response to misappropriation and unfair competition claims).  However,
     Rizzo's Cross-Complaint against the City for indemnification is not on its face

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

### D.   There Is No Duty To Defend The Criminal Actions Even If Defense Of The Criminal Actions Were A Means To Minimize Rizzo's Liability

Rizzo argues there is a duty to defend the Criminal Actions because it would be a "reasonable and necessary expense" to minimize Rizzo's liability in the Civil Actions, and "a defense is mandatory if it is reasonably necessary to minimize liability for a potentially covered claim."  (Rizzo MSJ, at 25:1-9.)

As is explained further below, ICSOP has no duty to defend the Criminal Actions because Rizzo does not qualify as an insured, the criminal Complaints are not a "suit" or "claim" as the Policy defines those terms, the Criminal Actions do not seek damages, and imposing a duty to defend the Criminal Actions would violate California Insurance Code sections 533.5, California Civil Code section 1668, and public policy.  But, first, California courts reject precisely the argument Rizzo makes.

Even in situations where an insurer has a duty to defend a civil suit (which is not the case here), that insurer has no obligation to defend the insured in a related criminal or administrative proceedings.  *United Pacific Ins. Co. v. Hall,* 199 Cal.App.3d 551, 556 (1988) (insurer had no duty to defend the insureds' son in a juvenile criminal proceeding even though the insured accepted defense of a related civil action); *Stein v. International Ins. Co.,* 217 Cal.App.3d 609, 611 (1990) (no duty to defend criminal charges against the insured even if such defense was necessary to a successful defense of a potential civil claim).  Thus, even if there were a duty to defend Rizzo against the Civil Actions (which there is not), that would not give rise to a duty to defend the related Criminal Actions.

Further, there are several reasons why there is no duty to defend the Criminal Actions.  ICSOP has no duty to defend because, again, Rizzo does not qualify as an insured.  The Criminal Actions allege Rizzo misappropriated public

---

inextricably related to defending against the City's claims because it does not substantively affect the City's claims against him.

ICSOP'S OPPOSITION TO RIZZO'S MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  funds, falsified public records, and allegedly paid unauthorized compensation

2  (MSJ, at 7-8), all of which are antagonistic to the City's interests and outside the

3  scope of his employment with the City.  *See, e.g., Lomes*, *supra,* 88 Cal.App.4th at

4  134-35; *Milazo, supra,* 224 Cal.App.3d at 1538; *Farr*, *supra,* 61 F.3d at 681.

5      In addition, under the Policy ICSOP has a "duty to defend … any 'claim' or

6  'suit' seeking damages covered by the terms and conditions of the Policy."  (AMF

7  # 72.)  "Claim" is defined as a demand for money and "suit" as a "civil

8  proceeding" in which damages are alleged.  (AMF # 73.)  The Policy expressly

9  excludes "any other form of relief other than the payment of money damages."

10  (AMF # 74.)  Interpreting the ICSOP Policy according to its plain meaning as is

11  required by California law (Cal. Civ. Code § 1644; *Waller, supra,* 11 Cal.4th at

12  18), the Criminal Actions are not a civil proceeding for damages, nor a demand for

13  damages.  Thus, there is no "suit" or "claim."

14      Further, none of the potential outcomes in the Criminal Actions represent

15  damages.  The term damages in a liability policy "describes a payment made to

16  compensate a party for injuries suffered."  *Jaffe v. Cranford Ins. Co*., 168

17  Cal.App.3d 930, 935 (1985) ("*Jaffe*").  The California Supreme Court has "rejected

18  the construction of the term 'damages' as 'any sum expended under sanction of

19  law.'"  *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 875

20  (1998), discussing *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 827 (1990).

21      Considering the consequences that flow from criminal proceedings, fines

22  and other monetary penalties are not damages.  *Jaffe, supra,* 168 Cal.App.3d at

23  934.  Restitution "is ordered as punishment in a criminal case" and does not

24  constitute potentially covered damages.  *State Farm Fire and Casualty Co. v.

25  Superior Court*, 191 Cal.App.3d 74, 78 (1987) (court noted "[n]o conceivable

26  justification exists for allowing an individual to pass on such liability to an

27  insurance carrier").  Imprisonment is not an award of damages.  *See, Perzik v. St.

28  Paul Fire & Marine Insurance Co*., 228 Cal.App.3d 1273, 1277 (1991) ("federal

criminal proceedings against appellant do not seek any sanctions which respondent's Policy could reasonably be construed to cover"); *Jaffe*, *supra*, 168 Cal.App.3d at 934 (no possibility of covered damages in criminal case "since neither imprisonment nor a fine constitutes 'damages' for insurance purposes").

Moreover, Insurance Code section 533.5 prohibits interpreting the ICSOP Policy to require a duty to defend a criminal lawsuit. That statute provides in part:

> (b) No policy of insurance shall provide, or be construed to provide, any duty to defend … any claim in any criminal action or proceeding … in which the recovery of a fine, penalty or restitution is sought by the Attorney General, any district attorney, any city prosecutor, or any county counsel, notwithstanding whether the exclusion or exception regarding the duty to defend this type of claim is expressly stated in the policy.

> (c) For the purpose of this section, "duty to defend" means the insurer's right or obligation to investigate, contest, defend, control the defense of, … or indemnify for the cost of any aspect of defending any claim in any criminal action or proceeding….

> (d) Any provision in a policy of insurance which is in violation of subdivision … (b) is contrary to public policy and void.

*See also,* Cal. Civ. Code § 1668 (contracts that cover willful conduct are contrary to the law).

Therefore, for all or any of these reasons, ICSOP has no duty to defend Rizzo against the Criminal Actions.

## IV. CONCLUSION

Rizzo does not qualify as an insured under the ICSOP Policy and the claims made by the City and State are not covered by the Policy. Further, the Criminal Actions are not covered by the ICSOP Policy. Since there is no potential for coverage, there is no duty to defend. For these reasons, Rizzo's motion for summary judgment should be denied in its entirety.

Dated: August 31, 2012            GORDON & REES LLP

By:   /s/ *Sara M. Thorpe*
Sara M. Thorpe
Attorneys for Defendant THE INSURANCE
CO.OF THE STATE OF PENNSYLVANIA

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071