1  LAW OFFICES OF JAMES W. SPERTUS
   James W. Spertus (SBN 159825)
2  Ezra D. Landes (SBN 253052)
   Amy M. Hinkley (SBN 274571)
3  1990 South Bundy Dr., Suite 705
   Los Angeles, California 90025
4  Telephone: (310) 826-4700
   Facsimile: (310) 826-4711
5  jim@spertuslaw.com
   ezra@spertuslaw.com
6  amy@spertuslaw.com

7  Attorneys for Plaintiff Robert A. Rizzo

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  ROBERT A. RIZZO, an individual,        Case No. CV-12-04347-DMG
                                           (FMOx)
13                    Plaintiff,
                                           Hon. Dolly M. Gee
14         v.
                                           **REPLY MEMORANDUM OF**
15  THE INSURANCE COMPANY OF               **POINTS AND AUTHORITIES**
    THE STATE OF PENNSYLVANIA,             **IN SUPPORT OF PLAINTIFF**
16  a Pennsylvania corporation, and        **ROBERT A. RIZZO'S MOTION**
    CHARTIS CLAIMS, INC., a                **FOR PARTIAL SUMMARY**
17  Delaware corporation.                  **JUDGMENT**

18                    Defendants.
                                           Date:      September 21, 2012
19                                         Time:      2:00 p.m.
                                           Crtrm:     7
20

21

22

23

24

25

26

27

28

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF*
*MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................. 1

II.  DISCUSSION ...................................................................... 3

    A.   MR. RIZZO IS AN "INSURED" UNDER THE POLICY. .................. 3

    B.   THE COMPLAINTS SEEK DAMAGES FROM MR. RIZZO. .......... 11

    C.   ICSOP HAS A DUTY TO DEFEND THE AG'S AND CITY'S PUNITIVE DAMAGES CLAIMS. ...................................... 14

    D.   ICSOP CANNOT DENY MR. RIZZO A DEFENSE BASED ON "EXCLUSIONS O AND P." .................................................. 15

    E.   MR. RIZZO'S CROSS-COMPLAINT IS A "REASONABLE AND NECESSARY" EXPENSE TO MINIMIZE LIABILITY IN THE CIVIL ACTIONS. ............................................................. 18

    F.   THE DEFENSE OF THE CRIMINAL ACTIONS IS A "REASONABLE AND NECESSARY" EXPENSE TO MINIMIZE LIABILITY IN THE CIVIL ACTIONS. ............................ 19

III. CONCLUSION ..................................................................... 25

i.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

## <u>CASES</u>

*Aerojet-General Corp. v. Transport Indem. Co.*,
   17 Cal.4th 38 (1997)..................................................18, 19, 20, 21, 24

*Alma W. v. Oakland Unified School Dist.*,
   123 Cal.App.3d 133 (1981)............................................................6, 10

*B & E Convalescent Center v. State Compensation Ins. Fund*,
   8 Cal.App.4th 78 (1992).............................................................13, 14, 20

*Bank of West v. Super. Ct. (Indust. Indem. Co.)*,
   2 Cal.4th 1254 (1992) ...........................................................................11

*Bodell v. Walbrook Ins. Co.*,
   119 F.3d 1411 (9th Cir. 1997)......................................................22, 24

*Cassady v. Morgan, Lewis & Brockius LLP*,
   145 Cal.App.4th 220 (2006)..................................................................5

*Farmers Ins. Group v. County of Santa Clara*,
   11 Cal.4th 992 (1995) ......................................................................7, 10

*Farr v. Farm Bureau Insurance Co.*,
   61 F.3d 677 (8th Cir. 1995)................................................................3, 9

*Gray v. Zurich Ins. Co.*,
   65 Cal.2d 263 (1966)......................................................................10, 24

*Horace Mann Ins. Co. v. Barbara B.*,
   4 Cal.4th 1076 (1993) .........................................................................16

*J.B. Aguerre, Inc. v. Am. Guarantee & Liability Ins. Co.*,
   59 Cal.App.4th 6 (1997)......................................................................14

*James 3 Corp. v. Truck Ins. Exchg.*,
   91 Cal.App.4th 1093 (2001)...........................................................18, 19

*Jeffrey E. v. Central Baptist Church*,
   197 Cal.App.3d 718 (1988)....................................................................6

ii.

*Jogani v. Super. Ct.*,
   165 Cal.App.4th 901 (2008)..................................................................13

*John R. v. Oakland Unified School District*,
   48 Cal.3d 438 (1989)..............................................................6, 7, 10

*Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*,
   2004 WL 1737297 (N.D. Cal. Aug. 4, 2004).............................................21

*Lomes v. Hartford Financial Services Group, Inc.*,
   88 Cal.App.4th 127 (2001)...................................................................8

*Los Osos Cmty. Servs. Dist. v. Am. Alternative Ins. Corp.*,
   585 F. Supp. 2d 1195 (C.D. Cal. 2008) ........................................2, 11

*Low v. Golden Eagle Ins. Co.*,
   99 Cal.App.4th 109 (2002)..................................................................12

*Mary M. v. City of Los Angeles*,
   54 Cal.3d 202 (1991).........................................................................6

*Milazo v. Gulf Insurance Co.*,
   224 Cal.App.3d 1528 (1990)............................................................4, 8

*NextG Networks, Inc. v. One Beacon Am. Ins. Co.*,
   2012 WL 440885 (N.D. Cal. Feb. 10, 2012) ...................................20, 21

*Ohio Casualty Ins. Co. v. Hubbard*,
   162 Cal.App.3d 939 (1984)...............................................................14

*People v. Dillon*,
   199 Cal. 1 (1926)......................................................................17, 23

*People v. Holtzendorff*,
   177 Cal.App.2d 788 (1960)...............................................................17

*People v. Qui Mei Lee*,
   48 Cal.App.3d 516 (1975).................................................................17

*Silva & Hill Constr. Co. v. Employers Mut. Liab. Ins. Co.*,
   19 Cal.App.3d 914 (1971).................................................................19

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

iii.

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF*
*MOTION FOR PARTIAL SUMMARY JUDGMENT*

*Sony Computer Entertainment America, Inc. v. American Home Assurance Co.*,
  532 F.3d 1007 (9th Cir. 2008).............................................................12

*Stanson v. Mott*,
  17 Cal.3d 206 (1976).............................................................1, 11

*Stark v. Super. Ct.*,
  52 Cal.4th 368 (2011).............................................................17

*State Farm Fire & Casualty Co. v. Century Indemnity Co.*,
  59 Cal.App.4th 648 (1997).............................................................7, 10

*Stein v. International Insurance Co.*,
  217 Cal.App.3d 609 (1990).............................................................22

*United Pacific Ins. Co. v. Hall (United Pacific)*,
  199 Cal.App.3d 551 (1988).............................................................23

*White v. County of Orange*,
  166 Cal.App.3d 566 (1985).............................................................6

*Wolfes v. Burlington Insurance Co.*,
  2010 WL 842327 (N.D. Cal. Mar. 10, 2010).............................................................10

## STATUTES

Cal. Bus. & Prof. Code § 17200 (2012).............................................................22

Cal. Bus. & Prof. Code § 17500 (2012).............................................................22

Cal. Civ. Code § 1668 (2012).............................................................23, 24

Cal. Civ. Code § 3294 (2012).............................................................14, 15

Cal. Ins. Code § 533.5 (2012).............................................................22, 24

Cal. Penal Code § 424 (2012).............................................................16, 24

Civ. Proc. Code § 526a (2012).............................................................2

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Civil Actions expressly seek to hold Mr. Rizzo personally liable for his professional negligence.  The AG expressly alleged in its FAC: "Rizzo failed to exercise due care and reasonable diligence in approving the employment contracts of Spaccia and Adams."  (UF 56).  The AG further argued in its opposition to Mr. Rizzo's demurrer to the FAC that Mr. Rizzo "failed to exercise due care in approving public expenditures, including . . . Spaccia and Adams employment contracts," and that under *Stanson v. Mott*, 17 Cal.3d 206, 226-27 (1976), Mr. Rizzo "may be subject to underlined personal liability for improper underlined expenditures made in the absence of such due care.'"  (Stipulation, Ex. O, p.19, lns.22-23).  Similarly, the City alleged a negligence claim against Mr. Rizzo for a series of purported breaches of his duties to the City (UF 65-69), and although the negligence claim was ultimately relabeled as breach of covenant of good faith and fair dealing, the negligence and breach of covenant claims are based on the same facts and both seek to recover money damages from Mr. Rizzo for professional negligence.  (Stipulation, Ex. G, ¶ 37 & p.16).

In its Opposition to Mr. Rizzo's Motion, ICSOP acknowledges the AG's citation to *Stanson*, and further admits that a claim by the AG to recover payments from Mr. Rizzo of amounts paid by the City to others "gives rise to a potential of coverage."  (Opposition, p.17, ln.27-p.18, ln.6).  ICSOP deals with this entire issue, which is dispositive of both Mr. Rizzo's and ICSOP's cross-motions, by simply asserting in its Opposition that the AG "in disavowing any claim it is seeking 'damages,' put that claim to rest."  (*Id.* at p.18, lns.6-7).  The purported "disavowing" to which ICSOP is referring are the statements made by the AG in its opposition to Mr. Rizzo's demurrer that it is seeking "restitution." However, those statements upon which ICSOP continues to rely establish that

1.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

the AG is seeking "damages" covered by the Policy and, in fact, the Honorable A. Howard Matz has already ruled that monetary claims under Civil Procedure Code section 526a, the same cause of action asserted by the AG as its First Cause of Action in the instant case, is "within the definition of 'damages' . . . [and] <u>even if the damages sought by [] plaintiffs might in some contexts be called 'restitution'</u>. . . they are 'damages' for the purpose of interpreting the insurance policy." *Los Osos Cmty. Servs. Dist. v. Am. Alternative Ins. Corp. (Los Osos)*, 585 F. Supp. 2d 1195, 1205-06 (C.D. Cal. 2008). Separately, the purported "disavowing" of damages by the AG in its opposition to Mr. Rizzo's demurrer does not "put that [money damages] claim to rest," because the AG confirmed in that same opposition that it is also seeking money damages under *Stanson*. The AG reconfirmed this position eighteen months later when the AG made the same arguments for "personal liability for improper expenditures" in its opening brief on appeal from the dismissal of its case. (Stipulation, Ex. S, p.37-38). The AG never put its damage "claim to rest." Rather, the AG asserted contrary positions in the same non-binding pleadings, which changed depending on the specific cause of action the AG was then attempting to salvage from demurrer or obtain a reversal on appeal.

In its Opposition, ICSOP argues that "Rizzo's summary of the facts giving rise to this insurance coverage dispute do[es] not tell the whole story." (Opposition, p.2, lns.12-13). Remarkably, only four lines after making this argument, ICSOP purports to list all causes of action pled by the AG in its FAC but omits the AG's negligence cause of action from that list. (Opposition, p.2, lns.20-23). ICSOP's own motion for summary judgment similarly pretends that the AG's negligence claim has vanished from the AG's FAC. (ICSOP's Motion, p.3, lns.19-24). As Mr. Rizzo noted in his opposition to ICSOP's motion, these tactics amount to a concession that the negligence allegations are dispositive of

2.

1    the cross-motions and confirms ICSOP's duty to defend Mr. Rizzo.  ICSOP

2    cannot avoid the express allegations of professional negligence in the Civil

3    Actions and rely on the AG's improper use of the label "restitution" for the

4    damage claims made by the AG.  ICSOP has a duty to defend the Civil Actions,

5    and because Mr. Rizzo must defend the Criminal Actions to avoid liability in the

6    Civil Actions, the defense of the Criminal Actions is "reasonably necessary" and

7    ICSOP must therefore defend both the Civil and the Criminal Actions.

8    **II.    DISCUSSION**

9          **A.    MR. RIZZO IS AN "INSURED" UNDER THE POLICY.**

10         ICSOP argues that Mr. Rizzo cannot potentially be an insured under the

11   Policy because allegedly "his conduct was antagonistic to the City's interests"

12   (Opposition, p.11, lns.8, 22-23) and, under the Eighth Circuit's non-controlling

13   authority in *Farr v. Farm Bureau Insurance Co.*, 61 F.3d 677, 681 (8th Cir.

14   1995), "antagonistic" conduct cannot qualify as conduct performed on behalf of

15   one's employer or fall within the course and scope of one's employment.

16         As set forth below, whether or not conduct is "antagonistic" to one's

17   employer is not the standard in California for determining whether conduct falls

18   "within the course and scope" of one's employment, but, in any event, ICSOP

19   misstates the allegations in the underlying complaints when it asserts that Mr.

20   Rizzo's conduct was "antagonistic" to the City.  The allegations in the AG's and

21   City's complaints confirm that Mr. Rizzo engaged in conduct that was done with

22   the approval of the City Council, and not in defiance of the City Council.  In fact,

23   as set forth in the ruling on Mr. Rizzo's demurrer to the AG's FAC, a copy of

24   which is attached to ICSOP's Request for Judicial Notice (Doc. No. 17-3), the

25   trial court sustained Mr. Rizzo's demurrer to the AG's FAC and dismissed the

26   AG's case because Mr. Rizzo engaged in conduct that was approved by the City

27   Council, and the trial court held that such conduct could not be second guessed

28

3.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   by the trial court under the separation of powers doctrine.  (Req. for Jud. Not.,

2   Ex. U, p.5, lns.25-p.6, ln.19).  The trial court further held that Mr. Rizzo had

3   immunity because his conduct was "in direct assistance of legislative activity."

4   (*Id.* at p.6, lns.26-27).  In sustaining Mr. Rizzo's demurrer, the trial court held:

5           Plaintiff is asking the court to substitute its judgment for that of
        the legislative body of the City insofar as that body's
6       determination of the compensation of municipal officers and
        employees.  The court does not have this power. . . .
7
        An equally important corollary of the separation of powers
8       doctrine is that legislators have absolute immunity from damage
        suits and claims for declaratory relief based on legislative acts.
9       . . . Here plaintiff alleges the excess compensation was <u>approved</u>
        by City ordinances.  These allegations therefore trigger the
10      doctrine of legislative immunity.  That plaintiff characterizes
        those ordinances as wasteful does not avoid the rule of legislative
11      immunity.
12      In sum, legislators cannot be sued for passing ordinances to raise
        their own compensation.  The conduct alleged by plaintiff in
13      support of the first cause of action may be remiss, but it is not
        actionable in civil court.  The proper means of reforming a
14      legislature rife with greed and ineptitude is the electoral process.

15  (Req. for Jud. Not, Ex. U, p.5, lns.25-27, p.6, ln.20-p.7, ln.6 (emphasis added)).

16          Mr. Rizzo's conduct was not antagonistic to the City and Mr. Rizzo was at

17  all times carrying out the will of the City Council.  In fact, Mr. Rizzo's co-

18  defendants in the AG's Civil Action are the members of the City Council and the

19  City on whose behalf Mr. Rizzo performed his duties as an appointed official and

20  employee.  (Stipulation, Ex. C, ¶¶ 13-19; UF 5).  The AG's FAC confirms that

21  Mr. Rizzo was acting in an manner consistent with the conduct of his employer

22  and its Council members who were also sued, and not in a manner "antagonistic"

23  to his employer.

24          In *Milazo v. Gulf Insurance Co.*, 224 Cal.App.3d 1528 (1990), one of the

25  cases cited by ICSOP, the court held that there was no duty to defend under a

26  partnership liability policy because plaintiff's conduct did not create a

27  partnership liability.  The *Milazo* court expressly noted that "no one . . . argues

28

4.

that liability on the part of the Alexander partnership ever existed, or indeed was ever claimed." *Id.* at 1538. If the partnership itself or other members of the partnership had also been sued, the *Milazo* court would have concluded that plaintiff was acting on behalf of the partnership and there would have been a duty to defend against such liability. In *Milazo*, the partnership itself and the other members of the partnership were not sued, but in the instant case the City itself and the members of the City Council were sued by the AG. As set forth below, whether or not Mr. Rizzo's conduct was "antagonistic" to the City does not determine whether Mr. Rizzo was acting "on behalf of" the City or "within the course and scope of his employment" by the City. However, even if it did, the allegations in the complaints do not support the argument that Mr. Rizzo acted antagonistic to his employer.

In defining the phrase "course and scope of employment," ICSOP relies on cases involving insurance policies that insured more narrow types of conduct than does the Policy at issue in this Motion, and those cases have no application whatsoever to the facts of this case. ICSOP simply pulled quotes from those cases out of context to establish its own made-up rule that whenever an employee acts in a manner antagonistic to the employer's interests, there can be no duty to defend. (Opposition, p.14, lns.8-11). The authorities cited by ICSOP do not stand for this proposition. ICSOP also misses the point of the cases cited by Mr. Rizzo, which set forth the law in California regarding the meaning of the phrase "course and scope of employment."

As set forth in Mr. Rizzo's opposition to ICSOP's Motion (Doc. No. 21, p.8), courts in California construe "course and scope of employment" very broadly. *Cassady v. Morgan, Lewis & Brockius LLP*, 145 Cal.App.4th 220, 230-31 (2006) ("An employee's conduct may fall within the scope of his or her employment even though the act does not benefit the employer, even though the

5.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

act is willful or malicious, and even though the act may violate the employer's direct orders or policies.").  In *Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 139 (1981), the court held that a tort falls within the course and scope of one's employment when the act performed is either <u>required or incidental</u> to the employee's duties.  In *White v. County of Orange*, 166 Cal.App.3d 566, 570-71 (1985), the court applied the *Alma W.* test to find that threats made by a deputy sheriff to rape and murder a motorist he had stopped <u>was</u> within the course and scope of the deputy sheriff's employment.  The key to the court's holding was that the police officer was using the authority inherent in his position to commit the offense.  "The officer's method of dealing with this authority is certainly incidental to his duties; indeed, it is an integral part of them."  *White*, 166 Cal.App.3d at 571; *see also Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 209, 221 (1991) ("When he committed a sexual assault through misuse of his authority, the public employer must be held accountable.  Even tortious conduct that violates an employee's official duties or disregards the employer's express orders can be within the scope of employment.").

ICSOP argues that *White* was "later disapproved in *John R. v. Oakland Unified School District*, 48 Cal.3d 438, 452 (1989)."  (Opposition, p.14, lns.24-25).  However, *John R.* did not "disapprove" *White*.  Rather, it distinguished its own facts from *White* and the court held that it "need not decide whether *White* itself was properly decided."  *Id.*  *John R.* was decided based on "the underlying rationale for the respondeat superior doctrine" (*id.* at 450) and not on whether a school teacher who molested a student at his apartment was acting "within the course and scope of his employment."  The *John R.* court also observed that the court of appeal had held in *Jeffrey E. v. Central Baptist Church*, 197 Cal.App.3d 718, 723 (1988) that "'[t]he distinguishing feature in *White* is that the errant conduct arose out of an abuse of the employee's *official* authority.  By virtue of

6.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1    the exercise of this authority, the police officer was able to perpetrate his assault.

2    The focus is . . . on whether the assault arose out of the <u>exercise of job-created</u>

3    <u>authority</u>.'"  *John R.*, 48 Cal.3d at 449.

4         ICSOP also cites to *Farmers Ins. Group v. County of Santa Clara*

5    *(Farmers)*, 11 Cal.4th 992 (1995) and *State Farm Fire & Casualty Co. v.*

6    *Century Indemnity Co. (State Farm)*, 59 Cal.App.4th 648 (1997), two cases also

7    involving sexual misconduct.  The court in *State Farm* distinguished the facts

8    presented and those in *Farmers* from the facts of *White* and *Mary M.*, and held

9    that the conduct at issue was not within the course and scope of employment

10   where the conduct was "not engendered by events or conditions relating to any

11   <u>employment duties or tasks</u>."  *State Farm*, 59 Cal.App.4th at 658 (citing

12   *Farmers*, 11 Cal.4th at 1007).

13        *John R.*, *State Farm* and *Farmers* all confirm that under the circumstances

14   of the instant case, where there is an alleged "abuse of the employee's official

15   authority," "an exercise of job-created authority," or conduct related to

16   "employment duties or tasks," the conduct falls within the course and scope of

17   employment.  As set forth in Mr. Rizzo's Motion, Mr. Rizzo could <u>only</u> commit

18   the torts and crimes alleged in the Civil and Criminal Actions if he were a public

19   official acting on behalf of the City or within the course and scope of his

20   employment, and each plaintiff must prove that Mr. Rizzo was acting in his

21   official capacity in order to prevail on the causes of action alleged.  (Rizzo's

22   Motion (Doc. No. 18), p.15, ln.7-p.16, ln.28).

23        Meanwhile, as set forth on pages 10 through 13 of Mr. Rizzo's Opposition

24   to ICSOP's Motion (Doc. No. 21), the cases cited by ICSOP in support of its

25   made-up rule that "antagonistic" conduct does not fall within the course and

26   scope of one's employment all involve very different types of policies that have

27   no relevance to the issues presented in this case.  The first case cited by ICSOP

28

7.

1    (Opposition, p.6, lns.6-18), *Milazo v. Gulf Insurance Co.*, 224 Cal.App.3d 1528

2    (1990), made no attempt to define the term "course and scope of employment"

3    because the policy at issue in that case did not contain any such provision.  In

4    *Milazo*, the policy defined the insured as the "partnership" and "and any partner

5    or member thereof but <u>only</u> with respect to his [partnership] liability."  *Id.* at

6    1535-36.  The *Milazo* court then proceeded to analyze whether Milazo's conduct

7    in that case could create "partnership liability" under the Corporations Code (*id.*

8    at 1538 n.10), and concluded that there could not be partnership liability for the

9    alleged conduct at issue since Milazo's authority to act required the "consent of

10   all of the remaining partners."  *Id.* at 1538.  Had the policy in *Milazo* insured

11   Milazo with respect to his partnership liability <u>and</u> with respect to any acts within

12   the course and scope of his employment, the outcome would have been different,

13   but such a policy was not at issue in *Milazo*.

14          The next case cited by ICSOP, *Lomes v. Hartford Financial Services*

15   *Group, Inc.*, 88 Cal.App.4th 127, 132 (2001) (Opposition, p.12, ln.19-p.13, ln.3),

16   involved a <u>former</u> employee who allegedly defamed his <u>former</u> employer "long

17   after he left" the company and therefore was obviously not acting within the

18   course and scope of his employment.  The court in *Lomes* held that Lomes was

19   not entitled to a defense because, by the time Lomes engaged in the alleged

20   conduct, "Lomes had already been fired and was working elsewhere, and Lomes

21   testified at his deposition that he could not recall performing *any* services on

22   behalf of Newton Wholesale after August of 1995."  *Id.* at 133.  Moreover, the

23   policy in Lomes defined the insured as the company and its officers and

24   directors, "but <u>only</u> with respect to their duties as your officers and directors."

25   The specific duties of officers and directors provides a much more narrow scope

26   of coverage than the Policy at issue in the instant case, and cannot be interpreted

27   as broadly as the terms "on behalf of" or "within the course and scope of their

28

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    employment," which are the operative terms of the Policy at issue in the Motion.

2    Additionally, the court in *Lomes* found it significant that "Lomes was sued as an

3    individual, not as a director." *Id.*  In the instant case, it is undisputed that Mr.

4    Rizzo was sued "in his <u>official</u> and personal capacity."  (UF 11, 42).  The mere

5    fact that Rizzo was sued by the AG "in his official capacity" is, in and of itself,

6    sufficient to establish that the AG's complaint alleges that Mr. Rizzo was acting

7    in his official capacity on behalf of the City or within the course and scope of his

8    employment.

9        ICSOP's reliance on *Farr v. Farm Bureau Insurance Co.*, 61 F.3d 677 (8th

10   Cir. 1995) (Opposition, p.13, lns.3-14), is even more misguided.  In *Farr*, the

11   Eighth Circuit obviously made no attempt to define the term "course and scope

12   of employment" under California law, but, more importantly, the court held that

13   there was no duty to defend in that case because the underlying complaints

14   "require a breach of one of more fiduciary duties" and "the language of the . . .

15   policies do[es] not cover injuries caused by a breach of duty."  *Id.* at 681-82.  In

16   the instant case, however, the Policy issued by ICSOP expressly covers any

17   "breach of duty" by Mr. Rizzo.  (UF 7).  It is no wonder that ICSOP omitted

18   from its own Motion and its Opposition the definition of the term "wrongful act,"

19   which contains the "breach of duty" language, despite including all other relevant

20   Policy definitions.  (Opposition, p.7, ln.21-p.8, ln.5; UF 7).  *Farr* does not stand

21   for ICSOP's stated proposition that whenever an employee acts in a manner

22   "antagonistic toward the corporation's business interests" he "is not acting on its

23   behalf" or within the course and scope of his employment.  Rather, *Farr* explains

24   that such "antagonistic" conduct simply does not entitle an employee to a defense

25   when the policy only covers an insured "with respect to their duties as officers

26   and directors" and does not otherwise cover their "breach of duty."

27

28

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

9.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    Similarly in *Wolfes v. Burlington Insurance Co.*, 2010 WL 842327 (N.D.

2   Cal. Mar. 10, 2010), the final case relied upon by ICSOP (Opposition, p.13,

3   lns.14-19), the policy at issue similarly does not contain the language "on behalf

4   of" or "within the course and scope of their employment."  The policy in *Wolfes*

5   simply provides that officers and directors are insured "but <u>only</u> with respect to

6   their duties as your officers or directors."  *Id.* at *2.  As *Wolfes* notes, citing to

7   *Lomes*, "an individual director has no authority to take action on behalf of the

8   corporation without the consent of the board of directors."  *Id.* at *5.  A policy

9   that is limited to the "duties of an officer or director" of a corporation is much

10   more narrow than a policy that insures an employee acting "within the course

11   and scope of his employment."  California law clearly defines "course and scope

12   of employment" to include even those acts that are <u>incidental</u> to an employee's

13   duties (*Alma W.*, 123 Cal.App.3d at 139; *White*, 166 Cal.App.3d at 571) and, as

14   further set forth in ICSOP's cited authorities, *John R.*, *State Farm* and *Farmers*,

15   also involves conduct related to one's "employment duties or tasks" or where

16   there is an "abuse of the employee's official authority," or "an exercise of job-

17   created authority."  *State Farm*, 59 Cal.App.4th at 658 (citing *Farmers*, 11

18   Cal.4th at 1007); *John R.*, 48 Cal.3d at 449.  All of these descriptions apply to the

19   conduct alleged against Mr. Rizzo and, for purposes of the instant Motion, the

20   only question is whether Mr. Rizzo is "potentially" an insured under the Policy

21   based on the allegations in the complaints.  *Gray v. Zurich Ins. Co.*, 65 Cal.2d

22   263, 275 n.15 (1966).  The simple fact that the trial court expressly ruled that Mr.

23   Rizzo is entitled to legislative immunity for the acts alleged in the complaints

24   against him confirms that Mr. Rizzo's conduct was incidentally, if not directly,

25   related to his employment duties or tasks and that the conduct occurred within

26   the course and scope of Mr. Rizzo's employment.

27

28

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

**B.   THE COMPLAINTS SEEK DAMAGES FROM MR. RIZZO.**

As set forth above, ICSOP does not meaningfully respond to the points raised in Mr. Rizzo's Motion in which Mr. Rizzo sets forth the express allegations of the AG confirming that it seeks to hold Mr. Rizzo personally liable for expenditures that Mr. Rizzo approved.  ICSOP simply ignores these allegations and pretends that the AG "disavowed" these damage claims. (Opposition, p.18. lns.6-7).

This Court has expressly held, based on similar facts, that the "restitution" that the AG is seeking to recover constitutes "'damages' for the purpose of interpreting the insurance policy." *Los Osos Cmty. Servs. Dist. v. Am. Alternative Ins. Corp. (Los Osos)*, 585 F. Supp. 2d 1195, 1205-06 (C.D. Cal. 2008) ("On its face, this requested relief satisfies all of the elements of the ordinary definition of damages: it constitutes compensation in money, albeit indirect, recovered by a party for loss or detriment.  Plaintiffs have therefore satisfied their burden of showing that there is a potential for coverage under the policy.  The burden thus shifts to Defendant to show there is no possibility that [Plaintiffs'] claims are covered.").  ICSOP's main argument, therefore, has already been rejected by this Court.

ICSOP attempts to avoid the express holding in *Los Osos* by asserting the factually false statement that the AG in this case only seeks "restoration of funds to the City that were wrongfully acquired by Rizzo and his colleagues" (Opposition, p.19, lns.12-13) and is not seeking "reimbursement of . . . monies wrongfully paid."  (Opposition, p.18, ln.27-28).  ICSOP attempts to analogize the instant case to *Bank of West v. Super. Ct. (Indust. Indem. Co.)*, 2 Cal.4th 1254, 1266 (1992), which held that disgorgement of money wrongfully <u>acquired</u> does not constitute damages.  (Opposition, p.16, lns.15-23).  This effort ignores the fact that the AG expressly alleges in its FAC and in its opposition to Mr. Rizzo's

11.

1    demurrer that Mr. Rizzo "failed to exercise due care in <u>approving</u> public
2    expenditures, including . . . Spaccia and Adams employment contracts," and that
3    under *Stanson v. Mott*, 17 Cal.3d 206, 226-27 (1976), Mr. Rizzo "'may be
4    subject to <u>personal liability</u> for improper <u>expenditures</u> made in the absence of
5    such due care.'"  (Stipulation, Ex. O (AG's Opposition), p.19, ln.19-p.20, ln.2;
6    UF 52, 56 (citing to Stipulation, Ex. C (AG's FAC)), ¶¶ 98, 106).  Consequently,
7    since the AG expressly alleges that Mr. Rizzo did authorize payments
8    "wrongfully paid" to someone else, and that Mr. Rizzo "may be subject to
9    personal liability," *Los Osos* is directly on point, *Bank of West* is not, and ICSOP
10   must therefore defend Mr. Rizzo.
11         ICSOP further argues in its Opposition that the AG disclaimed any intent
12   to seek "damages" and such "[e]xpress disclaimers by a party can be used for
13   purposes of determining whether there is a duty to defend."  (Opposition, p.15,
14   ln.28-p.16, ln.2).  The cases cited by ICSOP—*Low v. Golden Eagle Ins. Co.*, 99
15   Cal.App.4th 109, 113 (2002) and *Sony Computer Entertainment America, Inc. v.*
16   *American Home Assurance Co. (Sony Computer)*, 532 F.3d 1007, 1020 (9th Cir.
17   2008)—both involve an insured "speculating about extraneous 'facts' regarding
18   potential liability or ways in which the third party claimant might amend its
19   complaint at some future date."  *Low*, 99 Cal.App.4th at 113.  Mr. Rizzo is not
20   speculating about claims that the AG might file in the future.  The claims for
21   which Mr. Rizzo seeks a defense are claims expressly pled in the AG's FAC.
22   Moreover, the AG is not "expressly disclaiming" its damage claim when it
23   argues in the same pleading where the purported "disclaimer" appears that the
24   AG is also seeking to hold Mr. Rizzo personally liable for money damages.
25   (Stipulation, Ex. O, p.19, ln.19-p.20, ln.2).  Separately, the *Low* and *Sony*
26   *Computer* courts referred to disclaimers appearing on the face of the complaints.
27   *Low*, 99 Cal.App.4th at 113-14; *Sony Computer*, 532 F.3d at 1020.  In the instant

28

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

12.

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF*
*MOTION FOR PARTIAL SUMMARY JUDGMENT*

1   case, the underlying complaint expressly seeks covered damages, and ICSOP is

2   relying solely on a purported disclaimer appearing in a non-binding pleading that

3   also contains arguments that directly contradict the purported disclaimer.

4          Finally, ICSOP misses the entire point of Mr. Rizzo's citation to *Jogani v.*

5   *Super. Ct.*, 165 Cal.App.4th 901, 909-10 (2008).  (Opposition, p.17, lns.14-26).

6   Mr. Rizzo does not rely on *Jogani* for purposes of establishing whether the

7   damages sought by the AG are properly classified as "money damages" or

8   "restitution."  As set forth above, the AG's own allegations in its FAC, its

9   arguments in opposition to demurrer and in its opening brief on appeal, and

10  authorities such as *Los Osos*, all confirm that the damages the AG seeks to

11  recover are money damages and not restitution.  The *Jogani* case confirms that

12  even accepting the AG's improper "restitution" label, the damages still do not

13  fall within "Exclusion EE" of the Policy.  "Exclusion EE" excludes coverage

14  "[f]or injunctions, equitable relief, or any other form of relief other than the

15  payment of money damages," and Mr. Rizzo takes issue with the fact that ICSOP

16  unilaterally determined that any claim for restitution falls within the undefined

17  term "equitable relief" found in "Exclusion EE."  This legal conclusion was

18  made by a claims director for ICSOP, not even a lawyer (*see* Decl. of V. Beary

19  (Doc. No. 24-2), Ex. 1, ¶¶ 1, 6), and the conclusion is wrong based in part on the

20  holding in *Jogani* that "restitution can be a legal, as opposed to equitable,

21  remedy."  *Jogani*, 165 Cal.App.4th at 909-10.   There is no basis for ICSOP to

22  treat payment by way of restitution as falling under "Exclusion EE's" equitable

23  relief provision, and any ambiguities with respect to an exclusion in the Policy

24  must be resolved in Mr. Rizzo's favor.  *B & E Convalescent Center*, 8

25  Cal.App.4th at 99-100.

26

27

28

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF*
*MOTION FOR PARTIAL SUMMARY JUDGMENT*

1

2

### C.    ICSOP HAS A DUTY TO DEFEND THE AG'S AND CITY'S PUNITIVE DAMAGES CLAIMS.

3      In his Motion, Mr. Rizzo argued that regardless of the "restitution" issues,

4  ICSOP still had a clear duty to defend Mr. Rizzo because the AG and the City

5  both expressly allege that they are seeking punitive damages, which is a form of

6  money damages.  (UF 21, 22).  As set forth in Mr. Rizzo's Motion, even though

7  "California public policy bars *indemnification* against punitive damage awards

8  . . . the insurer's obligation to *defend* extends to punitive damage claims,

9  provided the policy does not conspicuously disclaim this duty." (Motion, p.12,

10  lns.4-7 (quoting *J.B. Aguerre, Inc. v. Am. Guarantee & Liability Ins. Co.*, 59

11  Cal.App.4th 6, 14 (1997)).  "[A]bsent a <u>clear and conspicuous exclusion</u> in the

12  policy to the contrary" it is reasonable for the insured to expect that the insurer's

13  duty to defend includes the defense of a punitive damages claim.  *Ohio Casualty*

14  *Ins. Co. v. Hubbard*, 162 Cal.App.3d 939, 948 (1984); *see also B & E*

15  *Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 99-100

16  (1992) ("If the coverage provisions in any policy of insurance are unclear or the

17  exclusions are ambiguous, so that a reasonable purchaser of the policy would not

18  realize that the risk is excluded and thus would reasonably expect the insurer to

19  furnish a defense, a defense is required.").

20      In its Opposition, ICSOP argues that punitive damages are "excluded"

21  under the Policy.  (Opposition, p.21, ln.16).  Once again, consistent with all other

22  arguments set forth in its Opposition, ICSOP makes no reference whatsoever to

23  the actual standard, which in this case is "a clear and conspicuous exclusion."

24  The purported exclusion relied upon by ICSOP is not "clear and conspicuous."

25  Indeed, the terms "punitive damages" or "exemplary damages" do not appear

26  once in the 63-page Policy.  (Stipulation, Ex. A).  ICSOP therefore argues that

27  since "Exclusion O" of the Policy provides that there is no duty to defend claims

28

14.

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

"arising out of an alleged willful commission of crime . . . or other dishonest, fraudulent, or malicious act," and California Civil Code section 3294 (not referenced in the Policy) provides that "oppression, fraud or malice" must be proven to establish a punitive damages claim, punitive damages cannot therefore be covered by the Policy.  (Opposition, p.21, lns.20-27).

First, there is no "clear and conspicuous" exclusion when an exclusion requires an insured to have personal knowledge outside of the Policy of California Civil Code section 3294 and the elements for a punitive damages claim.  Second, although "Exclusion O" refers to fraud and malice, the exclusion does <u>not</u> refer to "oppression."  The AG does not specify whether its punitive damages claim is based on oppression, fraud, and/or malice, but the City expressly alleges that its punitive damages claim <u>is</u> based on "oppression" (Stipulation, Ex. G, ¶ 32), a basis for punitive damages contemplated by section 3294 but not included in the wording of "Exclusion O."  Third, as set forth in greater detail below, "Exclusion O" cannot apply until there had been a final adjudication of "fraudulent or malicious" conduct by Mr. Rizzo and, until that time, ICSOP must defend Mr. Rizzo.

**D.   ICSOP CANNOT DENY MR. RIZZO A DEFENSE BASED ON "EXCLUSIONS O AND P."**

In addition to improperly relying on "Exclusion O" for purposes of avoiding the fact that the AG's and City's punitive damages claims constitute money damages, ICSOP also relies on "Exclusions O and P" as an independent basis for denying coverage altogether.  Although ICSOP did not rely on "Exclusions O and P" when it initially agreed to defend Mr. Rizzo, and also did not rely on these exclusions as a basis to subsequently withdraw its defense, ICSOP now asserts that it can exercise its discretion to deny Mr. Rizzo a defense based on these exclusions.  "Exclusions O and P" of the Policy purport to afford

15.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1   ICSOP the discretion to deny Mr. Rizzo a defense for claims or suits against Mr.

2   Rizzo arising out of: (1) "an alleged willful commission of a crime;" (2) "[a]

3   dishonest, fraudulent or malicious act;" or (3) "[a] wrongful act for gain, profit,

4   or advantage to which you are not legally entitled." (Stipulation, Ex. A, p.16).

5          ICSOP's new reliance on these exclusions is flawed for many reasons, and

6   the fact that it did not rely on these exclusions earlier highlights the fact that they

7   do not provide a sufficient basis to support denial of a defense under the facts of

8   this case. ICSOP argues that "Exclusions O and P" apply because "[t]here is not

9   a single claim made by either the [AG] or the City that does not 'arise out of'

10  allegations Rizzo's conduct was not only wrong but dishonest." (Opposition,

11  p.21, lns.4-6). However, once again, ICSOP ignores the many allegations that

12  cannot possibly fall within "Exclusions O and P." As set forth above, the AG's

13  FAC includes claims for <u>negligence</u>, specifically that Mr. Rizzo's "failed to

14  exercise due care and reasonable diligence in approving the employment

15  contracts of Spaccia and Adams." (Rizzo's UF 56 (citing Stipulation, Ex. C, ¶

16  106)). Similarly, the City repeatedly alleges that Mr. Rizzo breached his duties

17  and acted negligently. (Rizzo's UF 66-69). Under no circumstances can these

18  negligence claims fall under "Exclusions O or P," and if even a single claim in a

19  multi-count complaint is potentially covered, the insurer must defend the entire

20  action. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 1084 (1993).

21         Additionally, the allegations relied upon by ICSOP do not even fall within

22  the exclusions. The first category under "Exclusion O" relates to "an alleged

23  willful commission of a crime." ICSOP makes the point that "Rizzo concedes

24  that all of the facts supporting the civil actions are included in the criminal

25  actions" (Opposition, p.21, lns.6-8), however, ICSOP fails to realize that Mr.

26  Rizzo is not alleged to have <u>willfully</u> committed any crime in the Criminal

27  Actions. The majority of the criminal charges pending against Mr. Rizzo are

28

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

16.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

allegations involving misappropriation of public funds under California Penal Code section 424.  Section 424 is a <u>general intent crime</u>, and there is no requirement that Mr. Rizzo act "willfully" or otherwise have a dishonest motive. *People v. Dillon*, 199 Cal. 1 (1926).  Fraudulent intent is not an element of the crime of misappropriation of public funds.  *People v. Qui Mei Lee*, 48 Cal.App.3d 516, 521 n.2 (1975).  Section 424 is not an embezzlement statute and does not require proof of an intent to steal or misappropriate, but rather the intentional doing of an act that results in the misappropriation.  *People v. Holtzendorff*, 177 Cal.App.2d 788, 795-96 (1960).  The criminal complaints filed against Mr. Rizzo do not allege willful violations of section 424 (Stipulation, Exs. I-L), and the reason they do not is because most of the criminal counts against Mr. Rizzo involved a loan program that everyone in the City believed was legal.  These are the same loans that form the basis of the City's breach of fiduciary duty claim against Mr. Rizzo.  (Stipulation, Ex. D, ¶ 33; Ex. E, ¶ 33). If Mr. Rizzo technically lacked authority to approve a City expenditure, even if he negligently believed that he was authorized to make the expenditure, he would be guilty of a section 424 violation even though he had an otherwise innocent state of mind.  *Stark v. Super. Ct.*, 52 Cal.4th 368, 398 (2011).

With regard to the two remaining categories of "Exclusions O and P"—a "dishonest, fraudulent or malicious act" and a "wrongful act for gain, profit, or advantage"—these exclusions cannot possibly apply until there has been a final adjudication on the merits of the underlying allegations.  The word "alleged" does not even appear with regard to these exclusions, and ICSOP confirmed in its withdrawal letter that any reliance on "Exclusions O and P," even for the category relating to "an alleged willful commissions of a crime," requires a final adjudication before the exclusions could apply.  ICSOP stated in its withdrawal letter: "Furthermore, <u>to the extent any damages awarded</u> fall within the

17.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  exclusions relating to crime and fraudulent acts or personal profit (Exclusions O

2  and P), coverage would not apply." (Stipulation, Ex. Q, p.4). Since there has not

3  yet been an adjudication of any claims against Mr. Rizzo, the exclusions cannot

4  possibly apply. In fact, the only adjudication to date has been the trial court's

5  <u>dismissal</u> of the AG's claims, which confirmed the inapplicability of "Exclusions

6  O and P" since the dismissal was based in part on legislative immunity for

7  official acts.

8      **E.**     **MR. RIZZO'S CROSS-COMPLAINT IS A "REASONABLE**

9                      **AND NECESSARY" EXPENSE TO MINIMIZE LIABILITY**

10                      **IN THE CIVIL ACTIONS.**

11      ICSOP's Opposition completely ignores the controlling authority from the

12  California Supreme Court on the issue of Mr. Rizzo's entitlement to defense

13  costs associated with his Cross-Complaint against the City and his defense of the

14  Criminal Actions. ICSOP's Opposition does not reference once the holding in

15  *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61 (1997), and

16  instead relies on cases involving facts that have no relevance whatsoever to the

17  instant case. ICSOP also ignores the critical fact that in its December 16, 2010

18  determination letter, ICSOP agreed that Mr. Rizzo's Cross-Complaint against the

19  City for a defense and indemnification "amount[ed] to a reasonable and

20  necessary effort to avoid or at least minimize liability" (*Aerojet-General Corp.*,

21  17 Cal.4th at 61), and agreed to pay defense costs associated with Mr. Rizzo's

22  Cross-Complaint against the City.

23      In responding to Mr. Rizzo's claim that he is entitled to defense costs

24  associated with his Cross-Complaint, ICSOP cites to two cases that stand for the

25  proposition that an insurer is not required to pay costs associated with cross-

26  complaints seeking <u>affirmative relief</u> against a plaintiff. (Opposition, p.22,

27  lns.17-24 (citing *James 3 Corp. v. Truck Ins. Exchg.*, 91 Cal.App.4th 1093, 1104

28

18.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  (2001); *Silva & Hill Constr. Co. v. Employers Mut. Liab. Ins. Co.*, 19 Cal.App.3d

2  914, 927 (1971)).  ICSOP even argues in its Opposition: "An insurer's duty to

3  defend does not encompass an obligation to prosecute an insured's <u>affirmative</u>

4  <u>claims</u> against third-parties" (Opposition, p.22, lns.17-18 (emphasis added)),

5  while conceding in a footnote that "[i]f there were a duty to defend, an

6  affirmative claim <u>inextricably linked</u> to aiding the insurer's defense may be part

7  of that defense."  (Opposition, p.22, n.2).

8          Once again, ICSOP ignores the express allegations in the underlying

9  complaints.  Mr. Rizzo is not seeking any affirmative relief against the City in

10  his Cross-Complaint.  Mr. Rizzo's Cross-Complaint is for <u>declaratory relief</u> only.

11  (Stipulation, Ex. H).  *James 3 Corp.* and *Silva & Hill Const. Co.* are both cases

12  where an insured was attempting to recover costs associated with its prosecution

13  of claims for affirmative relief that did not amount to "reasonable and necessary

14  effort[s] to avoid or at least minimize liability" in the covered action.  (*See*

15  Opposition, p.22, lns.20-22 (quoting *Silva & Hill Const. Co.*, 19 Cal.App.3d at

16  927 ("duty to defend could not extend to requiring the insurer to take <u>affirmative</u>

17  <u>action</u> to <u>recover money</u>")).  In the instant action, Mr. Rizzo filed his Cross-

18  Complaint against the City for a defense and indemnification in order to

19  minimize his liability in the AG's Civil Action.  ICSOP's decision to simply

20  ignore the California Supreme Court's holding in *Aerojet-General Corp.* only

21  confirms the lack of any basis for ICSOP to deny Mr. Rizzo these defense costs.

22      **F.    THE DEFENSE OF THE CRIMINAL ACTIONS IS A**

23            **"REASONABLE AND NECESSARY" EXPENSE TO**

24            **MINIMIZE LIABILITY IN THE CIVIL ACTIONS.**

25          Mr. Rizzo is also seeking defense costs associated with the pending

26  Criminal Actions because there are pending Civil Actions for which Mr. Rizzo

27  faces liability covered by the Policy that require the successful defense of the

28

19.

Criminal Actions to avoid liability in the Civil Actions. Although Mr. Rizzo erred on the side of caution by asserting that 57 of the 64 claims asserted against him in the Criminal Actions were based on the same facts asserted by the AG and/or the City in the Civil Actions (Rizzo's UF 27), ICSOP contends that more than 57 of the claims are based on those same facts. (*See* ICSOP's UF 27 (Doc. No. 24-1)). ICSOP's "correction" on this point, which is fatal to its position, reveals ICSOP's utter confusion about the significance of this critical fact. The Civil and Criminal Actions are inextricably intertwined because they are based on the identical facts. In fact, the AG and DA "brought a <u>joint</u> motion to stay the civil action pending resolution of the criminal actions . . . to prevent [Mr. Rizzo] from circumventing criminal discovery procedures by seeking civil discovery for the benefit of [his] criminal defense." (Stipulation, Ex. S, p.7-8). The AG and DA argued to the trial court for the Civil Actions that "judicial economy" would be served by staying the Civil Action because <u>"completion of the criminal action first would . . . possibly resolve the civil action without further litigation."</u> (*Id.* at p.46). The AG admits in its opening brief on appeal that Mr. Rizzo will face liability in the Civil Actions if there is a conviction in the Criminal Actions. (*Id.*) Mr. Rizzo, therefore, <u>must</u> defend the Criminal Actions to avoid liability in the Civil Actions, and ICSOP must bear these necessary costs.

Mr. Rizzo is entitled to "defense costs" under the Policy, and "defense costs" is not a defined term. (Stipulation, Ex. A, p.1 (Sections I.A.2, I.A.3, I.B.1 (insuring agreements); p.8 (Section II.HH) (defining "ultimate net loss")). Any ambiguities in a policy are to be resolved in the insured's favor. *B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 99-100 (1992). Once again, ICSOP ignores the holding of the California Supreme Court in *Aerojet-General Corp.* and the federal authorities relying on *Aerojet-General Corp.*, which confirm that Mr. Rizzo is entitled to defense costs associated with

20.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

any parallel proceedings if they "amount to a reasonable and necessary effort to avoid or at least minimize liability." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th at 61; *see also NextG Networks, Inc. v. One Beacon Am. Ins. Co.*, 2012 WL 440885 (N.D. Cal. Feb. 10, 2012); *Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*, 2004 WL 1737297, at *7 (N.D. Cal. Aug. 4, 2004). None of these authorities are ever cited in ICSOP's Opposition, as ICSOP's solution for dealing with unfavorable authority is to ignore it.

     In its Opposition, ICSOP further argues that it is not required to defend Mr. Rizzo against the Criminal Actions because the Criminal Actions are not "claims" or "suits" as those terms are defined in the policies. (Opposition, p.24, lns.5-13). This same argument was raised by the insurer in *NextG Networks, Inc.*, where the insurer argued "that because the CPUC proceeding is not a 'suit' for 'damages' under the terms of the policy," no defense was required. *NextG Networks, Inc.*, 2012 WL 440885, at *3. The district court in *NextG Networks, Inc.*, however, rejected this argument because it was inconsequential whether the parallel action on its own fell within the scope of the policy. *Id.* Here too, ICSOP is deliberately confusing the issue of whether the parallel Criminal Actions independently fall within the scope of the Policy with the separate issue of whether defending the parallel Criminal Actions is a reasonable and necessary expense to minimize Mr. Rizzo's liability in the Civil Actions.

     ICSOP further makes the point that the Criminal Actions do not seek "damages" covered by the Policy. (Opposition, p.24, ln.14-p.25, ln.4). Again, this is irrelevant. Mr. Rizzo is not seeking indemnification for any fines or penalties he may be required to pay as a result of the Criminal Actions. Rather, Mr. Rizzo is seeking a defense of the Criminal Actions because, without such a defense, he is certain to face liability in the Civil Actions for damages covered by the Policy. The AG expressly argued that a conviction in the Criminal Action

21.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   will "<u>resolve the civil action without further litigation</u>."  (Stipulation, Ex. S,

2   p.46).  A defense is mandatory if it is reasonably necessary to minimize liability

3   for a potentially covered claim, regardless of whether the parallel proceeding

4   would itself constitute a covered claim, and Mr. Rizzo's defense of the Criminal

5   Actions is not just "reasonably necessary," but it is absolutely mandatory

6   because the claims in both actions are identical and a criminal conviction is

7   guaranteed to result in civil liability.

8          ICSOP's reliance on Insurance Code section 533.5 as an additional basis

9   for denying a defense in the Criminal Actions is similarly meritless.

10  (Opposition, p.25, lns.5-16).  Section 533.5 is not a bar to the defense of criminal

11  actions.  Courts interpreting section 533.5, including the Ninth Circuit, have

12  limited section 533.5 to apply only to cases where an insured is seeking

13  <u>indemnification</u> for a "fine, penalty, or restitution" sought by a government

14  agency, and only with respect to claims brought under the Unfair Competition

15  Laws ("UCL"), sections 17200 and 17500 of the California Business and

16  Professions Code.  *Bodell v. Walbrook Ins. Co.*, 119 F.3d 1411 (9th Cir. 1997).

17  In *Bodell* , the Ninth Circuit expressly held:

18          In 1990, § 533.5 was revised.  The statute was narrowed to apply
19          just to specified sections of the Business and Professions Code.
           . . .  The change in the order of the phrases referring to "criminal"
20          and "civil" proceedings was not, as the carriers contend, an
           attempt to expand the "criminal" clause to include *any* actions by
21          *any* prosecutorial agency.  More likely, it was an effort to make
           the revised statute clear by not burying the "criminal" clause
22          behind all the "Chapter" and "Section" information of the newly
           revised and narrowed "civil" clause.

23  *Id.* at 1416-17.

24          First, Mr. Rizzo is not seeking indemnification for a "fine, penalty or

25  restitution" that he may face in the Criminal Actions.  Second, in any event, none

26  of the claims in the Criminal or Civil Actions are UCL claims.  Section 533.5

27  therefore has no application to this case.  In its Opposition, ICSOP cites to *Stein*

28

                                          22.

*v. International Insurance Co.*, 217 Cal.App.3d 609, 614 (1990) and *United Pacific Ins. Co. v. Hall (United Pacific)*, 199 Cal.App.3d 551, 556, (1988) in support of the proposition that "where an insurer has a duty to defend a civil suit . . . that insurer has no obligation to defend the insured in a related criminal or administrative proceedings." (Opposition, p.23, lns.14-16).  *Stein* and *United Pacific*, however, both confirm that Section 533.5 does not relieve ICSOP from paying these defense costs.  In *Stein*, there was <u>no</u> pending civil case at the time a criminal case was tendered for a defense, and the court held that since "Stein's <u>only</u> damages were the amount spent on a criminal defense for Warner, we readily conclude International is not responsible for the cost of such a defense." *Id.*  The court expressly held that "[w]hile <u>nothing</u> would preclude International from choosing such a course of action itself . . .  [a defense] was not warranted by the nebulous possibility of a future civil suit." *Id.* at 615.

Similarly, in *United Pacific*, criminal defense costs (associated with a juvenile proceeding) could have been paid under the duty to defend, but were not owed because the court ruled that the insured's attorney's stated reason for participating in the parallel juvenile proceeding, to "observe the demeanor of the witnesses[,] . . . could have been accomplished by depositions in the civil damage action." *United Pacific*, 199 Cal.App.3d at 557.  In *United Pacific*, the court held that the insured's attorney's "participation in the juvenile proceeding was not a reasonable way of achieving that tactical end." *Id.*  In the instant case, however, defending the Criminal Actions is not one of several ways of achieving the tactical end of avoiding liability in the Civil Actions.  Rather, it is the only way, since Mr. Rizzo must defend the Criminal Actions to avoid civil liability in the pending Civil Actions.

Finally, ICSOP asserts in its Motion that, under California Civil Code section 1668, "contracts that cover willful conduct are contrary to the law."

23.

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT*

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Law Offices of James W. Spertus
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

1   (Opposition, p.25, lns.15-16).  First, as set forth above in greater detail, the

2   allegations against Mr. Rizzo do not involve "willful" misconduct.  *People v.*

3   *Dillon*, 199 Cal. 1 (1926) (holding that Penal Code § 424 is a general intent

4   crime).  Second, this same exact argument was raised by the insurer in *Bodell*,

5   and in that case the Ninth Circuit expressly rejected the argument and held:

6   "Although § 1668 has been construed as prohibiting an insurer from

7   indemnifying an insured for liability caused by his or her willful misconduct

8   [citation omitted], neither § 1668 nor the case law suggests that providing

9   representation to an individual in a proceeding involving such conduct violates

10  public policy."  *Bodell*, 119 F.3d at 1417.

11      *Bodell* found a duty to defend regardless of Insurance Code section 533.5

12  and Civil Code section 1668 by citing to *Gray v. Zurich Insurance Co.*, 65

13  Cal.2d 263 (1966), and noting that in referring to section 533 and section 1668,

14  *Gray* "teaches that an insurer has a duty to defend in a civil assault action despite

15  the contention that such a construction of the policy would violate California

16  public policy" since defending the insured in the criminal proceeding "'d[id] not

17  encourage' criminal conduct."  *Id.* at 1417-18.

18      There is simply no basis for ICSOP to deny Mr. Rizzo a defense of the

19  Criminal Actions because these costs are "reasonable and necessary . . . to avoid

20  or at least minimize liability."  *Aerojet-General Corp. v. Transport Indem. Co.*,

21  17 Cal.4th 38, 61 (1997).  Consequently, ICSOP must defend Mr. Rizzo against

22  the Criminal Actions in order to defend the Civil Actions.

23  //

24  //

25  //

26  //

27  //

28

24.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Rizzo respectfully requests that the Court grant this Motion and determine that ICSOP must defend Mr. Rizzo in the Civil and Criminal Actions.

Dated:   September 7, 2012          LAW OFFICES OF JAMES W. SPERTUS

By:    /S_____

James W. Spertus
Ezra D. Landes
Amy M. Hinkley
Attorneys for Plaintiff Robert A. Rizzo

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*PLAINTIFF ROBERT A. RIZZO'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT*