1   **SARA M. THORPE (SBN: 146529)**
2   **VANESSA O. BEARY  (SBN: 225699)**
    GORDON & REES LLP
3   275 Battery Street, Suite 2000
    San Francisco, CA  94111
4   Telephone:  (415) 986-5900
    Facsimile:   (415) 986-8054
5

6
    Attorneys for Defendant
7   THE INSURANCE COMPANY OF
    THE STATE OF PENNSYLVANIA
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  ROBERT A. RIZZO, an Individual, | )  Case No.:  CV-12-04347 DMG (FMOx) |
| 13                          Plaintiff, | )  REPLY BRIEF OF THE INSURANCE |
| 14          vs. | )  COMPANY OF THE STATE OF PENNSYLVANIA IN SUPPORT OF MOTION FOR SUMMARY |
| 15  THE INSURANCE COMPANY OF | )  JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL |
| 16  THE STATE OF PENNSYLVANIA, a | )  SUMMARY JUDGMENT |
|     Pennsylvania corporation, and | ) |
| 17  CHARTIS CLAIMS, INC., a Delaware | )  Accompanying Papers: |
|     corporation, | )  Response to Rizzo's Statement of Genuine Disputes of Fact; Response to |
| 18                          Defendants. | )  Rizzo's Evidentiary Objection; |
| 19 | ) |
|     | )  Date:          September 21, 2012 |
| 20 | )  Time:          2:00 p.m. |
|     | )  Courtroom:  7 |
| 21 | )  Judge:        Hon. Dolly M. Gee |
| 22 | )  Complaint filed:  May 18, 2012 |
| 23 | ) |
| 24 | ) |
| 25 | ) |
| 26 | ) |

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ................................................................................ 1

II.     THE CLAIMS AGAINST RIZZO ...................................................... 2

III.    ARGUMENT ...................................................................................... 3

        A.     There Is No Duty To Defend Claims That Cannot Be Covered .......... 3

        B.     There Is No Duty To Defend The Civil Action ................................... 4

               1.     Rizzo Does Not Qualify As An Insured ..................................... 4

               2.     The Civil Action Does Not Seek Damages ................................ 8

               3.     The State's And City's Claims Are Excluded ......................... 12

        C.     There Is No Duty To Defend The Criminal Actions ......................... 14

        D.     There Is No Duty To Indemnify, No Breach Of Contract, No
               Breach Of The Implied Covenant Of Good Faith, And No Basis
               For A Punitive Damage Award ........................................................ 17

IV.     CONCLUSION ................................................................................ 17

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

ICSOP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)

TABLE OF AUTHORITIES

Page No.

## Cases

*Alma W. v. Oakland Unified School Dist.*
123 Cal.App.3d 133 (1981) ...............................................................5, 8

*Bank of the West v. Superior Court*
2 Cal.4th 1254 (1992) ......................................................................9, 11

*Bareno v. Employers Life Ins. Co.*
7 Cal.3d 875 (1972) ..............................................................................12

*Bodell v. Wallbrook Ins. Co.*
119 F.3d 1411 (9th Cir. 1997) .......................................................16, 17

*California Union Ins. Co. v. Poppy Ridge Partners*
224 Cal.App.3d 897 (1990) ...................................................................12

*Cassady v. Morgan, Lewis & Bockius, LLP*
145 Cal.App.4th 220 (2006) ...................................................................5

*Chemstar, Inc. v. Liberty Mutual Ins. Co.*
797 F.Supp. 1541 (C.D. Cal. 1992) .......................................................12

*Collin v. American Empire Ins. Co.*
21 Cal.App.4th 787 (1994) .....................................................................4

*Continental Cas. Co. v. City of Richmond*
763 F.2d 1076 (9th Cir. 1985) .......................................................13, 14

*Farmers Ins. Group v. County of Santa Clara*
11 Cal.4th 992 (1995) .............................................................................6

*Farr v. Farm Bureau Insurance Co.*
61 F.3d 677 (8th Cir. 1995) ...........................................................5, 7, 15

*Fire Ins. Exchange v. Superior Court*
181 Cal.App.4th 388 (2010) .................................................................12

*Gunderson v. Fire Ins. Exchg.,*
37 Cal.App.4th 1106 (1995) .................................................................10

*J.B. Aguerre, Inc. v. American Guarantee & Liab. Ins. Co.*
59 Cal.App.4th 6 (1997) ..................................................................11, 12

*Jaffe v. Cranford Ins. Co.*
168 Cal.App.3d 930 (1985) ...................................................................16

*Jogani v. Superior Court*
165 Cal.App.4th 901 (2008) .................................................................8, 9

*John R. v. Oakland Unified School Dist.*
48 Cal.3d 438 (1989) ..............................................................................5

*Lomes v. Hartford Financial Services Group, Inc.*
88 Cal.App.4th 127 (2001) ........................................................5, 6, 7, 15

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

ii

# TABLE OF AUTHORITIES

Page No.

*Mary M. v. City of Los Angeles*
54 Cal.3d 202 (1991) ...................................................................5, 6

*Medill v. Westport Ins. Co.*
143 Cal.App.4th 819 (2006) ................................................................14

*Milazo v. Gulf Insurance Co.*
224 Cal.App.3d 1528 (1990) ........................................................5, 7, 15

*Mirpad, LLC v. Calif. Ins. Guar. Assoc.*
132 Cal. App. 4th 1058 (2005) ...............................................................4

*Montrose Chem. Corp. v. Superior Court*
6 Cal.4th 287 (1993) ...........................................................................3

*NextG Networks, Inc. v. One Beacon America Ins. Co.*
2012 WL 440885, at *15-16 (N.D. Cal. 2012) ...................................15

*Pacific Indemnity Co. v. Truck Ins. Exchg.*
270 Cal.App.2d 700 (1969) ..................................................................14

*PPG Industries, Inc. v. Transamerica Ins. Co.*
20 Cal.4th 310 (1999) .........................................................................11

*Stanson v. Mott*
17 Cal.3d 206 (1976) ........................................................................8, 9

*State Farm Fire & Cas. Co. v. Century Indem. Co.*
59 Cal.App.4th 648 (1997) ....................................................................6

*State Farm Fire and Casualty Co. v. Superior Court*
191 Cal.App.3d 74 (1987) ...................................................................16

*Stein v. International Ins. Co.*
217 Cal.App.3d 609 (1990) ............................................................14, 15

*Stellar v. State Farm General Ins. Co.*
157 Cal.App.4th 1498 (2007) ..............................................................12

*Stone v. Hartford Casualty Co.*
470 F.Supp.2d 1088 (C.D. Cal. 2006) .................................................12

*The Los Osos Community Services District v. American Alternative Insurance Corporation*
585 F.Supp.2d 1195 (C.D. Cal. 2008) ..........................................8, 9, 10

*United Pacific Ins. Co. v. Hall*
199 Cal.App.3d 551 (1988) ............................................................14, 15

*Waller v. Truck Ins. Exchg.*
11 Cal.4th 1 (1995) .......................................................................4, 10

*White v. County of Orange*
166 Cal.App.3d 566 (1985) ...............................................................5, 8

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ICSOP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.:  CV-12-04347 DMG (FMOX)

TABLE OF AUTHORITIES

Page No.

*Wolfes v. Burlington Ins. Co.*
   2010 U.S. Dist. LEXIS 21753 (N.D. Cal. 2010) ...........................................5, 7, 8

**Statutes**

California Civil Code
   section 3294 ...................................................................................................11

California Insurance Code
   section 533.5 ...........................................................................................16, 17

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ICSOP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# I.   INTRODUCTION

Robert Rizzo, in opposing the motion for summary judgment filed by The Insurance Company of the State of Pennsylvania ("ICSOP") on the issue of whether there is a duty to defend, states ICSOP ignores or misstates everything - the facts, the policy language, and the law.  (Rizzo Opp. at 1:3-5.)  But Rizzo is flat wrong.  The State of California and City of Bell's amended complaints taken in conjunction with the ICSOP Policy and California law lead to one conclusion - there is no duty to defend either the Civil Action or Criminal Actions for multiple reasons.

First, Rizzo does not qualify as an insured.  Despite efforts to distinguish the case law on which ICSOP relies, there is no avoiding the rule that a person is not an insured where his very acts are antagonistic to and not in the interests of his employer or the entity for which he is an officer or director.  Rizzo cites to no case that has held differently.  The claims against Rizzo are not by parties seeking redress from the City and its employees; the claims are by the City itself (and the State standing in the City's shoes).  It makes no sense, and is contrary to California law, for the City's own insurer to defend against claims the City is making against its employee / appointed official who was acting in his own self-interest and for his own financial benefit.

Second, there is no duty to defend the Civil Action because the State is not seeking damages.  The State disavowed any such claim.  Rizzo does not dispute that damages are required for there to be a potential for coverage under the ICSOP Policy.  But Rizzo would have this Court ignore the State's statements.  He argues the claims against him fit within the *Los Osos* decision, but the facts in that case were opposite what happened here.  No case supports Rizzo's conclusion.

Third, Exclusions O and P in the ICSOP Policy preclude coverage for every claim the State and City make.  Exclusion O focuses on dishonest acts, malice and fraud, while Exclusion P addresses "wrongful acts for gain, profit, or advantage to which you are not legally entitled."  The exclusions expressly provide there is no

1

duty to defend these types of claims.

Rizzo also continues to insist that the multiple, consolidated Criminal Actions should be defended.  There is no duty to defend Rizzo against the Criminal Actions because, again, Rizzo does not qualify as an insured.  Plus, the Criminal Actions are neither "claims" nor "suits" under the ICSOP policy, the Criminal Actions do not seek damages, and imposing a duty to defend the Criminal Actions would violate California statute and public policy.  Further, the Criminal Actions are not ancillary matters that are a "reasonable and necessary effort to avoid or at least minimize liability."  Rizzo has not made a requisite showing to support this argument, no California court supports his position, and none should because imposing a duty to defend a criminal lawsuit would be against public policy.

There cannot be coverage for these claims and, thus, there is no duty to defend.  ICSOP's motion for summary judgment should be granted in its entirety.

## II.   THE CLAIMS AGAINST RIZZO

The State's and City's complaints against Rizzo are not, as Rizzo would cast them, "a suit for professional negligence while acting in his official capacity." (Rizzo Opp. at 1:15-16.)  That statement puts quite a spin on the allegations.  A more accurate summary is taken right from the State's Complaint and City's Cross-Complaint.  The State alleges Rizzo and other City officers and employees "enriched themselves at the expense of the City and its citizens" by awarding themselves "salaries and benefits that grossly exceeded what were reasonable and commensurate with their … offices and duties."  (UMF # 2 [FAC at ¶¶ 1-2].)  The City alleges Rizzo "embezzled, stole and misappropriated millions of dollars in City funds." (UMF # 3 [TACC at ¶ 1].)  Rizzo enriched himself "at the expense of the City and its citizens," leaving the public to "foot[] the bill left by the [alleged] self-enriching activities." (UMF # 2, 3 [FAC at ¶¶ 1, 2, 6; TACC at ¶ 1].) [1]

_____

[1] Rizzo claims ICSOP omitted reference to the State's cause of action for negligence, which means ICSOP concedes "that the negligence allegations are fatal

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

In his Opposition, Rizzo makes two important concessions that also support that there is no duty to defend the Civil Action and Criminal Actions.  Rizzo says:

- "All claims raised in the Civil and Criminal Actions expressly allege that Mr. Rizzo abused the powers of his office while serving as CAO for the City."  (Rizzo Opp. at 6:17-19.)

- The claims in both the Civil and Criminal Actions are "identical." (*Id.* at 23:1-2.)

## III.  ARGUMENT

### A.    There Is No Duty To Defend Claims That *Cannot* Be Covered

Preliminarily, Rizzo argues the burden of proof is such that a duty to defend should be found.  However, as is explained with each argument, there *cannot* be coverage for claims against Rizzo, and thus there is no duty to defend.  *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993).[2]

---

to ICSOP's motion for summary judgment."  (Rizzo Opp. at 1:21-27.)  To the contrary, ICSOP's omission was entirely inadvertent.  ICSOP stipulated with Rizzo that the State consolidated two negligence causes of action when it amended its complaint. (*See* Fact Stip at ¶ 3.)  Further, ICSOP does not dispute the State's First Amended Complaint contains a cause of action for negligence.  (*See* UMF #2; ICSOP's Reply to Rizzo's Statement, # 26.)  In any event, the negligence cause of action is immaterial because Rizzo does not qualify as an insured under the ICSOP Policy, the State does not seek money damages, and that claim (like the others) is excluded.  The State's negligence clam expressly alleges Rizzo and other defendants awarded "excess compensation" to themselves that "provided no use or benefit to the City and constituted wasteful expenditure of public funds."  (UMF # 2 [FAC at ¶ 108].)  This falls within Exclusion P, as it arises out of Rizzo's "wrongful act for gain, profit, or advantage to which [he is] not legally entitled."  (UMF #14.)

[2] Rizzo suggests, in connection with the Criminal Actions, that the duty to defend arises not only under the duty to defend provisions of the ICSOP Policy, but under the provisions governing what ICSOP must pay on its insured's behalf following a judgment or settlement.  (Rizzo Opp. at 21:6-9.)  This is not a reasonable interpretation of the Policy.  ICSOP's duty to defend arises from the provision captioned "Defense and Defense Costs," which clearly states:  "We shall have the right and duty to defend, investigate and settle any claim or suit seeking damages

3

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**B.     There Is No Duty To Defend The Civil Action**

**1.     Rizzo Does Not Qualify As An Insured**

Rizzo claims ICSOP owed a duty to defend him against the Civil Action because he qualifies as an insured, even while he admits that: "all claims raised in the Civil and Criminal Actions expressly allege that Mr. Rizzo abused the powers of his office while serving as CAO [Chief Administrative Officer] for the City." (Rizzo Opp. at 6:17-19.)  Rizzo argues he need only show he was potentially covered by the ICSOP policy in order to qualify as such, citing *Mirpad, LLC v. Calif. Ins. Guar. Assoc.,* 132 Cal.App.4th 1058, 1068 (2005). (Rizzo Opp. at 6:15-16.)  But *Mirpad* does not stand for that proposition. Rather, that court explained that "where [as here] [the] only potential for ... [coverage] turns on resolution of [a] legal question, there is no duty to defend ... , unless and until the coverage issue is resolved in favor of the insured." *Id.* (citing, among others, *Waller v. Truck Ins. Exchg.*, 11 Cal.4th 1, 25-26 (1995)).  Here, as a matter of law, Rizzo does not qualify as an insured.

Rizzo argues he must be an insured under the City's insurance policy because, he "would face no liability or exposure in … the Civil … Action[] if he were not a public official acting in his official capacity [or within the course and scope of his employment] when doing the things alleged to be wrongful." (Rizzo Opp. at 9:12-10:2.)  But, Rizzo's position is contrary to California law – law that ICSOP has not "made up," as suggested by Rizzo.  (Rizzo Opp. at 8:1.)

While Rizzo was wearing the hat and holding the title of a City official, unquestionably his conduct was antagonistic to the City's interests.  An individual

covered by the terms and conditions of this Policy…."  (UMF # 11.)  "Ultimate net loss" (defined as the sum actually paid or payable due to a claim or suit for which [Rizzo is] liable" either by settlement or final judgment) is what is paid when there is *actual* coverage for a claim, and has nothing to do with a duty to defend.  *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 803 (1994) (duty to indemnify only where judgment is entered against insured on theory that is actually (not potentially) covered by the policy).

4

may be a partner, officer, director or employee acting in his "official capacity" when the allegedly wrongful acts were committed.  However, if that individual's conduct is antagonistic to the partnership, corporation or employer, that individual is not acting on behalf of the partnership for purposes of insurance coverage under the entity's insurance policy.  *Lomes v. Hartford Financial Services Group, Inc*., 88 Cal.App.4th 127 (2001); *Milazo v. Gulf Insurance Co*., 224 Cal.App.3d 1528 (1990); *Farr v. Farm Bureau Insurance Co.*, 61 F.3d 677 (8th Cir. 1995); *Wolfes v. Burlington Ins. Co.,* 2010 U.S. Dist. LEXIS 21753 (N.D. Cal. 2010).

Rizzo attempts to, but cannot, distinguish these authorities, and offers no contrary applicable authority.  Rizzo's cases have nothing to do with the situation here – whether there is a duty to defend an employee sued by his employer for acting in direct contravention of the employer's interests and for the employee's own financial self-interests.  In *Cassady*,[3] a legal malpractice case, there was no dispute the attorney was acting in the course and scope of his employment when sued for malpractice; the issue was whether the acts occurred while at that law firm or another law firm.  *White,*[4] a sexual molestation case, was later disapproved in *John R.,*[5] which held a school district could not be held vicariously liable for the actions of a teacher who sexually molested his student.  *Alma,*[6] another sexual misconduct case, held the employee was *not* acting in the scope of his employment because his sexual misconduct was neither required nor an incident of his employment and not a reasonably foreseeable consequence of the educational enterprise.  In *Mary M.,*[7] the court held the City could be held liable to an injured woman whom an on-duty police officer raped because the policy objectives behind application of the doctrine of *respondeat superior* were met.  Those objections are

---

[3] *Cassady v. Morgan, Lewis & Bockius, LLP,* 145 Cal.App.4th 220 (2006).
[4] *White v. County of Orange,* 166 Cal.App.3d 566, 571 (1985).
[5] *John R. v. Oakland Unified School Dist.,* 48 Cal.3d 438, 452 (1989).
[6] *Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 144 (1981).
[7] *Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 221 (1991).

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

ICSOP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)

preventive measures, compensation for victims, and spreading the risk. *Mary M.*, *supra,* 54 Cal.3d at 214-216. Those considerations have no application to a determination of whether Rizzo is an insured under the City's liability policy in connection with the City's lawsuit against Rizzo for financially abusing the City.

As ICSOP's motion explained, to determine whether there is a duty to defend under an insurance policy, an employee does not qualify as an insured if he is not acting in the course and scope of employment by "substantially deviat[ing] from the employment duties for personal purposes." *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 1004-1005 (1995); *State Farm Fire & Cas. Co. v. Century Indem. Co.,* 59 Cal.App.4th 648, 658 (1997). Rizzo fails to mention, much less discuss, either of these decisions.

Before attacking ICSOP's authorities, Rizzo argues the Order granting Rizzo's demurrer against the State somehow bolsters Rizzo's arguments. (Rizzo Opp. at 10:3-21.) Rizzo contends that by granting the demurrer based on the doctrine of legislative immunity, this means the State's claims include allegations Rizzo was acting on behalf of the City or in the course and scope of employment. This argument misses the point. Whether a legislator has immunity from civil liability based on legislative acts is wholly unrelated to whether an insurance policy contains a duty to defend Rizzo against his employer's claims that he embezzled, stole and misappropriated his employer's funds, enriching himself at his employer's expense.

California case law is decidely against Rizzo on this issue. Rizzo argues *Lomes* is inapplicable because Lomes was no longer an employee of the corporation when he allegedly defamed his former employer. *Lomes, supra,* 88 Cal.App.4th 127 (Rizzo Opp. at 10:22-11:2.) But, Lomes was still a director of the corporation when he made the defamatory comments that caused the corporation to lose its financing. *Id.* at 130. The insurer contended that because of his conduct, Lomes was not an insured under the corporation's policy. The court agreed,

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

6

1   explaining that to qualify as an insured, Lomes needed more than the title, he also

2   had to be fulfilling his duties as such.  *Id.* at 133.  Similarly, here, Rizzo could not

3   have been acting on behalf of the City of Bell when he enriched himself at the

4   expense of the City.

5        Rizzo claims *Milazo* is distinguishable because it involved a partnership.

6   *Milazo, supra,* 224 Cal.App.3d 1528.  However, that case is quite analogous to the

7   situation here.  When a partner acts to misappropriate a partnership asset, interest

8   or economic opportunity or to otherwise deprive the partnership, as a matter of

9   law, the partner is not acting as a partner and therefore is not covered by the

10  partnership's policy when the partnership sues him.  *Id.* at 1539.  As that court

11  noted, it is illogical to hold a partner could be covered under an insurance policy

12  "for his acts *against* the very business organization that gives him his status as an

13  insured."  *Id.* at 1539.  That same reasoning applies here.

14       As to *Farr,* Rizzo claims this Eighth Circuit case is "non-controlling."

15  (Rizzo Opp. at 12:5.)  However, the California court in *Lomes* found it

16  authoritative, noting that *Farr* had "applied the *Milazo* court's reasoning . . ."

17  *Lomes, supra,* 88 Cal.App.4th at 134.  Rizzo also attempts to distinguish *Farr* on

18  the grounds that the policies being applied there did not cover injuries caused by a

19  breach of duty, whereas the ICSOP Policy expressly covers breach of duty.  (Rizzo

20  Opp. at 12:5-22.)  But that argument also misses the mark.  As the *Farr* court

21  explained, and as can easily be concluded here:

22          The [insurance] policies are intended to cover injuries caused
            by corporate officers when these officers are properly carrying
23          out their duties to the corporation and are *designed to protect
            the officer who acts to advance the business interests of the
24          corporation, not the officer who acts in a manner that is
            antagonistic toward the corporation's business interests.  Farr,*
25          *supra*, 61 F.3d at 681 (emphasis added).

26       As for *Wolfes*, Rizzo argues that a distinction should be drawn between an

27  insurance policy that did not contain the words "on behalf of" or "within the course

28  and scope of" but rather "only with respect to their duties" as officers and

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

7

1  directors.  *Wolfes, supra,* 2010 U.S. Dist. LEXIS 21753, at *5-6.  (Rizzo Opp. at

2  12:23-13:5.)  Rizzo argues the ICSOP Policy is broader and includes conduct

3  "incidental" to an employee's duties.  (*Id.,* citing *Alma, supra,* 123 Cal.App.3d at

4  139 and *White, supra,* 166 Cal.App.3d at 571, neither of which (again) are

5  insurance coverage cases.)  But the test in those cases is actually the following:

> The determination as to whether an employee committed a tort during the course of his employment turns on whether or not: 1) the act performed was either required or incident to his duties, or 2) the employee's misconduct could be reasonably foreseeable by the employer in any event.  *Alma, supra,* 123 Cal.App.3d at 129 (citations omitted).

10  That test does not apply here, and even if it did, one cannot view an

11  employee and official of the City who allegedly embezzled, stole, and

12  misappropriated millions of dollars in City funds, leaving the public to foot the bill

13  left by the self-enriching activities, as having done something required or incident

14  to his duties nor reasonably foreseeable.

15  As a matter of law, Rizzo does not qualify as an insured and, therefore,

16  ICSOP has no duty to defend Rizzo.

17  ### 2.      The Civil Action Does Not Seek Damages

18  Rizzo argues ICSOP has a duty to defend because the State's lawsuit against

19  Rizzo seeks "money damages," not "restitution."  Distilled to its essence, Rizzo's

20  argument is that regardless of what the State calls its claim, or the label one puts on

21  that claim, damages are alleged in the State's complaint and, therefore, there is a

22  duty to defend.  To reach that result, Rizzo argues the State did not really mean

23  what it said when the State explained it was not seeking "money damages."  Rizzo

24  also argues "restitution" is not necessarily an equitable claim.  And, further, Rizzo

25  argues *Los Osos* is determinative, *Stanton* is "dispositive of the entire issue," and

26  *Jogani* is relevant.  (Rizzo Opp. at 13:14-16:3, fn. 4.)

27  Addressing these in reverse order, the argument that restitution is "neither

28  exclusively equitable nor exclusively legal" based on *Jogani* is misplaced.  *Jogani*

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

8

1   *v. Superior Court*, 165 Cal.App.4th 901, 909-910 (2008).  *Jogani* involved a

2   question about the reasonable value of services rendered, which that court found

3   "was routinely available in common law courts before 1850, so it is a legal

4   remedy."  *Id.*  Here, the State does not seek the reasonable value of services

5   rendered but, rather, recovery of property (compensation) Rizzo and other

6   defendants wrongfully received while employed by the City.  Rizzo concedes

7   restitution includes the return of specific funds in defendant's possession in which

8   plaintiff has an "ownership interest" or a "vested interest."  (Rizzo Opp. at 15:3-7.)

9   This is the very remedy the State seeks.  This constitutes, under California law,

10  disgorgement of wrongfully obtained money, which is not covered as "damages."

11  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992).

12      According to Rizzo, *Stanson* is "dispositive."  The State in opposing Rizzo's

13  demurrer cited *Stanson,* which Rizzo claims supports a claim that Rizzo may be

14  held personally liable for wasteful expenditures of the City's funding of the Rizzo,

15  Spaccia and Adams employment contracts.  *Stanson v. Mott,* 17 Cal.3d 206 (1976).

16  Rizzo, ignoring all the State's statements to the contrary, argues this shows the

17  State is still seeking return from Rizzo of amounts wrongly paid to other

18  defendants, that relief is "damages," and therefore there is a duty to defend.

19  However, in disavowing any claim for "damages," the State put that argument to

20  rest.

21      Further, a "waste claim" in this context is restitution and not covered.  As

22  ICSOP explained in its motion, this court's decision in *Los Osos* is distinguishable.

23  Rizzo fails to adequately address this.  There are significant differences between

24  the claims against Rizzo and the claims in *Los Osos.*  Those differences compel a

25  different result here.  In *Los Osos*, the community services district was being sued

26  by a taxpayer group for mismanaging a project.  *The Los Osos Community Services*

27  *District v. American Alternative Insurance Corporation*, 585 F.Supp.2d 1195,

28  1206 (C.D. Cal. 2008).  The District was not alleged to have absconded with

9

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  monies.  The taxpayer group sought to recover what it characterized as "damages"

2  from the District, i.e., the excessive construction costs and a settlement payment.

3  *Id.* at 1200.

4        Based on the facts before it, the *Los Osos* court concluded any damages

5  award under Code of Civil Procedure Section 526a should not be considered

6  restitution in that context because "the damages sought … [were] neither punitive

7  nor meant to restore to the [underlying claimants] something wrongfully acquired

8  by the [District]."  *Id.* at 1207.  Further, that court noted, the District could be

9  liable under Section 526a for wasting funds even if they "did not themselves

10  wrongfully acquire funds … [and] this potential for monetary liability *in the*

11  *absence of personal benefit* trigger[ed a] duty to defend.  *Id.* at 1208 (emphasis

12  added).

13        In contrast to the taxpayer group's position in *Los Osos,* here the State

14  expressly disavows it is seeking money damages.  The law does not require, as

15  Rizzo would lead the court to believe, that disclaimers appear on a pleading.

16  (Rizzo Opp. at 17:1-15.)  Information an insurance company, and the court, takes

17  into consideration in evaluating the duty to defend can include extrinsic evidence

18  in many forms.  *Waller, supra,* 11 Cal.4th at 19.  *See also, Gunderson v. Fire Ins.*

19  *Exchg.*, 37 Cal.App.4th 1106, 1114 (1995) (disclaimer by underlying plaintiff's

20  attorney in declaration).

21        In *Los Osos*, the court found the taxpayers were not seeking restoration of

22  amounts wrongfully obtained.  That is clearly not the situation here.  Here, the

23  State does seek to recover amounts to which Rizzo is not entitled.  Moreover,

24  while in *Los Osos,* there was an "absence of a personal benefit" to the District, here

25  that is clearly not the case.  The State alleges Rizzo personally benefitted from the

26  "astronomical pay increases" and other benefits he orchestrated.  (UMF # 3

27  [TACC, ¶ 9].)

28        Thus, the conclusion reached in *Los Osos* cannot be reached here.  The

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1   State's claims are quite plainly different.  They are for disgorgement of ill-gotten

2   gains and therefore restitution, and not damages, for purposes of determining

3   whether they are covered by the ICSOP Policy.  *Bank of the West, supra,* 2 Cal.4th

4   at 1266 (restitution, in the sense of "disgorgement of money that has been

5   wrongfully obtained," is not damages under a liability policy).  Further, restitution

6   and other equitable relief the State seeks is excluded under Exclusion EE.

7        Likewise, the City's "damages" are the very same recovery of "millions of

8   dollars stolen from the City and its citizens by Robert Rizzo" and "improperly paid

9   to Rizzo as salary and pension benefits."  (UMF # 3 [TACC, ¶¶ 1].)  The City

10  alleges it was "tricked into paying Rizzo millions of dollars in unearned and

11  unwarranted compensation."  (*Id.* [TACC, ¶ 32].)  Accordingly, the City seeks the

12  return of specific funds in Rizzo's possession.  The City does not allege any facts

13  indicating any "damages" other than return of specific funds wrongfully acquired.

14  (*Id.* [TACC, ¶¶ 32, 38].

15       Rizzo also argues ICSOP should at least defend the State's and the City's

16  claims for punitive damages because punitive damages are "damages."  (Rizzo

17  Opp. at 17:16-23.)  However, punitive damages cannot be covered by the ICSOP

18  Policy.  *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 317-318

19  (1999) (punitive damages not covered by insurance as matter of public policy).  To

20  obtain an award of punitive damages, the State or City would have to prove Rizzo

21  acted with oppression, fraud, or malice.  Cal. Civ. Code § 3294.  That type of

22  conduct is expressly excluded under Exclusion O, which (again) precludes any

23  duty to defend or pay claims "arising out of an alleged willful commission of a

24  crime by [Rizzo] or other dishonest, fraudulent, or malicious act."  (UMF #14.)

25       Rizzo's sole authority for its punitive damages argument is *J.B. Aguerre,*

26  *Inc. v. American Guarantee & Liab. Ins. Co.,* 59 Cal.App.4th 6, 14 (1997).  (Rizzo

27  Opp. at 17:16-23.)  However, *Aguerre* supports ICSOP's position.  As that court

28  observed, "the insurer's obligation to defend *extends* to punitive damage claims,

*provided the policy does not conspicuously disclaim this duty*." *Id.* (emphasis added) (in case where insurer defending other claims, also had to defend punitive damage claims).  Here, the ICSOP policy expressly disclaims coverage for the very conduct that must be proven to obtain punitive damages – malice and fraud.

Furthermore, there is no obligation to defend against a claim for punitive damages where no other claims are covered.  *See, e.g., Stone v. Hartford Casualty Co.,* 470 F.Supp.2d 1088, 1091 (C.D. Cal. 2006) (no duty to defend action seeking damages, punitive damages and disgorgement where "professional services" exclusion precluded coverage of construction-related negligence and misappropriation claims); *Stellar v. State Farm General Ins. Co.*, 157 Cal.App.4th 1498, 1501 (2007) (no duty to defend defamation action seeking general, special and punitive damages); *Fire Ins. Exchange v. Superior Court*, 181 Cal.App.4th 388, 391 (2010) (no duty to defend suit alleging interference with an easement and seeking damages, punitive damages, and injunctive and declaratory relief).

The State's and City's claims are, as the State explained, for restitution and other equitable relief and, as such, are not claims for "damages" covered by the ICSOP Policy.  For this reason as well, ICSOP has no duty to defend.

### 3.    The State's And City's Claims Are Excluded

Rizzo argues Exclusions O and P do not apply to these claims.  First, Rizzo claims ICSOP did not raise these exclusions in its denial letters.  However, that is not so.  ICSOP specifically referenced these exclusions.  (UMF #16.)  In any event, even a general reservation of rights is sufficient to preserve the right to rely on all provisions of the policy.  *California Union Ins. Co. v. Poppy Ridge Partners,* 224 Cal.App.3d 897, 902 (1990).  And, regardless of what the insured understood the basis for denial of coverage to have been, this Court will determine based on its review of the Policy and the facts, whether there is any duty to defend.  *See Chemstar, Inc. v. Liberty Mutual Ins. Co.,* 797 F.Supp. 1541, 1545 (C.D. Cal. 1992); *Bareno v. Employers Life Ins. Co.,* 7 Cal.3d 875, 881 (1972) (interpretation

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

12

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   of an insurance policy is an issue of law and even an appellate court must "make

2   its own independent determination of the meaning of the language used in the

3   contract under consideration").

4          Rizzo's other arguments are also unconvincing.  Rizzo argues exclusions in

5   the Policy cannot apply "until there has been a final adjudication."  (Rizzo Opp. at

6   19:20-23.)  This is incorrect.  Exclusions O and P expressly preclude any

7   obligation to "defend … claims or suits" against Rizzo "[a]rising out of an alleged

8   willful commission of a crime by you or other dishonest, fraudulent, or malicious

9   act" or "[a]rising out of your wrongful act for gain, profit, or advantage to which

10  you are not legally entitled."  (UMF # 14.)  While ICSOP can elect to pay for

11  defense costs until there is a final adjudication, judgment, or settlement, there is no

12  obligation for ICSOP to defend if it does not elect to do so.  (*Id.*)

13         Rizzo asserts Exclusions O and P cannot apply because the State alleges

14  negligence, and that claim does not fall under the exclusions.[8]  (Rizzo Opp. at

15  18:19-21.)  Rizzo also argues the exclusions cannot apply because the claims do

16  not necessarily require "willful" conduct by Rizzo.  But, that is not so.  The State's

17  "negligence clam" expressly alleges Rizzo and other defendants awarded "excess

18  compensation" to themselves that "provided no use or benefit to the City and

19  constituted wasteful expenditure of public funds."  (UMF # 2 [FAC at ¶ 108].)  The

20  State's claim falls squarely within Exclusion P, as it arises out of Rizzo's

21  "wrongful act for gain, profit, or advantage to which [he is] not legally entitled."

22  (UMF #14.)  They also are dishonest acts and excluded under Exclusion O.  (*Id.*)

23         The phrase "arising out of" in the exclusion is broad.  "Arising out of" is

24  applied to claims that "originate[e] or flow from" the excluded conduct.

25  *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985)

26  ("Continental"); *Pacific Indemnity Co. v. Truck Ins. Exchg.,* 270 Cal.App.2d 700,

27

28  [8] There are no negligence claims in the City's operative Third-Amended Cross
    Complaint.  (UMF # 3.)

13

1  704 (1969).  Courts decline to carve out a small covered claim where the damages
2  relate to and originate from the excluded conduct.  *Continental, supra*, 736 F3.2d
3  at 1081 (in action alleging excluded injury from police brutality, court declined to
4  find coverage for alleged alternate theories of negligent training or supervision);
5  *Medill v. Westport Ins. Co.*, 143 Cal.App.4th 819 (2006) (court concluded all
6  claims, including for negligence, breach of fiduciary duty and concealment, arose
7  from excluded breach of contract).  There is not a single claim made by either the
8  State or City that does not "aris[e] out of" allegations that Rizzo's conduct was
9  dishonest and for his own gain or profit.

10      Therefore, there is no duty to defend Rizzo against the Civil Actions.

11  **C.     There Is No Duty To Defend The Criminal Actions**

12      As anticipated, Rizzo argues there is a duty to defend the Criminal Actions
13  because it would help his defense of the Civil Actions (asserting it is a "reasonable
14  and necessary effort to avoid or at least minimize liability").  (Rizzo Opp. at 21:11-
15  13.)  As ICSOP already explained, California courts reject this argument,
16  particularly when the related matter is a criminal lawsuit.  *United Pacific Ins. Co.*
17  *v. Hall,* 199 Cal.App.3d 551, 556 (1988) ("*Hall*") (no duty to defend the insureds'
18  son in a juvenile criminal proceeding even though the insurer accepted defense of
19  related civil action); *Stein v. International Ins. Co.,* 217 Cal.App.3d 609, 611
20  (1990) ("*Stein*") (no duty to defend criminal charges even if defense was necessary
21  to successful defense of a potential civil claim).

22      Rizzo's authorities refer to administrative, not criminal, actions.  Further
23  Rizzo fails to explain how defending the criminal action – which it admits will be
24  litigated first - assists in defense of the Civil Actions.  Conviction of criminal
25  charges may not help in defending against a civil lawsuit, but prevailing in a
26  criminal trial certainly does not prevent a civil lawsuit since the standards of proof,
27  development of evidence, and procedural tools differ.  The court in *Hall* rejected
28  similar arguments, *i.e*, that the criminal trial was a way to observe witness

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

14

1   demeanor and a discovery device.  This, the court held, was "not persuasive"

2   evidence that defense of the criminal case was reasonable and necessary to avoid

3   or minimize liability.  *Hall, supra,* 199 Cal.App.3d at 557.  Just as happened in

4   *NextG,* on which Rizzo relies, Rizzo fails to show how costs actually being

5   incurred in defending the Criminal Actions are reasonable and necessary to avoid

6   or minimize liability in the Civil Action.  *NextG Networks, Inc. v. One Beacon*

7   *America Ins. Co.,* 2012 WL 440885, at *15-16 (N.D. Cal. 2012).

8       Further, as the *Stein* court observed, requiring a liability insurer defending a

9   civil lawsuit to defend a criminal case "ignores the potentially conflicting interests

10  of a defendant in a criminal case and his liability insurance company . . . "  *Stein,*

11  *supra,* 217 Cal.App.3d at 614.  That court concluded that those potential conflicts

12  are "sufficiently serious and complex" that the court could not compel the insurer

13  to defend the criminal action – noting a decision like that should be "a judgment

14  call to be left solely to the insurer."  *Id.* at 614-615.

15      Furthermore, the Criminal Actions *cannot* be covered by the ICSOP Policy

16  and to compel an insurer to defend would violate California statute and public

17  policy.  The reason there is no duty to defend the Criminal Actions starts, again,

18  with that Rizzo does not qualify as an insured.  The Criminal Actions allege Rizzo

19  misappropriated public funds, falsified public records, and paid unauthorized

20  compensation, all clearly acts antagonistic to the City's interests and outside the

21  scope of what Rizzo was employed to do for the City.  *See, e.g., Lomes*, *supra,* 88

22  Cal.App.4th at 134-135; *Milazo, supra,* 224 Cal.App.3d at 1538; *Farr*, *supra,* 61

23  F.3d at 681.

24      In addition, ICSOP only has a duty to defend claims and suits, defined,

25  respectively, under the Policy as a demand for money and a "civil proceeding" in

26  which damages are alleged.  (UMF # 13.)  The Policy expressly excludes "any

27  other form of relief other than the payment of money damages."  (UMF # 14.)

28  Rizzo cannot, and does not, dispute that the Criminal Actions do not involve a

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1    demand for damages, and are not a civil proceeding for damages.

2           Further, none of the potential outcomes in the Criminal Actions represent

3    damages, and therefore, there is no duty to defend, *See, Jaffe v. Cranford Ins.*

4    *Co.*, 168 Cal.App.3d 930, 935 (1985) ("*Jaffe*") (liability policy covers damages

5    awarded against the insured).  Again, there is no coverage for fines and other

6    monetary penalties (*Id.* at 934), restitution as punishment (*State Farm Fire and*

7    *Casualty Co. v. Superior Court*, 191 Cal.App.3d 74, 78 (1987)), or imprisonment

8    (*Jaffe*, *supra*, 168 Cal.App.3d at 934).

9           Moreover and importantly, California statute and public policy preclude

10   any duty to defend the Criminal Actions.  On this point, Rizzo misrepresents the

11   scope of Insurance Code Section 533.5, arguing the statute only precludes

12   indemnification and only relates to claims brought under the Unfair Competition

13   Laws ("UCL").  (Rizzo Opp. at 23:8-25.)  Rizzo claims to rely on *Bodell v.*

14   *Wallbrook Ins. Co.,* 119 F.3d 1411 (9th Cir. 1997).  However, nowhere in *Bodell*

15   does that court rule Section 533.5 is limited to the duty to indemnify and

16   inapplicable to the duty to defend.  The statute itself plainly states: "No policy of

17   insurance shall provide, or be construed to provide, any *duty to defend . . .*"  Ins.

18   Code § 533.5 (emphasis added).

19          The *Bodell* decision does not limit Section 533.5 to UCL claims.  Rather,

20   the statute clearly applies to "any criminal action or proceeding *or . . .* action or

21   proceeding [under the UCL] . . ."  Ins. Code § 533.5(b) (emphasis added).  What

22   the court found was the statute did not address the situation before that court – a

23   criminal investigation brought by a federal official (as opposed a criminal action

24   filed by a state agency, as here).  *Bodell, supra,* 119 F.3d at 1417.  For that reason,

25   the court found the statute did not preclude a duty to defend.  *Id.* at 1415-1417.

26   Those facts are not present here.

27          Further, the Ninth Circuit's holding as to the application of Section 533.5

28   was driven in large part by the policies at issue there which not only had a duty to

ICSOP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)

1  defend a claim for damages but "specifically provide a duty to defend … when a

2  governmental regulatory agency institutes a proceeding seeking non-pecuniary

3  relief." *Id*. at 1418.  Similar language does not exist in the ICSOP Policy.  As that

4  court noted: "We recognize it is well-established under California law that an

5  insurer is not obligated to defend criminal proceedings when its policy covers

6  only claims seeking 'damages.'" *Id.*  Thus, here, Section § 533.5 prohibits

7  requiring defense of the Criminal Actions.

8        Thus, for these reasons, ICSOP has no duty to defend the Criminal Actions.

9  **D.   There Is No Duty To Indemnify, No Breach Of Contract, No**
   **Breach Of The Implied Covenant Of Good Faith, And No Basis**
10 **For A Punitive Damages Award**

11       With no duty to defend, all the other claims against ICSOP (i.e., breach of

12 contract, breach of covenant of good faith, and punitive damages) also fail.  Rizzo

13 makes no attempt to oppose ICSOP's arguments in this regard.

14 **IV.   CONCLUSION**

15       ICSOP's motion for summary judgment should be granted.  There is no duty

16 to defend the Civil Action or the Criminal Actions.  In addition, there is no breach

17 of contract, no breach of the covenant of good faith, and no basis for punitive

18 damages.  This motion should dispose of Rizzo's entire action (or, alternatively,

19 most of it).

20 Dated: September 7, 2012            GORDON & REES LLP

21                                    By:   /s/ *Sara M. Thorpe*_____

22                                          Sara M. Thorpe
                                           Attorneys for Defendant THE INSURANCE
23                                          CO. OF THE STATE OF PENNSYLVANIA

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

CHCV/1080788/13521332v.1

ICSOP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.:  CV-12-04347 DMG (FMOX)