1  LAW OFFICES OF JAMES W. SPERTUS
   James W. Spertus (SBN 159825)
2  Ezra D. Landes (SBN 253052)
   Amy M. Hinkley (SBN 274571)
3  1990 South Bundy Dr., Suite 705
   Los Angeles, California 90025
4  Telephone: (310) 826-4700
   Facsimile: (310) 826-4711
5  jim@spertuslaw.com
   ezra@spertuslaw.com
6  amy@spertuslaw.com

7  Attorneys for Plaintiff Robert A. Rizzo

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  ROBERT A. RIZZO, an individual,        Case No. CV-12-04347-DMG
                                           (FMOx)
13              Plaintiff,
                                           Hon. Dolly M. Gee
14        v.
                                           **REQUEST FOR JUDICIAL**
15  THE INSURANCE COMPANY OF               **NOTICE IN SUPPORT OF**
    THE STATE OF PENNSYLVANIA,             **PLAINTIFF ROBERT A.**
16  a Pennsylvania corporation, and        **RIZZO'S MOTION FOR**
    CHARTIS CLAIMS, INC., a                **SUMMARY JUDGMENT**
17  Delaware corporation.
                                           Date:     October 12, 2012
18              Defendants.                Time:     2:00 p.m.
                                           Crtrm:    7
19

20

21

22

23

24

25

26

27

28

*ROBERT A. RIZZO'S REQUEST FOR JUDICIAL NOTICE*

Law Offices of James W. Spertus
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR

2  ATTORNEYS OF RECORD:

3    Plaintiff Robert A. Rizzo ("Mr. Rizzo") respectfully requests that the

4  Court take judicial notice of the following documents:

5    1. Exhibit A: Resolution No. 2006-42; Resolution of the City Council of Bell

6        Implementing Section 519 of the Bell City Charter Pertaining to

7        Acquisition of Labor or Service Contracts;

8    2. Exhibit B: Resolution No. 2008-05; Resolution of the City Council of the

9        City of Bell Identifying the Administrative Regulations and Operating

10       Procedures and Rescinding Resolutions 2007-41, 2007-24, 2006-54,

11       2006-40, 2006-10, 2005-08, 2004-45, 2004-23, 2003-29, 2002-40,

12       2001-26, 2000-14, 98-42 and 97-01.

13    The above referenced documents attached hereto as Exhibits "A" and "B"

14  are resolutions passed by the City Council for the City of Bell, California.  These

15  documents are judicially noticeable pursuant to Federal Rule of Evidence 201

16  because these resolutions are public records produced by the City of Bell

17  pursuant to a Public Records Act request and the facts contained therein

18  therefore "can be accurately and readily determined from sources whose

19  accuracy cannot reasonably be questioned."  (FRE 201(b)(2)).

20  Dated:   October 11, 2012          LAW OFFICES OF JAMES W. SPERTUS

21

22                                By:   _____

23                                James W. Spertus

24                                Ezra D. Landes

25                                Attorneys for Plaintiff Robert A. Rizzo

26

27

28

_ROBERT A. RIZZO'S REQUEST FOR JUDICIAL NOTICE_

Law Offices of James W. Spertus
1990 SOUTH BUNDY DR, SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# EXHIBIT A

**EXHIBIT A**

## RESOLUTION NO. 2006-42

### RESOLUTION OF THE CITY COUNCIL OF BELL IMPLEMENTING SECTION 519 OF THE BELL CITY CHARTER PERTAINING TO ACQUISITION OF LABOR OR SERVICE CONTRACTS

**Whereas,** the second paragraph of Section 519 of the City's Charter allows the Bell City Council to authorize by resolution the Chief Administrative Officer to bind the City, with or without a written contract, for the acquisition of equipment, materials, supplies, labor, services or other items included within the budget approved by the City Council;

**Whereas,** the City Council has determined that it is in the interest of efficient administration of the City to authorize the Chief Administrative Officer to bind the City with a written contract for the acquisition of labor or services;

**Now, therefore,** the City Council of the City of Bell does resolve as follows:

1. Pursuant to the second paragraph of Section 519 of the City's Charter, the Bell City Council hereby authorizes the Chief Administrative Officer to bind the City by written contract for the acquisition of labor or services included within the budget approved by the Bell City Council.

2. Any written contract entered into by the Chief Administrative Officer pursuant to this resolution shall comply with Section 1111 of the City's Charter if Section 1111 would otherwise be applicable in the absence of this resolution.

3. The authority granted by this resolution shall not apply to any written contract for services rendered by any person in the employ of the City at a regular salary.

4. Effective date of this resolution shall be July 31, 2006.

5. The City Clerk will certify to the adoption of this resolution.   PASSED AND APPROVED THIS 31st day of July 2006.

Oscar Hernandez
Mayor

B090008

ATTEST:

Rebecca Valdez

I certify that the foregoing Resolution No. 2006-42 was adopted by the City Council of the City of Bell at a regular meeting held July 31, 2006, by the following vote:

AYES:       Councilmembers Cole, Jacobo, Mirabal, Vice Mayor Bello and Mayor Hernandez

NOES:       None

ABSTAIN:    None

ABSENT:     None

Rebecca Valdez
City Clerk

Resolution No. 2006-42
July 31, 2006
1 of 2

B090009

# EXHIBIT B

**EXHIBIT B**

## RESOLUTION NO 2008-05

**RESOLUTION OF THE CITY COUNCIL OF THE CITY OF BELL IDENTIFYING THE ADMINISTRATIVE REGULATIONS AND OPERATING PROCEDURES AND RESCINDING RESOLUTIONS 2007-41, 2007-24, 2006-54, 2006-40, 2006-10, 2005-08, 2004-45, 2004-23, 2003-29, 2002-40, 2001-26, 2000-14, 98-42 and 97-01.**

**Whereas,** Resolution 2007-41, 2007-24, 2006-54, 2006-40, 2006-10, 2005-08, 2004-45, 2004-23, 2003-29, 2002-40, 2001-26, 2000-14, 98-42 and Resolution 97-01 have become obsolete and are hereby rescinded effective November 6, 2006; and

**Whereas,** the Civil Service Rules and Regulations, Article XVII Salaries, requires the City Council to adopt by resolution a basic compensation plan; and

**Whereas,** the administrative regulations and operation procedures is to identify terms and conditions of employment for all unrepresented (non-safety) employees, and all other full-time employees of the City of Bell; however, in situations where any provision herein is in conflict with any applicable memorandum of understanding or employment agreement, the provision in the memorandum of understanding, or employment agreement shall prevail; and

**Whereas,** under California State law the City Council is granted the authority to designate the following classifications: Executive Management, Administrative Management, Management, Confidential, and Miscellaneous as Unrepresented, hereinafter referred to as Employees, and to acknowledge all other recognized employee representation units as of this date; and

**Whereas,** Part-time hourly employees shall not be eligible for any of the compensation plan terms and conditions, or any other rights not specifically granted them by the City of Bell Civil Service Rules and Regulations unless expressly required by City Contract, State Law, or Federal Law; and

**Whereas**, it is the intent of the Bell City Council to conform to state regulations; and

**Now, therefore,** the City Council of the City of Bell does resolve as follows:

## SECTION 1. COMPENSATION

### A. OVERTIME PAY

*1. Executive Management/Administrative Management, Management*
Employees who heretofore have been designated, pursuant to Resolution 2007-39, as "Executive Management", "Administrative Management" and "Management" are henceforth declared "exempt" in accordance with the Fair Labor Standards Act and will not receive compensation for working overtime.

B017262

2. *Other Employees*
All other employees shall be compensated for overtime in accordance with the Fair Labor Standards Act.

## B. BILINGUAL PAY

1. Confidential/Unrepresented (Non-Police Dispatch Personnel)
The City shall compensate any employee who speaks a language other than English.

   a. Qualifications & requirements
- Employee must speak a language such Spanish, or any other language approved by the City.
- Employee is required to pass a proficiency exam, to be conducted in a manner determined by the City.

   b. Effective date
- Employee shall continue to receive one hundred fifty dollars ($150) per month until the next scheduled increase becomes effective.
- Employee shall receive one hundred seventy five dollars ($175) per month effective the first full pay-period in July 2006.

2. Confidential/Unrepresented (Police Dispatch Personnel)
The City shall compensate any employee who speaks a language other than English.

   a. Qualifications & requirements
- Employee must speak a language such Spanish, or any other language approved by the City.
- Employee is required to pass a proficiency exam, to be conducted in a manner determined by the City.

   b. Effective date
- Employee shall receive one hundred seventy five dollars ($175) a month effective the first full pay period in July 2005.

3. Bilingual Pay Request
Employee shall make a written request for bilingual pay to the Personnel Department, and shall be scheduled for a test within 90 day of receipt. If test has not been scheduled during this period, bilingual pay shall become effective.

4. Employee reimbursed-costs for bilingual schooling
The City shall reimburse the employee for bilingual schooling provided the employee receives prior approval in writing for the study program and passes the proficiency test. This pay shall not be considered special compensation as defined in Section 571 of the California Code of Regulations.

B017263

C. SHIFT DIFFERENTIAL PAY

Dispatchers shall receive five percent (5%) of their base salary while assigned to swing and graveyard shift in the Dispatch Department. This pay applies to any hours worked between 3 p.m. and 7 a.m. Such pay shall only apply to all actual hours worked not hours scheduled.

D. TRAINING PROGRAM PAY

The City shall pay to no more than two (2) dispatchers the amount of two thousand dollars ($2,000) annually not later than the first pay period in May of each year for training duties assigned by the Chief of Police. The Chief of Police may develop an annually training program for dispatchers and assignment of the Dispatchers shall take place by September 1st of each year.

E. EXTRA TRAINING DUTIES PAY

A dispatcher shall receive ten percent (10%) of his or her base salary during the training phase of a newly hired employee assigned to the Dispatch Division. Such increase shall apply only while the training assignment is in place.

F. TEMPORARY UPGRADE PAY

1. *Management employees*
   Certain employees under this category may be required to perform special assigned duties outside the scope of their job description. The Chief Administrative Officer may assign special functions to any employee in this group category as deemed necessary in the course of City business. In the event of such appointment, the employee shall receive an additional compensation equal to fifteen (15) percent of their basic pay. This compensation shall remain in effect only while the duration of the assignment.

2. *Confidential/Miscellaneous employees*
   Certain employees under this category may be required to perform special assigned duties outside the scope of their job description. The Chief Administrative Officer may designate special functions to any employee in this group category as deemed necessary in the course of City business. In the event of such appointment, the employee shall receive an additional compensation equal to five (5) percent of their basic pay. This compensation shall remain in effect only while the duration of the assignment.

G. COURT PAY

Full-time dispatchers shall receive court appearance pay for each day such employee is required to and does appear in court. On-call pay shall be paid to each employee when such employee is on stand-by but he or she is not required to appear in court. This pay shall not be considered special compensation as defined in Section 571 of the California Code of Regulations. These payments shall be as follows:

B017264

- Court appearance pay = $180 effective July 1, 2005 and $190 effective January 1, 2008.
- On-call pay = $110 effective July 1, 2005 and $120 effective January 1, 2008.

## H. UNIFORM PAY/UNIFORMS PROVISION

1. *Police Dispatch*
   Each employee shall receive an allowance for the purchase and cleaning of uniforms and equipment. Such allowance shall be paid as follows:

   a. Each full-time dispatcher shall continue to receive six hundred dollars ($600) annually until the next scheduled increase becomes effective.
   b. Effective September 2007, each employee shall receive seven hundred fifty dollars ($750) annually and each year thereafter.
   c. Such allowance shall be paid on the first pay period of each September (first pay period shall be considered the period which dates fall in the month of September not the pay date).
   d. A monthly pro-rata shall be paid for newly hired employee based on the hiring date or shall be deducted from the employee's final compensation based on the separation date.

2. *Police Records*
   Each employee shall receive an allowance for the purchase and cleaning of uniforms and equipment. Such allowance shall be paid as follows:

   a. Each full-time employee shall continue to receive five hundred dollars ($500) annually until the next scheduled increase becomes effective.
   b. Effective September 2007, each employee shall receive six hundred twenty five dollars ($625) annually and each year thereafter.
   c. Such allowance shall be paid on the first pay period of each September (first pay period shall be considered the period which dates fall in the month of September not the pay date).
   d. A monthly pro-rata shall be paid for newly hired employee based on the hiring date or shall be deducted from the employee's final compensation based on the separation date.

3. *Other Departments*
   The City shall provide uniforms to all other employees, who are required to wear uniforms while on active duty in the employment of the City and who do not fall in any of the groups prescribed in paragraphs (H.1) and (H.2). The monetary value for the purchase, rental, and/or maintenance of the City uniform shall be reported in accordance with California Government Code, Section 571 (a) (5).

## I. JURY DUTY

Employees summoned to jury duty shall receive their regular pay up to forty hours annually. In the event the employee receives any reimbursement from the pertaining judicial jurisdiction,

B017265

court, and/or government agency, such reimbursement shall be reimbursed to the City excluding mileage received for said jury duty.

J. MILEAGE REIMBURSEMENT

Employees who are requested to use their personal vehicles in the conduct of City business will be compensated for all miles traveled for business-related purposes at the effective standard mileage rate under the Internal Revenue Service Regulations (i.e. 2008 standard mileage rate is 50.5 cents per mile).

K. TUITION REIMBURSEMENT

Non-safety employees, who successfully complete job-related classes, shall be reimbursed for tuition and supplies. Said reimbursement shall be paid subsequent to completion of the school term and not to exceed:

1. $250 per school term or $600 per year for a four-year college
2. $100 per school term or $250 per year for two-year College.
3. The Chief Administrative Officer may authorize additional reimbursement related to specifically job-related classes that would enhance or develop the current employee's position. Employee must request an interview with the Chief Administrative Officer to discuss the applicability and appropriateness of the classes. The interview and approval must occur prior to employee's enrollment in order to qualify for reimbursement.
4. This reimbursement shall not be considered special compensation as defined in Section 571 of the California Code of Regulations.

L. PROFESSIONAL CERTIFICATION/LICENSING REIMBURSEMENT

Non-safety employees, who possess a professional certification or license related with their employment with the City of Bell, shall be reimbursed for the fees associated with the renewal of the aforementioned professional licensing. Some continuing education expenses may be reimbursed at the sole discretion of the Chief Administrative Officer; employee must request an interview with the Chief Administrative to obtain approval. This reimbursement shall not be considered special compensation as defined in Section 571 of the California Code of Regulations.

M. COMPENSATION FOR INJURY ON DUTY

Employees who are disabled by injury or illness arising during the course of employment will be entitled to benefits as provided under the Workers Compensation Law of the State of California.

B017266

**SECTION 2. RETIREMENT**

A. <u>CONTRIBUTION</u>

    1.  The City will pay the entire contribution for employees towards the California Public Employees' Retirement System (CALPERS) and the Supplemental Retirement Plan (SRP). SRP only applies to those employees classified as non-safety hired through June 30, 2005.

B. <u>BENEFITS</u>

    1.  Miscellaneous -2.7% at 55 Plan (CALPERS);
    2.  Tier I Safety – 3% at 50 Plan (CALPERS);
    3.  Tier II Safety -3% at 55 Plan (CALPERS);
    4.  1959 Survivor Benefit -Third Level (Safety only);
    5.  Sick Leave Conversion;
    6.  One year Final Compensation;
    7.  Military Service Credit.

**SECTION 3. HOLIDAYS**

A. <u>NON-POLICE DISPATCH PERSONNEL</u>

Employees will be entitled to a total of thirteen (13) holidays each fiscal year. This includes one (1) discretionary holiday. In order to maximize the hours of service to the community, and allow a total of thirteen holidays each fiscal year, the City Council will set a holiday schedule that will establish the holidays to be observed by the City during the corresponding fiscal year and its respective floating holidays, which shall total thirteen (13) days. Holidays may include the following:

    New Year's Day
    Martin Luther King Day
    President's Birthday
    Memorial Day
    Independence Day
    Labor Day
    Admission Day
    Columbus Day
    Veteran's Day
    Thanksgiving Day
    Day after Thanksgiving
    Christmas Day

B. <u>POLICE DISPATCH PERSONNEL</u>

The City recognizes that the Bell Police Department functions every day of the year, twenty-four hours per day, and does not close for holidays. Police Dispatch Personnel shall be compensated

B017267

for twelve holidays recognized by the City. Pursuant to California Government Code, Section 20630, the City shall identify the pay period in which the compensation was earned; therefore, the City opts to pay and report holidays as **earned**. Each employee shall be paid an additional ten hours for each City-recognized holiday in the pay period where the holiday falls.   Such additional compensation shall be paid separately and reported as special compensation. The City will recognize the following holidays:

> 1. *Observed Holidays*. The following days shall be paid holidays:

>> Martin Luther King's Day
>> Washington's Birthday
>> Memorial Day
>> Fourth of July
>> Labor Day
>> Admission's Day
>> Columbus Day
>> Veteran's Day
>> Thanksgiving Day
>> The Day after Thanksgiving
>> Christmas Day
>> New Year's Day

> 2. *Floating Holiday*. In addition, each employee shall accrue one floating holiday per fiscal year.  The mentioned holiday shall be taken at the employee's discretion with the approval of the employee's supervisor. Permission to take the floating holiday will not be unreasonably withheld.  The floating holiday must be taken prior to the ending of the applicable fiscal year; it may not be carried over to the following fiscal year.

## SECTION 4.  INSURANCE BENEFITS

Employees, as authorized in 2.840.030(B) of the Bell Municipal Code and designated in Resolution 2007-39 shall be eligible for the following insurance benefits according to the group category and the hire date:

### A. PROVISIONS OF INSURANCE DURING EMPLOYMENT WITH THE CITY.

The City shall make available medical, dental, vision and life insurance for all employees and their dependents based on their category and hire date. Coverage shall be as follows:

1. *Executive Management*

> a.  The City shall provide medical dental, vision, and life insurance to the employee and his/her dependants at no cost to the employee.

B017268

    b. Employees identified under this category by Resolution 2004-24 shall receive long-term care insurance. Those employees who maintain City employment on January 1, 2005 shall only be eligible for this insurance.

2. *Administrative Management*

    a. The City shall provide medical dental, vision, and life insurance to the employee and his/her dependants at no cost to the employee.

    b. Employees identified under this category by Resolution 2004-24 shall receive long-term care insurance. Those employees who maintain City employment on January 1, 2005 shall only be eligible for this insurance.

3. *Management/Confidential/Miscellaneous*

    a. Employees hired after October 1, 2005 shall receive medical coverage for the employee and one dependant. Medical coverage shall represent any approved CALPERS health plan *except* PERS Care. Dental, vision, and life insurance coverage shall become effective after completion of initial probationary period and shall be paid entirely by the City. Employee and his or her dependant shall receive the insurance benefits stated before providing that he or she does not have dual insurance coverage through a non-City plan. In the event of dual coverage, employee and his or her dependant shall become ineligible for insurance benefits.

    b. Employees hired prior to September 30, 2005 shall receive medical, dental, and vision coverage for the employee and his or her dependants at no cost to the employee. Medical coverage shall represent any approved CALPERS health plan *except* PERS Care. In addition, employee shall be eligible for life insurance coverage at no cost to the employee. Employee and his or her dependants shall receive the insurance benefits stated before providing that he or she does not have dual insurance coverage through a non-City plan. In the event of dual coverage, employee and his or her dependants shall become ineligible for insurance benefits

B. **PROVISIONS OF INSURANCE BENEFITS AFTER TERMINATION FROM CITY.**

1. *Qualifying employee*

The City shall make available only medical coverage through PERS CARE for employees who were last employed with the City, have reached retirement age, have retired from the City of Bell, and have been vested in the PERS system prior to their retirement date.

2. *Provision of Insurance benefits at no Cost*

The City shall provide medical, dental, vision and life insurance for certain terminated employees and their dependents at no cost. The following employees shall be eligible for medical, dental, vision and life insurance:

Resolution No 2008-05<br>January 7, 2008

B017269

a. Full-time employees (non-safety) who have terminated in good standing from the City after January 1, 1997, with not less than thirty (30) years of CALPERS service credit with the City of Bell or full-time employees (non-safety) who are employed on June 30, 2006 and who have twenty (20) years of CALPERS service credit as of June 30, 2006 and whose termination date is after July 1, 2006.

b. Elected officials whose first term of office was prior to January 1, 1995, and who have terminated from the City after January 1, 1997, with not less than twelve (12) years of service credit with the City of Bell. In addition to said insurance, recipient shall be fully reimbursed for medical, dental, and vision co- payments and deductibles.

3. *Elected Officials whose term commenced after January 1, 1995.*

Pursuant to State Laws, the City shall make available insurance benefit coverage for public officials who were first elected after January 1, 1995 as follows:

a. Less than five years of service shall be eligible to participate on a self-pay basis.

b. Five or more years of service (vested in CALPERS) and not attained the minimum CALPERS retirement age shall be eligible to participate on a self-pay basis until reaching retirement age.

## SECTION 5. VACATION/SICK LEAVE

## A. VACATION LEAVE

Employees are eligible for vacation leave after completing one year of full-time employment.

1. *Accrual Rate*

a. Employees shall accrue vacation leave based on the years of service as noted below:

| Years of Service | Accrued Vacation Hours biweekly |
|---|---|
| i. Less than 4 | 3.6960 |
| ii. 4 and less than 6 | 4.6160 |
| iii. 6 and less than 13 | 6.4640 |
| iv. 13 and less than 20 | 8.3040 |
| v. More than 20 | 9.8480 |

b. Employees who maintain City employment on or before July 1, 2003—who heretofore have been designated pursuant to Resolution 2007-39, Section II (1.1) and (1.3)—shall accumulate vacation leave equal to the sum of items (i) through (v) of the accrual rates noted above in paragraph (a).

Resolution No 2008-05
January 7, 2008

B017270

2. *Accumulation*

    a. Employees hired after July 1, 1998 shall not accumulate any vacation leave in excess of 360 hours.

    b. Employees hired after July 1, 2000 shall not accumulate any vacation leave in excess of 280 hours.

3. *Payment of Vacation Leave*

    a. Unused accumulated vacation leave will be paid to each employee upon the date of separation from the City in accordance with Section 5 (A) (2).

## B. SICK LEAVE

Employees are eligible for sick leave after completing the eighteen-month initial probationary period of full-time employment.

1. *Accrual*

    a. Employees, who have passed initial probationary period, will accrue 0.0462 100% sick leave per hour yielding to 3.6960 biweekly while on employment with the City, or while on approved employee leave.

    b. During each five year increment of regular employment, employees will be entitled to 75% sick leave hours and 50% sick leave hours. At the end of each five-year increment, any unused 75% and 50% sick hours will expire and employee will accrue the corresponding value of the next five-year increment. Accruals will be earned as follows:

| Years of Service | 75% Hours | 50% Hours |
|---|---|---|
| 1-5 | 112 | 112 |
| 5-10 | 224 | 336 |
| 10-15 | 448 | 616 |
| 15-20 | 448 | 896 |
| 20-25 | 448 | 1,456 |

    c. Employees who maintain City employment on or before July 1, 2003—who heretofore have been designated pursuant to Resolution 2007-39, Section II (1.1) and (1.3)—shall accumulate 100% sick leave at the accrual rate of .1386 per hour.

2. *Use*

    a. An employee's accrued 100% sick leave will be used first, thereafter, 75% sick leave and 50% sick leave respectively.

B017271

      b.  Three 100% sick leave days may be used each fiscal year for severe illness in the employee's immediate family.

3. *Payment of Sick Leave*

      a.  Employees hired prior to June 30, 1998, upon separation from service employee will be paid an amount equivalent to the remaining unused hours of 100% sick leave at the time of separation or at retirement from the City of Bell all unused 100% sick leave may credited toward CALPERS service credit.

      **b.**  Employees hired after July 1, 1998, upon separation from service employee will be compensated for any unused 100% sick leave up to 100 hours, or at retirement from the City of Bell an unlimited amount of unused 100% sick leave may credited toward CALPERS service credit.

## SECTION 6. OTHER LEAVES

### A. LEAVES OF ABSENCE

*1. Leave without pay*
A conditional leave may be granted without pay not to exceed one month with the approval of the Chief Administrative Officer. The City Council may grant a conditional leave without pay not to exceed one year.
*2. Family Care Leave*
Leave shall be in accordance with all applicable State and Federal Regulations.

*3. Pregnancy Disability Leave*
Leave shall be in accordance with all applicable State and Federal Regulations.

*4. Military Leave*
Leave shall be in accordance with all applicable State and Federal Regulations.

### B. BEREAVEMENT LEAVE
Employees shall be entitled up-to three (3) working days paid bereavement leave due to the death of the employee's spouse, parent, brother, sister, child, grandchild, grandparent, aunt or uncle, or any person related in such capacity to the employee's spouse with approval from his/her Department Head.

### C. PERSONAL LEAVE
Employees may use up-to three (3) 100% sick leave days per fiscal year for personal business with prior supervisor's approval.

Resolution No 2008-05
January 7, 2008

B017272

## SECTION 7. PAYROLL PERIODS/DATES/DEDUCTIONS

### A. PAY PERIODS, PAY DATE AND PAY METHOD

Employees shall be paid every other Friday for a two-week period ending the preceding Sunday via Automatic Direct Deposit.

### B. PAYROLL DEDUCTIONS

Deductions may be made from the salaries of employees for income tax; retirement, credit union, government bond purchases, deferred compensation, charitable contributions, dues, health insurance programs, and any other lawfully permitted purpose.

### C. DEFERRED COMPENSATION

Pursuant to California Government Code Section 53213, all City employees shall be eligible to participate in the City's Deferred Compensation Plans with no contribution by the City. No later than the last business day of January of each calendar year, the City shall contribute the maximum annual amount allowable under Section 457 of the Internal Revenue Code and the full FICA and Medicare sums as set by the Social Security Administration for those employees designated in Section II (1.2) pursuant to Resolution 2007-39 and employed by July 1, 2009.

## SECTION 8. NEPOTISM POLICY

### A. EFFECTIVE DATE

This policy shall become effective July 1, 2005.

### B. POLICY

Such policy shall not apply to full-time employees hired prior to the effective date. The nepotism policy is described as follows:

1. No City employee shall be appointed or promoted to a position in any department in which such City employee's relative already holds a position, when such employment would result in any of the following:
   a. A supervisor-subordinate relationship;
   b. The employees' job duties will require performance of shared duties on the same or related work assignment;
   c. Both employees will have the same immediate supervisor.

2. For purposes of this section, "relative" shall mean spouse, child, step-child, parent, grandparent, grandchild, brother, sister, half-brother, half-sister, aunt, uncle, niece, nephew, parent-in-law, brother-in-law or sister-in-law.

3. If a City employee marries another person employed by the City of Bell within the same department, both employees shall be allowed to retain their respective positions

Resolution No 2008-05<br>January 7, 2008

B017273

provided that a supervisory relationship does not exist between the two employees. For the purpose of this section, a supervisory relationship shall be defined as one in which one person exercises the right to control, direct, reward or punish another person by virtue of the duties and responsibilities assigned to his or her position.

4.  The City also retains the right to refuse to place both relatives in the same department, division or facility where such has the potential for creating adverse impact on supervision, safety, security, morale or involves potential conflict of interest.

5.  Where the circumstances mandate that two relatives shall not work together, the Personnel Department will attempt to transfer one relative to a similar position in another City department. Although the City will attempt to give consideration to the wishes of the involved parties as to which relative is to be transferred, the controlling factor in determining which relative is to be transferred shall be the positive operation and efficiency of the City. If any such transfer results in a reduction in salary or compensation, the same shall not be considered disciplinary in nature and shall not be the subject of any form of administrative appeal.

6.  If continuing employment of two relatives cannot be accommodated consistent with the City's interest in promotion of safety, security, morale and efficiency, then the City retains sole discretion to separate one relative from City employment. Absent resignation by one affected relative, the less senior of the involved relatives will be subject to separation and the same shall not constitute discipline and shall not be subject to any administrative appeal.

## SECTION 9. DOCUMENT EXECUTION

City documents may be executed by an authorized City employee. The Bell City Council authorizes the Chief Administrative Officer to execute all business documents on behalf of the City.

## SECTION 10. BUSINESS EXPENSE REIMBURSEMENT

The City Council of the City of Bell believes that it is important that City officials (including volunteer members of boards, commissions, and committees) remain informed and trained in issues affecting the affairs of the City and that attendance at institutes, hearings, meetings, conferences, or other gatherings is of value to the City and its citizens. The benefits include:

- The opportunity to discuss the community's concerns with state and federal officials;
- Participation in regional, state and national organizations whose activities affect the City;
- Attending educational seminars improve officials' skill and information levels; and
- Promoting public service and morale by recognizing such service.

In order to promote these endeavors, to protect public resources and foster public trust in the use of those resources, as well as comply with state law requirements regarding reimbursement of

B017274

expenses, the City Council hereby sets forth the travel and expense reimbursement policies for the City of Bell.

The City's operating budget shall provide for a conference and seminar line item for all anticipated and/or unanticipated conferences, conventions and professional meetings.

## A. AUTHORIZED EXPENSES

In accordance with the adopted Code of Ethics for the Bell City Council, Agencies, Authorities and Commissions, City funds, equipment, supplies (including letterhead), titles, and staff time must only be used for authorized City business. Expenses incurred in connection with the following types of activities generally constitute authorized expenses, as long as the other requirements of this Policy are met:

1. Communicating with representatives of regional, state and national government on City adopted policy positions;

2. Attending educational seminars designed to improve officials' skill and information levels;

3. Participating in regional, state and national organizations whose activities affect the city's interests;

4. Recognizing service to the City (for example, thanking a longtime employee with a retirement gift or celebration of nominal value and cost);

5. Attending City events; and

6. Implementing a City-approved strategy for attracting or retaining businesses to the City, this will typically involve at least one staff member.

All other expenditures may require prior approval by the City Council as well as expenses for international and out-of-state (see miscellaneous expenses section).

## B. EXPENSES NOT ELIGIBLE FOR REIMBURSEMENT

Examples of personal expenses that the City will not reimburse include, but are not limited to:

1. The personal portion of any trip;

2. Political or charitable contributions or events;

3. Family expenses, including partner's expenses, when accompanying official on agency-related business, as well as children- or pet-related expenses;

4. Entertainment expenses, including theater, movies (either in-room or at the theater), sporting events (including gym, massage and/or golf related expenses), or other cultural events;

5. Non-mileage personal automobile expenses, including repairs, traffic citations, insurance or gasoline; and

Resolution No 2008-05<br>
January 7, 2008

B017275

6. Personal losses incurred while on City business. Any questions regarding the propriety of a particular type of expense should be resolved by the approving authority before the expense is incurred.

## C. COMPENSATION FOR ATTENDANCE AT MEETINGS

Compensation for meeting attendance by appointed members of City boards and commissions is established by resolution by the pertaining authority, agency, and commission in accordance with applicable statutory authorization.

## D. TRANSPORTATION

When attending conferences or meetings that are of such distance that it is more economical to take commercial transportation, if an official proposes to drive his/her car in those cases, commercial air fare will be paid and not automobile mileage. Government and group rates must be used when available.

1. *Airfare*. Airfares that are reasonable and necessary shall be eligible for purposes of reimbursement.

2. *Automobile*. Automobile mileage is reimbursed at Internal Revenue Service ("IRS") rates in effect at the time of travel. These rates are designed to compensate the driver for gasoline, insurance, maintenance, and other expenses associated with operating the vehicle. This amount does not include bridge and road tolls, which are also reimbursable.

3. *Car Rental*. Rental rates that are reasonable and necessary shall be eligible for purposes of reimbursement.

4. *Taxis/Shuttles*. Taxis or shuttles fares may be reimbursed, including a 15 percent gratuity per fare, when the cost of such fares is equal or less than the cost of car rentals, gasoline and parking combined, or when such transportation is necessary for time-efficiency.

## E. LODGING

Lodging expenses will be reimbursed or paid for when travel on official City business reasonably requires an overnight stay. If such lodging is in connection with a conference, lodging expenses may not exceed the group rate published by the conference sponsor for the meeting in question if such rates are available at the time of booking. Travelers must request government rates, when available.

## F. MEALS

A local expense reimbursement policy identifying a "per diem" of reasonable rates for meals is not adopted. Receipts for expenses for meals shall be required. Actual expenses shall be reimbursed subject to the maximum per diem for the meal as set by the IRS rate in effect at the time of travel.

B017276

## G. MISCELLANEOUS EXPENSES

All items of expenses otherwise unclassified shall be considered under this category.  Examples of expenses such as duplication charges, public stenographer fees, and cost of publications, telephone charges, fax charges, and parking fees incurred on City business may be authorized. Other expenses as necessary when traveling on City may be allowed and should be included within this classification.

It is the policy of the City that no employee shall sustain personal monetary loss as a result of duties performed in the service of the City.  However, expenditures shall relate to the conduct of City business and shall be "necessary" to accomplish the purpose of such business meeting and shall be "reasonable" in amount but not limited to any special physical accommodation required to meet one's special needs. The Chief Administrative Officer shall evaluate and authorize such deviation if reasonable and necessary.

## H. CASH ADVANCE

The City opts not to exercise cash advances as all travel arrangements are done in advance for the pertaining public official.   Other business expenses shall be reimbursed as previously stipulated in this policy.

## I. CREDIT CARD USE

City does not issue credit cards to individual office holders but does have an agency credit card for selected City expenses. City credit card is held by the Department of Administrative Services. The City's credit card use is restricted for airfares, hotel accommodations and transportation. Charges under these categories are arranged prior traveling time.

## J. EXPENSE REPORT CONTENT AND SUBMISSION DEADLINES

All cash advance expenditures, credit card expenses and expense reimbursement requests must be submitted on an expense report form provided by the City.

Officials must submit their expense reports within thirty (30) calendar days of an expense being incurred, accompanied by receipts documenting each expense.  The Chief Administrative Officer may authorize a reimbursement exceeding the time allowed if a reasonable explanation is presented for exceeding such timeframe.

All expenses are subject to verification that they comply with this policy.

## K. REPORTS TO CITY COUNCIL, BOARD OR COMMISSION

At the next regular City Council (or Board or Commission) meeting, each public official shall briefly report on meetings attended at City expense. If multiple officials attended, a joint report may be made.  This requirement may be addressed on the consent calendar of the agenda.

Resolution No 2008-05
January 7, 2008

B017277

L. COMPLIANCE WITH LAWS; VIOLATION

City officials should keep in mind that some expenditure may be subject to reporting under the Political Reform Act and other laws. All agency expenditures are public records subject to disclosure under the Public Records Act and other applicable laws.

M. INDEMNIFICATION

The City shall indemnify its employees from and against all losses, claims, suits, damages, expenses or liabilities, including those stemming from civil actions, negligence, and criminal or other investigations by governmental entities other than the City, and criminal prosecutions provided that they arise from the employee's services performed on behalf of the City and hold them harmless against all demands, claims, actions, losses, and expenses, including reasonable attorney's fees.   The City's obligation under this paragraph extend to indemnification for criminal prosecution unless and until there is a final judicial determination of both the indemnified person's guilt and that the indemnified person knew at the time that he or she performed the action that it was unlawful.

N. ETHICS TRAINING

Each member shall receive at least two hours of training in general ethics principles and ethics laws relevant to his or her public service every two years, with the initial training occurring before January 1, 2007.  The form of such training shall meet the requirements of California Government Code Section 53234 et al.

SECTION 11.  CONFLICT

Should any provision herein conflict with any applicable Memorandum of Understanding, the provision in the Memorandum of Understanding, or employment agreement will prevail. In addition, the Chief Administrative Officer may modify any of the provisions stipulated herein as deemed necessary to address a unique and specific situation on an individual basis for any non-safety employee. In no case, the Chief Administrative Officer shall exercise this right to reduce any of the compensation or benefits herein unless a reduction in work force, disciplinary and/or termination action is required.  All other and former salary resolutions contrary to or inconsistent with any provisions hereof are amended to conform herewith.

SECTION 12. EFFECTIVE DATE

Effective date of this resolution shall be January 7, 2008.

SECTION 13. CERTIFICATION

The City Clerk will certify to the adoption of this resolution. PASSED AND APPROVED THIS 7th day of January of 2008.

Resolution No 2008-05
January 7, 2008

B017278

CERTIFICATION

The City Clerk will certify to the adoption of this resolution. PASSED AND APPROVED THIS 7th day of January of 2008.

Oscar Hernandez
Mayor

ATTEST:

Rebecca Valdez
City Clerk

I certify that the foregoing Resolution No.2008-05 was adopted by the City Council of the City of Bell at a regular meeting held January 7, 2008, by the following vote:

AYES:      COUNCILMAN BELLO, COLE, MIRABAL, VICE MAYOR JACOBO AND MAYOR HERNANDEZ

NOES:      NONE

ABSTAIN:   NONE

ABSENT:    NONE

Rebecca Valdez
City Clerk

Resolution No 2008-05
January 7, 2008

B017279