SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Ezra D. Landes (SBN 253052)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
ezra@spertuslaw.com

Attorneys for Plaintiff Robert A. Rizzo

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. RIZZO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation, and CHARTIS CLAIMS, INC., a Delaware corporation.<br><br>Defendants. | Case No. CV-12-04347-DMG (FMOx)<br><br>Hon. Dolly M. Gee<br><br>**PERTINENT AND SIGNIFICANT AUTHORITIES IN SUPPORT OF PLAINTIFF ROBERT A. RIZZO'S MOTION FOR SUMMARY JUDGMENT (FRAP 28(j) ANALOGY)**<br><br>Date: October 12, 2012<br>Time: 2:00 p.m.<br>Crtrm: 7 |

The Court took Mr. Rizzo's Motion for Summary Judgment under submission on October 12, 2012, but pertinent and significant authorities have been published since that date. By analogy to FRAP 28(j), Mr. Rizzo hereby submits additional pertinent and significant authorities that have been published since oral argument on the Motion. These pertinent and significant authorities establish ICSOP's clear duty to *defend* Mr. Rizzo against the *allegations* in both the Civil and Criminal Actions that are the subject of the Motion.

### 1. Significant Additional Authority Establishing Mr. Rizzo's Entitlement to a Defense of the Criminal Action.

As set forth in the Motion, Mr. Rizzo is entitled to a defense against any parallel proceedings that "amount to a reasonable and necessary effort to avoid or at least minimize liability." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th at 61; *see also NextG Networks, Inc. v. One Beacon Am. Ins. Co.*, 2012 WL 440885 (N.D. Cal. Feb. 10, 2012); *Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*, 2004 WL 1737297, at *7 (N.D. Cal. Aug. 4, 2004). Despite these authorities, ICSOP argued in opposition to the Motion that "imposing a duty to defend the Criminal Actions would violate California Insurance Code section 533.5, California Civil Code section 1668, and public policy." (ICOP's Opposition (Docket No. 24) at p.23, lns.10-12). This argument raised by ICSOP was raised and rejected on May 1, 2013, by the California Court of Appeal in a published opinion captioned *Mt. Hawley Insurance Co. v. Lopez*, 215 Cal.App.4th 1385 (2013).

In *Mt. Hawley*, the Court of Appeal expressly confirmed that section 533.5 *only* applies to unfair competition ("UCL") and false advertising ("FAL") claims, and public policy in California does *not* prohibit an insurer from defending criminal actions. *Id.* at 1417 ("Outside the special area of UCL and FAL actions brought by state and local prosecuting agencies, there is no public policy in California against insurers contracting to provide a defense to insureds facing criminal charges, as opposed to indemnification for those convicted criminal charges. . . . Section 533.5 did not change that law outside of the context of certain actions brought by the listed state and local agencies."); *see also id.* at 1417 n.11 ("Indeed, the Legislative Counsel's digest for AB3920 stated that the new statute's provisions did ' not constitute a change in, but are declaratory of, the existing law.' Existing law in 1988 did not preclude insurance companies from providing a defense, as opposed to indemnity, for criminal charges.").

The *Mt. Hawley* Court also confirmed that ICSOP's argument that Civil Code section 1668 precludes a defense for allegedly "willful conduct" is without merit. Separate from the fact that the allegations against Mr. Rizzo do not involve "willful" misconduct (*People v. Dillon*, 199 Cal. 1 (1926) (holding that Penal Code § 424 is a general intent crime), *Mt. Hawley* confirmed that Insurance Code "section 533, a similar but much older statute (enacted in 1935) that prohibits indemnification 'for a loss caused by the willful act of the insured,' does not extinguish an insurer's duty to *defend* an insured accused of those willful actions." *Mt. Hawley*, 215 Cal.App.4th at 1417 (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 277-78 (1966) ("a contract to defend an assured upon mere accusation of a willful tort does not encourage such willful conduct").

*Mt. Hawley* noted that the Legislature has in fact "enacted statutes authorizing insurance that provides a defense to individual defendants in various kinds of proceedings, including criminal proceedings" including cases involving government employees. *Mt. Hawley*, 215 Cal.App.4th at 1420 (citing Cal. Corps. Code § 317, Cal. Govt. Code §§ 990, 995.8) ("Out interpretation of section 533.5 allows insurers to contract to provide a defense to certain kinds of criminal charges, as the Legislature has said insurers can do in the case of corporate agents and government employees charged with crimes.")  The recent holding in *Mt. Hawley* establishes that, contrary to ICSOP's arguments, there is no statute or public policy that prohibits ICSOP from fulfilling its contractual duty to defend Mr. Rizzo against the Criminal Action.

In the instant case, both Mr. Rizzo and ICSOP agreed and jointly argued that the Civil Action and the Criminal Action were each based on identical facts. The Civil Action will be stayed pending trial of these facts in the Criminal Action. In its opening brief on appeal in the Civil Action, where the Attorney Generally successfully obtained leave to amend some but not all allegations made in the Civil Action, the Attorney General expressly argued that "judicial

3.
PERTINENT AND SIGNIFICANT AUTHORITIES

economy" would be served by staying the Civil Action because a conviction in the Criminal Action would "<u>resolve the civil action without further litigation</u>." (Attorney General's Opening Brief (Docket No. 20-19) at p.56-57).  ICSOP should not be able to circumvent its defense obligations by the mere fortuity that the Civil and Criminal Actions allege the same facts and the Criminal Action will proceed to trial first.  Mr. Rizzo must defend the Criminal Action to avoid liability in the Civil Action, and ICSOP must therefore bear those necessary defense costs.[1]

### 2. Significant Additional Authority Establishing That Mr. Rizzo is an Insured Under the ICSOP Policy.

The underlying ICSOP Policy defines an insured as any appointed official or employee acting (1) "on behalf" of the City ***or*** (2) "within the course and scope of employment."  (Docket No. 19, UF 4, Stipulation, Ex. A (Policy) at p.12, Sections IV.B, IV.C (defining "insured")).  At the summary judgment hearing on October 12, 2012, the Court questioned whether Mr. Rizzo could qualify as an insured if Mr. Rizzo was not acting "for the benefit" of the City when doing the things alleged to be wrongful.  However, California courts have repeatedly confirmed that "course and scope of employment" does *not* require the alleged wrongdoer to work "for the benefit" of the employer to act within the course and scope of employment.

---

[1] There is no authority for ICSOP's argument that Mr. Rizzo must be acting "for the benefit" of the City before he can qualify as an insured under the Policy.  In reliance on the policies at issue, Mr. Rizzo's counsel entered an appearance in the Criminal Action and the Civil Action has been stayed so the Criminal Action will determine Mr. Rizzo's liability in both the Civil and Criminal Actions.  The Criminal Action is scheduled to begin trial on October 8, 2013, and Mr. Rizzo's defense has been severely compromised by ICSOP's failure to provide the defense promised in the Policy.

4.

PERTINENT AND SIGNIFICANT AUTHORITIES

On August 5, 2013, this Court entered judgment in the matter of *Xue Lu v. United States*, 2013 WL 4007770 (C.D. Cal. Aug. 5, 2013), finding that the United States government was liable for the emotional distress suffered by two female asylum applicants when the assigned asylum officer, Thomas Powell, made sexual advances to the women and asked for bribes before approving their asylum applications. The district court had previously dismissed the claims on the ground that Powell was *not* acting within the course and scope of his employment when interacting with the women, but the Ninth Circuit reversed the district court and expressly held "that the employee's actions need not benefit the employer in order to create vicarious liability." *Xue Lu v. Powell*, 621 F.3d 944, 949 (9th Cir. 2010).

The Ninth Circuit held that Powell was acting within the course and scope of his employment even though "the United States had not employed him to prey on asylum petitioners." *Id.* at 948. Although *Xue Lu* is a case involving principles of respondeat superior, the Ninth Circuit confirmed in *Xue Lu* that the phrase "course and scope of employment" is defined under California law, and there is no basis to define the phrase "course and scope of employment" differently when it appears in an insurance policy interpreted under California law. "'California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests.'" *Id.* at 948 (quoting *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296-97 (1995)). "Although 'somewhat surprising on first encounter,' the principle is 'well established' that 'an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment . . . even though the employer has not authorized the employee to commit crimes or intentional torts.'" *Id.*

Moreover, *Xue Lu* further confirmed that it is irrelevant whether Mr. Rizzo is alleged to have acted to enrich himself. *Xue Lu* cited *Inter Mountain*

*Mortgage, Inc. v. Sulimen*, 78 Cal.App.4th 1434 (2006), a case where the court of appeal held that a real estate broker's submission of a fraudulent loan application was within the course and scope of his employment. "The court of appeal noted that throughout the transaction the broker, acting to enrich himself, represented himself as the agent of the employer providing the documentation necessary for the loan." *Xue Lu*, 621 F.3d at 949 (citing *Inter Mountain Mortgage*, 78 Cal.App.4th at 796). "The risk of a fraudulent application was 'a generally foreseeable risk inherent and incidental to defendants' mortgage loan brokerage business." *Id.* The *Xue Lu* Court held that "[l]ike the loan broker, Powell was part of a process in which he was expected to participate in a lawful way, reviewing the documentation of the asylum applicant, interviewing her, and assessing the credibility of her claims. Like the loan broker, Powell abused his powers for his own benefit. In doing so, he acted within the scope of his employment as defined by California." *Id.*

Similarly in the case at bar, contrary to ICSOP's arguments, it is irrelevant whether Mr. Rizzo was acting for his own benefit or for the benefit of his employer when doing the things alleged to be wrongful in the Civil and Criminal Actions. Further, there is not a single claim of theft or embezzlement anywhere in either the Civil or Criminal Actions. Each and every allegation against Mr. Rizzo in both the Civil and Criminal Actions involves acts allegedly performed within the course and scope of Mr. Rizzo's employment: passing ordinances, approving salaries, approving loans, responding to Public Records Act requests. This is specifically why the Court of Appeal on March 20, 2013, <u>affirmed</u> the trial court's *dismissal with prejudice* of the Attorney General's second cause of action for negligence, and its third cause of action for fraud. (*See* Rizzo's Supplemental Memorandum and Notice of Lodgment (Docket No. 45)). With respect to both of these causes of action, the Court of Appeal specifically held that the Attorney General's claims fail because "there is no liability for

6.
PERTINENT AND SIGNIFICANT AUTHORITIES

discretionary choices made by legislators and executives, operating <u>within the scope</u> of their offices." (Ex. A (Docket No. 45-1) at 22; *see also id.* at 40-41 ("Leave to amend the complaint was properly denied with respect to: (1) the second cause of action, for negligence; [and] (2) the third cause of action, for fraud.")). Mr. Rizzo <u>only</u> has legislative immunity for acts performed within the course and scope of his employment, and whether or not those acts were executed "for the benefit" of the City is irrelevant to the immediate determination of whether the acts occurred within the course and scope of Mr. Rizzo's employment for purposes of qualifying Mr. Rizzo as an insured under the ICSOP Policy.

### 3. Conclusion.

The Civil Action has been stayed, and the trial of the Criminal Action involves the exact same facts at issue in the Civil Action. As thoroughly briefed in the pleadings underlying the Motion, each and every allegation in both the Civil and Criminal Actions alleges *negligence* or wrongdoing by Mr. Rizzo while acting in his *official* capacity. The trial of the Criminal Action is set to begin on October 8, 2013. ICSOP is free to reserve its rights with respect to its defense of Mr. Rizzo, but unless ICSOP accepts the defense of Mr. Rizzo immediately, Mr. Rizzo will be convicted merely because he has insufficient resources to defend himself in a matter that will determine the outcome of the Civil Action. For the foregoing reasons, Mr. Rizzo respectfully requests that the Court grant Mr. Rizzo's pending Motion for Summary Adjudication in time to enable Mr. Rizzo to work on his defense in advance of the trial of the Criminal Action.

Dated: August 18, 2013    SPERTUS, LANDES & UMHOFER, LLP

By: /S_____
James W. Spertus
Attorneys for Plaintiff Robert A. Rizzo

7.

PERTINENT AND SIGNIFICANT AUTHORITIES