1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   ROBERT A. RIZZO,                      )   Case No. CV 12-04347 DMG (FMOx)
                                           )
12                      Plaintiff,         )   **ORDER RE DEFENDANT'S MOTION
                                           )   FOR SUMMARY JUDGMENT AND**
13           v.                            )   **PLAINTIFF'S MOTION FOR**
                                           )   **PARTIAL SUMMARY JUDGMENT**
14   THE INSURANCE COMPANY OF THE          )   **[DOC. ## 17, 18]**
                                           )
15   STATE OF PENNSYLVANIA, et al.,        )
                                           )
16                      Defendant.         )
                                           )
17

18

19          This matter is before the Court on the Motion for Summary Judgment filed by

20   Defendant, the Insurance Company of the State of Pennsylvania ("ICSOP") [Doc. # 17],

21   and the Motion for Partial Summary Judgment filed by Plaintiff Robert A. Rizzo [Doc. #

22   18].   The Court has duly considered the parties' arguments and evidence in support of

23   and in opposition to the cross-motions.   For the reasons discussed below, ICSOP's

24   motion for summary judgment is **GRANTED** in full.   Rizzo's motion for partial

25   summary judgment is **DENIED**.

26

27

28

# I.

# PROCEDURAL HISTORY

On May 18, 2012, Rizzo filed a Complaint in this Court against Defendants ICSOP and Chartis Claims, Inc.  [Doc. # 1.]  The Complaint raises the following claims:  (1) breach of the duty to defend under an insurance contract; (2) breach of the duty to indemnify under an insurance contract; (3) breach of the implied covenant of good faith and fair dealing; and  (4) a request for declaratory relief as to Defendants' legal obligations to pay for attorney's fees in connection with several civil and criminal lawsuits to which Rizzo is a party.

On June 13, 2012, Defendants filed an Answer to the Complaint.  [Doc. # 8.]  On June 27, 2012, the Court ordered the dismissal of Defendant Chartis Claims pursuant to the parties' stipulation.  [Doc. # 14.]  On August 24, 2012, the parties filed the instant motions.  ICSOP seeks a determination that it has no duty to defend Rizzo in any of the actions, and that it therefore has no duty to indemnify, has not breached the contract or the implied covenant of good faith and fair dealing, and owes Rizzo no punitive damages.  (ICSOP Mot. at 23-25.)  Rizzo seeks a determination that ICSOP must defend him against the State Attorney General's civil suit and the City of Bell's Cross-Complaint, and that ICSOP must also pay costs associated with the criminal actions against Rizzo and his own Cross-Complaint against the City of Bell.  (Rizzo Mot. at 2-3.)  On October 15, 2012, March 24, 2013, and August 18, 2013, Rizzo filed supplemental briefing in support of his motion for partial summary judgment.  [Doc. ## 39, 45, 48, 51.]  ICSOP filed responses to each of these filings.[1]  [Doc. ## 40, 47, 50.]

---

[1] Rizzo's most recent supplemental brief highlights a Ninth Circuit case, *Xue Lue v. Powell*, 621 F.3d 944 (9th Cir. 2010), relevant to the question of whether Rizzo is an "insured."  The Court has not considered this authority in reaching its decision because the case was available and should have been cited in the original briefs.  The Court also declines to consider both parties' most recent requests for judicial notice as the documents submitted are unnecessary to the Court's analysis.  [*See* Doc. ## 50, 51.]

## II.

## FACTUAL BACKGROUND

The parties agree that there are no disputed facts.  The following facts are taken from the Stipulation of Undisputed Material Facts ("SUF") [Doc. # 20] and the Requests for Judicial Notice ("RJN") filed by both parties [Doc. ## 17-3, 38].[2]

### A.    The City's Insurance Policy with ICSOP

ICSOP issued to the City of Bell ("City") an insurance policy dated July 1, 2010 to July 1, 2011 ("Policy"), a valid and enforceable insurance contract between the City and ICSOP.  (SUF ¶ 2 Ex. A ("Policy").)  Under the Policy, ICSOP agreed to pay defense costs as follows, in relevant part:  "We shall have the right and duty to defend, investigate, and settle any claim or suit seeking damages covered by the terms and conditions of this Policy . . . ."  (*Id.* at 1.)  The policy also provides, "We will defend any claim or suit against you seeking damages under this Policy even if such claim or suit is groundless, false, or fraudulent, but we have the right to investigate, defend, and settle the claim or suit as we deem necessary."  (*Id.* at 2.)

In addition to the City itself, the Policy defines "Insured" to include individuals who are "elected or appointed officials of the Named Insured . . . while acting on behalf of the Named Insured," and "employees."  "Employee" is further defined as "a leased worker . . . while acting within the scope of his/her duties as such."  (*Id.* at 3.)  The Policy also contains the following relevant definitions:

---

[2] ICSOP filed a RJN in support of its motion for summary judgment on August 24, 2012, requesting that the Court take judicial notice of an order issued in the Los Angeles County Superior Court on May 2, 2011 in the litigation styled *People of the State of California v. Robert Rizzo*, LASC Case No. BC445497.  Plaintiff filed a RJN in support of his motion for partial summary judgment on October 12, 2012, requesting that the Court take judicial notice of several Resolutions of the City Council of Bell.  Neither party objected to either RJN.  Court proceedings related to the subject matter of the case and local ordinances and resolutions are properly subject to judicial notice under Fed. R. Evid. 201.  *See Colony Cove Prop., LLC v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, the parties' RJNS are granted.

"Claim(s)" means a demand for money.

"Suit" means a civil proceeding in which damages are alleged because of bodily injury or property damage, wrongful act or employee benefit wrongful act to which this insurance applies. . . .

"Wrongful act" means: Any actual or alleged error or misstatement, omission, negligent act, or breach of duty . . . .

(Policy at 3-10.)

The Policy also contains several Exclusions, three of which are relevant here. First, Exclusion EE excludes coverage "[f]or injunctions, equitable relief, or any other form of relief other than the payment of money damages." (*Id.* at 18.) Exclusion O states that ICSOP will not cover any cost related to the defense of a claim or suit "[a]rising out of an alleged willful commission of a crime by [an Insured] or other dishonest, fraudulent, or malicious act." (Policy at 16.) Finally, Exclusion P excludes suits or claims "[a]rising out of [an Insured's] wrongful act for gain, profit, or advantage to which [the Insured is] not legally entitled." (*Id.*) Exclusions O and P both allow ICSOP to pay for defense costs of such claims or suits in its discretion, provided that the Insured will reimburse ICSOP in the event of an adverse judgment. (*Id.*)

**B.   Plaintiff Rizzo's Alleged Official Misconduct and State Court Proceedings**

In 1993, Rizzo became the Chief Administrative Officer for the City, and he held that position until July 2010. (SUF ¶ 1.)  At all relevant times, Rizzo was an appointed official and an employee of the City. (*Id.*)

On September 15, 2010, the Attorney General of the State of California ("AG") filed a civil action against Rizzo styled *People of the State of California ex rel Edmund G. Brown Jr. v. Robert Rizzo*, LASC Case No. BC445497 ("AG's Civil Action"). (SUF ¶ 3.)  After the Los Angeles County Superior Court sustained Rizzo's demurrer with leave to amend, the AG filed a First Amended Complaint ("AG FAC") on November 10, 2010. (*Id.*)  The AG FAC, the operative pleading in that action, seeks relief against Rizzo, seven other City employees and officials, and the City itself under the following theories:

(1) waste of public funds under Cal. Civ. Proc. Code § 526a; (2) negligence; (3) and (4) fraudulent deceit; (5) conflict of interest under Cal. Gov't Code § 1090; and (6) breach of fiduciary duty and violation of public trust.  (*Id.* Ex. C.)  On May 2, 2011, the Superior Court dismissed the AG's FAC without leave to amend with respect to claims (1) through (4) and (6), and it granted leave to amend as to claim (5).  (*Id.* ¶ 20.)  The AG elected not to amend its FAC, and the court dismissed the AG's FAC in its entirety on July 26, 2011. (*Id.*)  On March 20, 2013, a California Court of Appeal reversed the Superior Court's dismissal and remanded the case with instructions to grant leave to amend as to all claims except claim (5).[3]  *See People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 951, 154 Cal. Rptr. 3d 443 (2013).

On October 15, 2010, Rizzo filed a Cross-Complaint against the City ("Rizzo's Cross-Complaint").  (SUF ¶ 7.)  Rizzo's Cross-Complaint seeks declaratory relief against the City for:  (1) contractual indemnification; (2) statutory indemnification under Cal. Gov't Code § 995; and (3) statutory indemnification under Cal. Labor Code § 2802.  (*Id.* Ex. H.)

On November 24, 2010, the City filed a Cross-Complaint in the AG's Civil Action against Rizzo, styled *City of Bell v. Robert Rizzo*, LASC Case No. BC 445497.  (SUF ¶ 5.)  The City's Cross-Complaint was amended several times.  (*Id.*)  The operative Third Amended Cross-Complaint ("City's Cross-Complaint") seeks relief from Rizzo under the following theories:  (1) intentional misrepresentation; (2) breach of the covenant of good faith and fair dealing; (3) conflict of interest under Cal. Gov't Code § 1090; (4) rescission

---

[3] On March 24, 2013, Rizzo filed a Supplemental Memorandum and Notice of Lodgment of this court decision. [Doc. # 45.] ICSOP objected to the filing but filed a brief in response. [Doc. # 47.] The Court construes Rizzo's recent filing as another RJN.  As the opinion is a public document whose contents are not subject to reasonable dispute, the Court takes judicial notice of the opinion and considers both parties' briefs regarding the legal effect of the opinion on this case.  As noted below, however, because the Court of Appeal's decision had not issued at the time ICSOP withdrew its defense, the Court considers it only insofar as it sheds light on the nature of the State's claims against Rizzo, not as evidence of the potential for coverage under the Policy.

and restitution of money wrongfully obtained; (5) declaratory relief under Cal. Civ. Proc. Code § 1060.  (*Id.* Ex. G.)

On September 10, 2010, the Los Angeles District Attorney's Office ("DA") filed a criminal complaint against Rizzo captioned *People of the State of California v. Robert Rizzo*, LASC Case No. BA376026.  (SUF ¶ 9.)  The complaint in the Criminal Action was amended on February 4, 2011.  (*Id.* ¶ 11.)  The DA filed two additional criminal complaints against Rizzo on October 20, 2010 and March 29, 2011 (the three criminal complaints are collectively referred to as "the Criminal Actions").  (*Id.* ¶¶ 12-13.) Together, the Criminal Actions charge Rizzo, along with several other former City officials and employees, with the following offenses:   (1) three counts of misappropriation of public funds under Cal. Penal Code § 424(a); (2) one count of conspiracy to violate Cal. Penal Code § 424(a); (3) three counts of conflict of interest under Cal. Gov't Code § 1090; (4) two counts of conflict of interest under Cal. Gov't Code § 1097; (5) two counts of secretion of an official record under Cal. Gov't Code § 6200; (6) and two counts of falsification of an official record under Cal. Gov't Code § 6200.  (*Id.* Exs. J, K, L.)

On or about November 16, 2010, Rizzo tendered the AG's Civil Action, the City's Cross-Complaint, his own Cross-Complaint, and the Criminal Actions to ICSOP for defense under the Policy.  (SUF ¶¶ 4, 6, 8, 10; Compl. ¶¶ 29, 31.)  On December 16, 2010, ICSOP agreed to defend the three civil actions under a full reservation of rights, but it declined to defend the criminal actions.  (*Id.* ¶ 15.)  On April 28, 2011, prior to the Superior Court's order granting Rizzo's demurrer to the AG FAC, ICSOP withdrew its agreement to defend the civil actions.  (*Id.* ¶ 19, Ex. Q.)  After the AG appealed the dismissal of its FAC, Rizzo tendered the appeal to ICSOP for a defense.  (*Id.* ¶ 22.)  On October 7, 2011, ICSOP informed Rizzo that it would not defend the appeal, stating that it had no duty to do so under the Policy.  (*Id.*, Ex. R.)  On July 27, 2012, ICSOP agreed to defend the appeal, but it maintained that it had no duty to do so and reserved its right to withdraw the defense.  (*Id.* ¶ 24, Ex. T.)

# III.

## STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e) (1986)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

# IV.

## DISCUSSION

### A.   Standard Governing an Insurance Company's Duty to Defend

In a suit regarding an insurer's duty to defend, the insured must establish the existence of a potential for coverage under the policy. *See Feldman v. Illinois Union Ins. Co.*, 198 Cal. App. 4th 1495, 1500, 130 Cal. Rptr. 3d 770 (2011); *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1068, 34 Cal. Rptr. 3d 136, 142

(2005) (citing *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 300, 24 Cal. Rptr. 2d 467 (1993)).  The corollary to that rule is that, to avoid liability under a policy, the insurer must prove that there is no basis for potential coverage.  *Id.*  "If, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." *Id.*  (citing *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655, 31 Cal.Rptr.3d 147 (2005)).   Under California law, courts look to the facts alleged in the complaint, and not the "technical legal cause of action pleaded," to determine whether a duty to defend exists.  *See Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510, 108 Cal. Rptr. 2d 657 (2001); *see also Michaelian v. St. Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1106, 58 Cal. Rptr. 2d 133 (1996) ("Since pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery.  However, the insured may not speculate about unpled third party claims to manufacture coverage.") (internal quotation marks and citations omitted).

The determination of potential coverage is made at the time the lawsuit is tendered to the insurance company.[4]  *The Upper Deck Co., LLC v. Fed. Ins. Co.*, 358 F.3d 608, 612 (9th Cir, 2004).   The determination is usually made by comparing the complaint with the terms of the policy, although extrinsic facts may also give rise to a duty to defend when they "reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.* 4 Cal. 4th 1076, 1081, 17 Cal. Rptr. 2d 210 (1993)

---

[4] Later developments in a suit may also impact the insurer's duty to defend.  *Howard v. Am. Nat. Fire Ins. Co.*, 187 Cal. App. 4th 498, 519-20, 115 Cal. Rptr. 3d 42 (2010).  Where, as here, an insurer agrees to defend on a full reservation of rights, it may withdraw its defense, at its own risk, if it becomes clear that there is no potential for coverage.  *See St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*, 804 F.2d 520, 522 (9th Cir. 1986) (citing *Gray*, 65 Cal. 2d at 279).  In such cases, whether a duty to defend exists is determined based on the facts known to the insurer at the time of the withdrawal, and the duty is distinguished prospectively from that point, not retrospectively.  *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655, 31 Cal. Rptr. 3d 147 (2005).  Here, ICSOP withdrew its defense on April 28, 2011. (SUF ¶ 19.)  The Court does not consider subsequent developments in the nature of the suit, such as the trial court's and court of appeal's decisions as to the AG's claims, except as they shed light on the nature of the claims.

(citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276, 54 Cal. Rptr. 104 (1966)). Ambiguities in a policy must be resolved in favor of the insured. *B&E Convalescent Ctr. v. St. Comp. Ins. Fund*, 8 Cal. App. 4th 78, 99-100, 9 Cal. Rptr. 2d 894 (1992).

Where a duty to defend exists as to one claim in an action, the insurer is obligated to defend against all claims in that action "prophylactically" to ensure that an "immediate" defense is provided. *Buss v. Sup. Ct.*, 16 Cal. 4th 35, 48, 65 Cal. Rptr. 2d 366 (1997); *Horace Mann*, 4 Cal. 4th at 1081. Thus, in a "mixed" action, an insurer may not "parse" the claims and defend only those which are potentially covered. *Buss*, 16 Cal. 4th at 489. Rather, the duty to defend arises if there is any potential for liability under the policy, regardless whether covered or noncovered claims predominate the action. *Horace Mann*, 4 Cal. 4th at 1084.

Insurance coverage is interpreted broadly, but exclusions are interpreted narrowly against the insurer. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, 3 Cal. Rptr. 3d 228 (2003). The insured bears the burden of establishing that a claim is within the basic scope of coverage. *Id.* Once the insured has made this showing, the burden is on the insurer to establish that the claim is specifically excluded. *Id.* (citing *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188, 77 Cal. Rptr. 2d 537 (1998)).

**B.  <u>Rizzo is an "Insured" as Defined in the Policy</u>**

ICSOP moves for summary judgment on the basis that Rizzo is not an "Insured" under the Policy. The Policy defines an Insured as "appointed officials of [the Named Insured's] . . . while acting on behalf of the Named Insured," as well as "[a]ny of [the Named Insured's] employees . . . ." (Policy at 12.) "Employee" is further defined as including "a leased worker or a volunteer while acting within the scope of his/her duties as such." (*Id.* at 3.) It is undisputed that Rizzo is both an "official" and an "employee" of the City. (SUF ¶ 1.)

//

//

//

-9-

1      **1.**    <u>The Claims Against Rizzo Arise Out of Acts Within the Scope of His</u>
2      <u>Employment</u>

3      California law defines "scope of employment" broadly.[5]  *Sharrock v. U.S.*, 673
4    F.3d 1117, 1120 (9th Cir. 2012) (citing *Farmers Ins. Gp. v. Cnty. of Santa Clara*, 11 Cal.
5    4th 992, 1004, 47 Cal. Rptr. 2d 478 (1995)).  In *respondeat superior* cases, the California
6    Supreme Court has held that acts "necessary to the comfort, convenience, health, and
7    welfare of the employee while at work" are within the scope of employment.  *Farmers*,
8    11 Cal. 4th at 1004.  An employee acts within the scope of employment when

9           in the context of the particular enterprise an employee's conduct is not so
10          unusual or startling that it would seem unfair to include the loss resulting
11          from it among other costs of the employer's business.  In other words, where
12          the question is one of vicarious liability, the inquiry should be whether the
13          risk was one that may fairly be regarded as typical of or broadly incidental to
14          the enterprise undertaken by the employer.

15    *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005) (quoting
16    *Farmers*, 11 Cal. 4th at 448)).  Thus, an employer's vicarious liability for the acts of its
17    employees extends to "risks inherent in or created by the enterprise."  *Farmers*, 11 Cal.
18    4th at 1003 (quoting *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968, 227 Cal.
19    Rptr. 106 (1986); emphasis omitted).  It is insufficient that the employee's position was
20    the "but for" cause of the tort.  *Lisa M. v. Henry Mayo Newhall Mem. Hospital*, 12 Cal.
21    4th 291, 300, 48 Cal. Rptr. 2d 510 (1995).  Rather, the risk that the tort would occur must
22    be "typical of or broadly incidental to" the employer's enterprise.  *Id.*  In this sense, an
23    intentional tort is "foreseeable" if "*in the context of the particular enterprise* an

24
25
26
27
28

---

[5] The Policy does not define the "scope of duties" for the purpose of defining "employee." "The fact that a term is not defined in the polic[y] does not make it ambiguous."  *Foster-Gardner, Inc. v. Nat. Union Fire Ins. Co.*, 18 Cal. 4th 857, 868, 77 Cal. Rptr. 2d 107 (1998).  Accordingly, the Court defines that term in a common sense manner.  *Ray v. Farmers Ins. Exchange*, 200 Cal. App. 3d 1411, 1416, 246 Cal. Rptr. 593 (1988).

employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 302.

"Where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it appears that neither directly nor indirectly could he have been serving his employer." *Farmers*, 11 Cal. 4th at 1004. "An employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes." *Id.* at 1004-05 (emphasis in original). Thus, torts committed independently of an employee's job duties and out of purely personal malice or self-interest are not within the scope of employment. *Id.* at 1005.

The AG FAC raises claims of waste of public funds, negligence, fraudulent deceit, conflict of interest, and breach of fiduciary duty and violation of public trust. (SUF Ex. C.) Although Rizzo is sued in both his individual and official capacity, the claims against him arise out of acts he engaged in while employed by the City and while carrying out his duties as the City's Chief Administrative Officer. (*See id.* ¶ 10.) The AG FAC alleges that the city council raised Rizzo's salary 16 times between 1993 and 2010 at a rate of approximately 14% each year. (*Id.* ¶ 25.) Rizzo allegedly received excessive amounts of vacation and sick leave per year, which was converted to pay at an excessive rate. (*Id.* ¶¶ 29-30.) Rizzo also authorized excessive salary increases and vacation payouts for other city employees. (*See id.* ¶¶ 35-37.) Following a 2005 change in state law, Rizzo proposed to the city council that the City become a charter city, which allowed council members to increase their own salaries. (*Id.* ¶ 58.) Around the same time, the council members authorized a nearly 50% increase in Rizzo's salary. (*Id.* ¶ 60.) The AG FAC further alleges that Rizzo and the other defendants took steps to conceal their activities, including dividing their contracts to avoid discovery and passing a deceptively titled ordinance. (*Id.* ¶¶ 61-65.)

Rizzo carried out the alleged misconduct by virtue of his position as Chief Administrative Officer of the City. His position gave him the authority to "dictate[] the terms of the employment contracts for" City officers and employees. (SUF Ex. C ¶ 3.) If determined to be true, the allegations lodged by the AG demonstrate an abuse of Rizzo's authority as Chief Administrative Officer, but they do not evince a complete departure from his job duties that was unforeseeable in the context of the City's usual course of business. *See Lisa M.*, 12 Cal. 4th at 300. In *Farmers*, several female county employees sued the county and a male supervisor for the supervisor's acts of sexual harassment allegedly committed at the workplace during work hours. 11 Cal. 4th at 999. The supervisor tendered his defense to the county, and the California Supreme Court held that the county had no duty to defend because the acts of harassment were outside the scope of employment. *Id.* at 1003. Notwithstanding that all of the acts took place on the jail premises while the supervisor was on duty, the Supreme Court reasoned that the acts were "motivated for strictly personal reasons unrelated to the guarding of inmates or the performance of any other duty of a deputy sheriff at a county jail." *Id.* at 1007. The court held that workplace sexual harassment was not "typical of or broadly incidental to" the county's work, notwithstanding the prevalence of such misconduct as a general matter. *Id.* at 1009.

Here, even though Rizzo's acts were allegedly motivated by his personal desire to award himself and other individuals increased salaries and benefits, it cannot be said that his actions did not "arise out of the employment." *Farmers*, 11 Cal. 4th at 1008. His abuse of the authority granted to him by virtue of his position was not so "unusual or startling" that, in the *respondeat superior* context, the City cannot with certainty be held liable for his actions. *Perez*, 41 Cal. 3d 968.

Finally, ICSOP argues that the *respondeat superior* cases defining "scope of employment" are inapposite because they did not address an insurer's duty to defend. But ICSOP's reliance on *Farmers*, 11 Cal. 4th 992, and *State Farm Fire & Cas. Co. v. Century Indem. Co.*, 59 Cal. App. 4th 648, 658, 69 Cal. Rptr. 2d 403 (1997), for this

argument is misplaced.   Although both *Farmers* and *State Farm* found that no duty existed to defend individual employees against sexual molestation claims, they reached this conclusion based on the unique nature of molestation cases, not by distinguishing between vicarious liability and the duty to defend.  *See Farmers*, 11 Cal. 4th at 1006 (noting that California cases generally decline to find vicarious liability for sexual misconduct other than in police-officer cases because "it [can] not be demonstrated that the various acts of sexual misconduct ar[i]se from the" conduct of the enterprise); *State Farm*, 59 Cal. App. 4th at 658 (noting that sexual misconduct is generally beyond the scope of employment because it is "undertaken for personal gratification and not for a purpose connected to employment" and is "usually not engendered by events or conditions relating to any employment duties or tasks").[6]  Contrary to ICSOP's assertion, these cases do not stand for the proposition that the terms "scope of employment" or "scope of duties" are subject to a different interpretation in the context of an insurance contract as opposed to a vicarious liability claim.

## 2.   Neither California Law Nor the Policy Precludes a Defense for Acts that Harmed the City

ICSOP submits that it has no duty to defend the actions against Rizzo because he acted "in a manner antagonistic to the City's business interests."  (ICSOP Mot. at 14.) First, it is important to note that the Policy itself contains no exclusion or other language that precludes coverage of claims between Insureds or for conduct that harms another Insured.  As noted above, ambiguities in an insurance policy are construed in favor of the

---

[6] Interestingly, *Farmers* dealt with whether the county-employer, not the insurance company, had a duty to defend.  In *Farmers*, the supervisor sought a defense from the county, which refused, and eventually obtained the defense from his personal homeowner's insurance carrier, Farmer's Insurance Group.  11 Cal. 4th at 999-1000.  Farmers later sought indemnity from the county, arguing that the California Tort Claims Act required the county to defend its employees for all acts within the scope of employment.  *Id.* at 1001.  This distinction does not alter the Court's analysis of the common-sense meaning of the term "scope of duties" as it is used in the Policy.

1    Insured, and exclusions are strictly interpreted against the insurer.  *Manzarek v. St. Paul*
2    *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008).

3         ICSOP also points to the following language in the City's Cross-Complaint:  "All
4    of the conduct by Rizzo which triggered the criminal charges . . . and this lawsuit . . . was
5    outside of the course and scope of Rizzo's employment duties as City Chief
6    Administrative Officer."  (City's Cross-Complaint at ¶¶ 68.)  This statement, however, is
7    a legal conclusion, not a fact, and the Court need not defer to it in determining a potential
8    for coverage.  *See Lisa M.*, 12 Cal. 4th at 299 (determination of scope of employment is a
9    question of law when "the facts are undisputed and no conflicting inferences are
10   possible") (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213, 285 Cal. Rptr.
11   99 (1991)).  Thus, while the facts of this case are unusual in that the actions at issue
12   involve acts that allegedly harmed the Named Insured rather than a third party, the Court
13   may not read additional terms into the contract that are not supported by its text.  *See*
14   *Ben-Zvi v. Edmar Co.*, 40 Cal. App. 4th 468, 473, 47 Cal. Rptr. 2d 12 (1995) (noting that
15   courts may not "create for the parties a contract which they did not make, and . . . cannot
16   insert in the contract language which one of the parties now wishes were there") (quoting
17   *Levi Strauss & Co. v. Aetna Cas. & Surety Co.*, 184 Cal. App. 3d 1479, 1486, 237 Cal.
18   Rptr. 473 (1986)).

19        Moreover, the cases on which ICSOP relies for this argument differ from this case
20   in that they addressed coverage under a narrower policy definition of "insured."   In
21   *Milazo v. Gulf Ins. Co.*, 224 Cal. App. 3d 1528, 1536, 274 Cal. Rptr. 632 (1990), the
22   policy covered "any partner or member [of the named partnership] but only with respect
23   to his liability as such."  Milazo, a partner who sought a defense against claims brought
24   by the partnership, was not entitled to a defense because "[a] partner, without the consent
25   of *all* of the remaining partners, has no authority to do any act which is destructive of the
26   partnership."  *Id.* at 1538.  Because the very scope of a partner's duty as a partner is
27   limited to acts in furtherance of the partnership, Milazo was not acting in his capacity as a

28

partner when he intentionally destroyed the partnership's business opportunities. *Id.* at 1539.

Similarly, in *Lomes v. Hartford Fin. Servs. Gp., Inc.*, 88 Cal. App. 4th 127, 132, 105 Cal. Rptr. 2d 471 (2001), Lomes, a corporate director, sought a defense under a policy that covered officers and directors "only with respect to their duties as [the corporation's] officers or directors."  After he left the employ of the corporation but before he ended his term as a director, he engaged in acts which prompted the corporation to sue him—in his individual capacity only—for intentional torts. *Id.* at 129.  The court noted that "[a]n individual director has no authority to take action on behalf of the corporation without the consent of the board of directors," and therefore acts taken against the interests of the corporation are necessarily not within the scope of a director's role. *Id.* at 134.  Because Lomes was sued as an individual, was not authorized to engage in the acts, and did not contend that he carried the acts out with an intent to benefit the corporation, the insurance company had no duty to defend him as a director of the corporation. *Id.* at 135.

In contrast, in *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 108 Cal. Rptr. 3d 657 (2001), a duty to defend did exist where officers/directors sought a defense for acts they allegedly took in order to advance the interests of the corporation.  The policy in that case covered officers "with respect to their duties as [the corporation's] officers" and employees "for acts within the scope of their employment." *Id.* at 511.  The officers specifically pleaded that, in making public statements about the corporation's compliance with certain laws, they sought to advance the corporation's interests. *Id.* Thus, the court concluded that there existed a potential for coverage if the officers were in fact found to be acting in furtherance of corporate interests, and therefore the insurance company owed a duty to defend.  Importantly, the employees in that case were not found to be insured because the policy, unlike with respect to officers and directors, did not cover personal injury *to the insured*; that is, it specifically excluded personal injury actions brought by the named insured against its employees. *Id.* at 512.

-15-

As discussed above, California law does not require that an employee act in furtherance of its employer's interests for his acts to be within the scope of employment. *See Farmers*, 11 Cal. 4th at 1004 ("[A]n employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer."). The Policy at issue contains no language suggesting that claims by the City against its employees or officers are excluded from coverage. Rizzo is sued in his official capacity for acts he carried out while at work that were related to his job duties and that he was able to accomplish by virtue of his authority as Chief Administrative Officer of the City. The fact that Rizzo may have abused that authority does not take all of his acts beyond the scope of employment. *See Mary M.*, 54 Cal. 3d at 218 (explaining that officers are given "considerable public trust and authority" by virtue of their position and therefore abuse of that authority can be within the scope of employment). Indeed, the California Court of Appeal specifically noted that the AG FAC alleges that Rizzo engaged in both *ultra vires* acts **and** acts that may be immune to suit based on legislative or executive discretion. *People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th at 932. The Court finds that there is no material dispute that Rizzo qualifies as an "Insured" under the Policy.[7]

**C.   Whether the Civil Actions Seek Damages**

The parties next dispute whether the Civil Actions seek damages such that they are covered by the Policy. The Policy covers "any claim or suit against [the Insured] seeking damages." (Policy at 2.) Exclusion EE excludes coverage "[f]or injunctions, equitable relief, or any other form of relief other than the payment of money damages." (*Id.* at 18.)

The Policy does not define "damages," and therefore the Court looks to the "ordinary and popular" definition of that term to ascertain its meaning in the Policy. *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 834, 274 Cal. Rptr. 820 (1990) (quoting Cal. Civ.

---

[7] Because the Court finds that Rizzo acted within the scope of his duties as an employee, it need not determine whether he is also an "Insured" as an official "while acting on behalf of the Named Insured." (Policy at 12.)

Code § 1644).  The California Supreme Court has identified several key characteristics of "damages," including that there be "'compensation,' in 'money,' 'recovered' by a party for 'loss' or 'detriment' it has suffered through the acts of another." *Id.* at 826.  The court has expressly rejected a narrow definition of damages focused purely on the distinction between law and equity, and instead has adopted a definition that includes the basic concepts of "loss" and "detriment" but omits "any requirement that the expenditure incurred as a result of such loss be 'compensation' provided to an aggrieved party.'" *Id.* at 826-27.

In contrast to damages, restitution is designed "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, 131 Cal. Rptr. 2d 29 (2003).  Restitution can be a legal, as opposed to an equitable, remedy. *Jogani v. Sup. Ct.*, 165 Cal. App. 4th 901, 910, 81 Cal. Rptr. 3d 503 (2008).  Thus, although restitution is generally distinguished from "compensatory damages," this distinction does not preclude characterization of certain types of restitution as "damages." *AIU Ins. Co.*, 51 Cal. 3d at 835-36 ("Whatever technical distinctions we and other courts have drawn between restitution and compensatory damages in other contexts, in ordinary terms both concepts are within the definition of "damages.").  Nevertheless, the California Supreme Court has held that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired.  Such orders do not award 'damages' as that term is used in insurance policies." *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1266, 10 Cal. Rptr. 2d 538 (9th Cir. 1992) (citing *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 934-35, 214 Cal. Rptr. 567 (1985)).

### 1.   The AG FAC

The AG FAC raises a claim under Cal. Civ. P. Code § 526a for waste of public funds.[8]  Although the text of Section 526a does not specifically authorize recovery of

---

[8] The text of Section 526a states:  "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town,

damages, California courts have awarded "damages" under the statute.  *See, e.g.*, *Stanson v. Mott*, 17 Cal. 3d 206, 226-27, 130 Cal. Rptr. 691 (1976); *see also Los Osos Comm. Servs. Dist. v. Am. Alternative Ins. Corp.*, 585 F. Supp. 2d 1195, 1204 (C.D. Cal. 2008) (discussing the extent to which Section 526a authorizes damages as opposed to purely equitable restitution).  In *Los Osos*, the court explained that the remedy for a Section 526a violation is designed to "protect members of the public from having their monies, paid out in taxes, mismanaged and wasted."  585 F. Supp. 2d at 1205.  Thus, even though the statute does not provide for recovery directly into the pockets of taxpayer plaintiffs, it still provides a remedy consistent with California's definition of "damages."  *Id.* at 1206.

The AG FAC's claim under Section 526a raises a possibility for damages that is alone sufficient to create a duty to defend.  The claim asserts that Rizzo received excess compensation authorized by the council member defendants, and that he in turn authorized excess compensation paid to other defendants.  The Section 526a claim remains potentially viable, as the Court of Appeal instructed the trial court to grant leave to amend on this claim.  *See People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th at 951. Even assuming that return of excess compensation received *by Rizzo* would be equitable restitution, an award to remedy harm to the city arising out of Rizzo's authorization of excess compensation to other city employees would constitute "damages" as contemplated by California courts.  *See generally AIU Ins. Co.*, 51 Cal. 3d at 825-26.

ICSOP next argues that the AG FAC does not seek money damages because the State expressly disclaimed any intent to seek damages in its opposition to Rizzo's demurrer.  (*See* SUF, Ex. O at 9.)  Indeed, the State's opposition asserts that the claims alleged in the AG FAC "are not ones for money or damage subject to the Tort Claims Act."  (*Id.*)  The Court is unpersuaded that this representation has such a limiting effect for two reasons.  First, it appears that the State made that argument in order to establish

---

city or city and county of the state, may be maintained against any officer thereof . . . either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

-18-

that it was not required to present its claims for "money or damages" to the City as required by the California Tort Claims Act, Cal. Gov't Code 905.  The Court of Appeal agreed that the State is not required to comply with this presentation requirement, *not based on the nature of the relief sought*, but because the State brought the action on behalf of the City.  *See People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th at 939 ("It would turn the Tort Claims Act on its head to even suggest that the City is required to file a claim *with itself* before bringing suit against its employees for acting *outside* the scope of their employment.") (emphasis in original).  Thus, the Court of Appeal made no finding as to whether the relief sought is "damages" for purposes of the Policy.

Second, the State's opposition brief contains counsel's arguments and is not a pleading or binding order, and therefore the Court is not inclined to adopt its representations as *necessarily* precluding the possibility of a damages award.  ICSOP argues that a party may "expressly disclaim" its intent to seek damages, but the cases upon which ICSOP relies are distinguishable from the present case.  In *Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109, 112, 120 Cal. Rptr. 2d 827 (2002), the complaint itself expressly disclaimed any interest in damages for personal injuries by the lead plaintiff.  Similarly, in *Sony v. Computer Entm't Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1020 (9th Cir. 2008), the complaint did not allege any facts to support a claim for damages, and the court declined to read such additional, speculative claims into the complaint.  Notably, the *Sony* court stated that the insurer "need not rely on the assertions of Sony's own counsel about potential covered claims in determining whether it has a duty to defend."  *Id.* at 1021.  Indeed, California courts have noted that the "Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage.  A corollary to this rule is that the insured may not speculate about unpled third party claims to manufacture coverage."  *Hurley Constr. Co. v. St.Farm Fire & Casualty Co.*, 10 Cal. App. 4th 533, 538, 12 Cal. Rptr. 2d 629 (1992) (citing *Gray*, 65 Cal. 2d at 276).  Here, while counsel for the State may have disclaimed any intent to seek damages, the fact remains that the AG FAC

contains no such disclaimer.  In light of the fact that, at the least, Section 526a may allow for damages based on facts alleged in the AG FAC, counsel's representations do not "conclusively eliminate the potential for coverage under the policy."[9]  *Md. Casualty Co. v. Nat'l Am. Ins. Co.*, 48 Cal. App. 4th 1822, 1832, 56 Cal. Rptr. 2d 498 (1996).

## 2. The City's Cross-Complaint

Finally, the City's Cross-Complaint seeks general, special, and incidental damages, restitution, punitive damages, declaratory relief, and attorney's fees and costs.  (City's Cross-Complaint at 16.)  The City raises claims for (1) intentional misrepresentation; (2) breach of the covenant of good faith and fair dealing; (3) violation of Cal. Gov't Code § 1090; (4) rescission and restitution of money wrongfully obtained; and (5) declaratory relief.  (*Id.* ¶¶ 24-71.)  After initially agreeing to defend against the City's Cross-Complaint, ICSOP withdrew its defense on April 28, 2011.  (SUF ¶ 19, Ex. Q.)  Although ICSOP's notice of the withdrawal discusses the AG FAC in depth, it does not explain the basis for the withdrawal as to the City's Cross-Complaint.  (*Id.*)  ICSOP's additional letter of October 7, 2011 also does not elaborate on the basis for this withdrawal.  (*Id.*, Ex. R.)  An insurance provider is required to defend against an otherwise covered Cross-Complaint even if no claims in the main action are covered.  *Westfield Ins. Co. v. TWT, Inc.*, 723 F. Supp. 492, 495-96 (N.D. Cal. 1989).

ICSOP contends that the City's Cross-Complaint is not covered because the "damages" it purports to seek are "the very same recovery of 'millions of dollars stolen from the City and its citizens by Robert Rizzo' and 'improperly paid to Rizzo as salary and pension benefits.'"  (ICSOP Opp'n at 19; City's Cross-Complaint at ¶ 1.)  For the

---

[9] As Rizzo also points out, the State's opposition also appears to defend its claim for negligence by asserting that "[P]ublic officials must use 'due care,' i.e., reasonable diligence, in authorizing the expenditure of public funds, and *may be subject to personal liability for improper expenditures made in the absence of such due care*." (SUF, Ex. O at 19; emphasis in original (citing *Stanson*, 17 Cal. 3d at 226-27).)  This would appear to conflict with the purported disavowment of damages contained in the same document and thus further cautions against reliance on counsel's representations on the question of damages.

reasons discussed above, however, at least some of the amounts sought in the State's claim under Cal. Civ. P. Code § 526a  may constitute "damages" as defined in California. *See Los Osos*, 585 F. Supp. 2d at 1206.  Moreover, the City's Cross-Complaint on its face seeks damages.  (City's Cross-Complaint at 16.)   Therefore, there exists at least a possibility that the City's Cross-Complaint raises a claim or suit for damages that is covered under the Policy.

Because both the AG FAC and the City's Cross-Complaint state claims that may lead to an award of damages as defined in California, there is no triable issue that both actions are for "damages" as required under the Policy.

**D.   Exclusions O and P**

Having determined that Plaintiff has established that the claims are within the basic scope of coverage, the Court turns next to the question of whether ICSOP has established that the claims are specifically excluded under the Policy.  ICSOP argues that Exclusions O and P bar a defense of all of the actions.  Exclusion O precludes a defense for claims "[a]rising out of an alleged willful commission of a crime by [the Insured] or other dishonest, fraudulent, or malicious act."  (Policy at 16.)  Exclusion P precludes a defense for claims "[a]rising out of [the Insured's] wrongful act for gain, profit, or advantage to which you are not legally entitled."  (*Id.*)

Rizzo first argues that the Exclusions cannot be read to apply prior to any final adjudication of the claims because they refer not to allegations but to acts that are "dishonest, fraudulent, or malicious" or "wrongful act[s] for gain, profit, or advantage." (*See* Rizzo Mot. at 19.)  But the definition of "wrongful act" includes "actual *or alleged* error or misstatement, omission, negligent act, or breach of duty."  (Policy at 9; emphasis added.)  Moreover, to require a final adjudication before applying the exclusions would render superfluous the Policy's clear admonition, "We will not *defend or* pay under this Policy for claims or suits against you" that fall within the exclusions, because a defense is by definition only warranted prior to final adjudication.  (*Id.* at 13.)

Although exclusions are generally construed narrowly, *MacKinnon*, 31 Cal. 4th at 648,, California courts interpret the term "arising out of" broadly. *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 262, 141 Cal. Rptr. 3d 649, 673 (2012), *as modified on denial of reh'g* (June 12, 2012). As used in various types of insurance provisions, including exclusions, the term "links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy." *Id.* The term is generally understood to mean "'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with' . . . .'" *Davis v. Farmers Ins. Grp.*, 134 Cal. App. 4th 100, 107, 35 Cal. Rptr. 3d 738, 744 (2005) (citing *Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal. App. 4th 492, 503-04, 20 Cal. Rptr. 2d 376 (1993)); *see also Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 830, 49 Cal. Rptr. 3d 570 (2006) (interpreting exclusion of claims "arising out of breach of any contract" to preclude a duty to defend against tort and breach of fiduciary duty claims that were dependent on and inseparable from contract claims).

The AG's FAC raises claims that theoretically need not arise out of dishonesty, fraud, malice, or wrongful act for gain, profit, or advantage. For example, Rizzo is alleged to have negligently enriched himself at the expense of the City and negligently approved contracts of others without adequately reviewing their terms. (AG FAC ¶¶ 1, 3.) He is also alleged to have wasted public funds under Cal. Code Civ. P. § 526a which, by its letter, does not require a showing of fraud or dishonesty. *See Chiatello v. City and Cnty. of San Francisco*, 189 Cal. App. 4th 472, 482, 117 Cal. Rptr. 3d 169 (2010) (quoting *Sundance v. Mun. Ct.*, 42 Cal. 3d 1101, 1138-39, 232 Cal. Rptr. 814 (1986) (explaining that "waste" includes public spending that is "completely unnecessary, or useless, or [that] provides no public benefit" without being fraudulent or collusive).

But where allegations in a complaint are "inseparably intertwined" with noncovered conduct, there is no coverage even where the nature of a particular claim appears to be covered. *See Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598,

615, 135 Cal. Rptr. 2d 131, 142-43 (2003).  In *State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 280, 95 Cal. Rptr. 3d 845 (2009), Mintarsih, an in-home worker, sued her former employers, the insured, for false imprisonment, fraud, wage and hour violations, and negligence.    Notwithstanding that Mintarsih's complaint alleged negligence, the court found that no duty to defend existed because "the [employers'] negligence was so closely related to their intentional misconduct as to constitute the same course of conduct."[10]  *Id.* at 289.

Similarly, in *Medill*, the court declined to find a duty to defend for tort and breach of fiduciary duty claims because the policy excluded claims arising out of breach of contract, and all of the claims alleged arose out of duties and obligations that the Insured assumed under bond contracts.    143 Cal. App. 4th at 830.    Although the court acknowledged that exclusions are construed narrowly, it nevertheless found that the "arising out of" language operated to take the claims beyond the scope of coverage.  *See id.* at 829.    Courts have also declined to find coverage for negligent acts that are inseparably intertwined with acts of molestation, sexual harassment, and other intentional misconduct.  *See Uhrich*, 109 Cal. App. 4th at 610 (declining to find a duty to defend under policy covering "accidents" where facts demonstrated that the insured intended to cause the harm alleged); *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal.App.4th 1595, 1608, 18 Cal. Rptr. 2d 692 (1993) ("[I]f in the course of inseparably intentional sexual molestation or harassment of the victim, the wrongdoer so negligently behaved as to cause the victim additional physical or emotional harm, there is no duty to defend,

---

[10] *Mintarsih* dealt with the operation of Cal. Ins. Code § 533, which prohibits coverage for willful acts.  Although the parties do not raise Section 533 in their briefs, analysis of that section is analogous to the present case because the claims for negligence are closely related to the claims arising out of dishonesty, fraud, or self-enrichment, which are excluded under Exclusions O and P.   The Court notes that a recent California appellate decision, *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1417-18, 156 Cal. Rptr. 3d 771 (2013), discusses Section 533, but that discussion has no bearing on whether the covered and noncovered conduct here are "inseparably intertwined."

even though mere negligence not occurring during an inseparable course of intentional conduct might theoretically be covered.").

Here, although the AG FAC alleges negligent acts, the gravamen of that action is that Rizzo and his cohorts knowingly and deceptively received and authorized excessive and wasteful salaries and benefits, and that they intentionally concealed these acts from the public. (*See* AG FAC ¶¶ 1-6.) Rizzo and the other defendants were allegedly "aware that their compensation was excessive and wasteful, and thus crafted their employment contracts to conceal their full compensation from the public." (*Id.* ¶ 4.) In addition, Rizzo allegedly "told the Council Member defendants that if the City became a charter city, they could increase their own salaries and not be restricted by the statutory salary guidelines," prompting the council to convert the City to a charter city. (*Id.* ¶ 58.) Each of the claims stated in the AG FAC incorporates these allegations. It is therefore clear from the AG FAC as a whole that the claims arise out of a deliberate and conscious agreement between Rizzo and his co-defendants—an "I scratch your back, you scratch mine" arrangement, so to speak—none of which can be cleanly severed from any lesser claims of mere negligence or waste. Thus, even to the extent that any alleged claims by their technical nature do not involve unlawful self-dealing, those claims are so "inseparably intertwined" with Rizzo's wrongful act for gain, profit, or advantage to which he was not entitled that they do not take the suit as a whole outside the scope of Exclusion P. *See Mintarsih*, 175 Cal. App. 4th at 289. Accordingly, is the Court finds no material dispute that Exclusion P precludes any possibility of coverage of the AG's action.

Moreover, the claims in the AG FAC clearly arise out of alleged acts that were, at the very least, dishonest. The allegations do not state that Rizzo merely accidentally or unreasonably failed to review contracts before approving them—they unequivocally state that he "crafted . . . contracts to conceal [his] full compensation from the public" by taking specific, deceptive steps. (AG FAC ¶¶ 4, 58.) That Rizzo might be ultimately held liable for breach of some duty, without any dishonest motive or intent, does not take

-24-

the AG FAC beyond the scope of acts "arising out of" dishonesty, fraud, malice, or intentional self-enrichment. *Uhrich*, 109 Cal. App. 4th at 610 (rejecting the argument that the Insured was covered because he may have been found merely negligent insofar as "[s]uch arguments misconstrue the 'accident' requirement in standard general liability policies"). The AG FAC contains no allegations to support any claim that does not "arise out of" alleged acts of dishonesty. Thus, the AG FAC contains no claims or allegations that are separate and independent of acts falling within Exclusion O.

The City's Cross-Complaint arises out of the same events as the AG FAC. The City's Cross-Complaint contains no allegations of negligence, and in fact explicitly alleges that Rizzo intentionally executed his own excessive salary and benefit contracts, deceived the public, and manipulated the City's supplemental retirement plan to his benefit. (City's Cross-Complaint ¶¶ 1 ("Rizzo embezzled, stole, and misappropriated millions of dollars in City funds by a variety of means. . . ."), 16 ("[Rizzo] attempted to hide the full extent of his salary by preparing a total of five (5) separate employment agreements. . . .").) Accordingly, for the same reasons that the AG FAC is barred from coverage by Exclusions O and P, there is no duty to defend against the City's Cross-Complaint.

**E.     Because No Duty to Defend the Civil Actions Exists, ICSOP Has No Duty to Prosecute Rizzo's Cross-Complaint or Defend the Criminal Actions**

Because both the AG FAC and the City's Cross-Complaint are excluded by Exclusions O and P, Rizzo is not entitled to a defense of those actions under the Policy. Accordingly, ICSOP is not required to defend Rizzo in the Criminal Actions or to pay costs associated with his cross-complaint against the City as "reasonable and necessary" expenses in furtherance of his defense. *See James 3 Corp. v. Truck Ins. Exchange*, 91 Cal. App. 4th 1093, 1104, 111 Cal. Rptr. 2d 181 (2001) (absent specific language in the policy, an insurer has no duty to affirmatively prosecute claims of the insured against third parties); *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 61, 70 Cal.

1  Rptr. 2d 118 (1997) (noting insurer's duty to defend all "reasonable and necessary
2  effort[s] to avoid or at least minimize liability").

3        The Court notes that, even if ICSOP did owe a duty to defend the civil actions,
4  Rizzo would still not be entitled to a defense of the Criminal Actions.   The Policy
5  provides that ICSOP has a duty to defend any "'claim' or 'suit' seeking damages covered
6  by the terms and conditions of the Policy."   (Policy at 1.)  The Policy limits "suits" to
7  civil proceedings, and it defines "claim" as a "demand for money."  (*Id.* at 3, 8.)  The
8  parties do not dispute that the Criminal Actions are neither civil in nature nor actions for
9  money damages.  Accordingly, ICSOP has no duty to defend the Criminal Actions under
10  the plain language of the policy.  *See* Cal. Civ. Code § 1644 ("The words of a contract are
11  to be understood in their ordinary and popular sense . . . .").

12        Rizzo argues that ICSOP must nevertheless defend the Criminal Actions as a
13  "reasonable and necessary effort to avoid or at least minimize liability" in the civil
14  actions.  *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 61 (1997).  In
15  *Aerojet*, the plaintiff sought coverage for expenses incurred in the course of a site
16  investigation into its discharge of hazardous substances and the environmental
17  consequences of those discharges.  *Id.* at 46.   The investigation was conducted in
18  connection with a civil lawsuit filed by the owners of nearby properties.  *See id.* at 45-46.
19  The California Supreme Court held that the insurer did have a duty to cover the site
20  investigation costs as long as the investigation was objectively reasonable and necessary
21  to mitigate the cost of defending the original action.  *Id.* at 77.   District courts have also
22  found a duty to defend in parallel proceedings such as administrative investigation and
23  patent infringement prosecutions.  *See NextG Networks, Inc. v. One Beacon Am. Ins. Co.*,
24  Case No. CV 11-05318, 2012 WL 440885 at  *3 (N.D. Cal. Feb. 10, 2012) (extending
25  *Aerojet* to require coverage of legal fees incurred in the course of California Public
26  Utilities Commission investigation even though the investigation itself was not a "suit" as
27  defined under the policy); *Kla-Tencor Corp. v. Travelers Indem. Co. of Il.*, Case No. CV
28

02-05641, 2004 WL 1737297 at *4 (N.D. Cal. Aug. 4, 2004) (applying *Aerojet* to costs incurred in prosecution of patent as strategy to defend against disparagement claims).

Nonetheless, the application of the "reasonable and necessary costs" rule to defense of the Criminal Actions would run afoul of Cal. Ins. Code § 533.5, which provides that "[n]o policy of insurance shall provide, or be construed to provide, any duty to defend, as defined in subdivision (c), any claim in any criminal action or proceeding or in any action or proceeding brought pursuant to [the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*] in which the recovery of a fine, penalty, or restitution is sought by the Attorney General, any district attorney, any city prosecutor, or any county counsel, notwithstanding whether the exclusion or exception regarding the duty to defend this type of claim is expressly stated in the policy." The language of this statute is clear: California law does not permit the imposition of a *duty* to defend state criminal actions.

Relying on *Bodell v. Walbrook Ins. Co.*, 119 F.3d 1411 (9th Cir. 1997), Rizzo argues that California courts have limited the operation of Section 533.5(b) to "cases where an insured is seeking indemnification" and "only with respect to claims brought under the [UCL]." (Plf.'s Reply at 22.) Rizzo misreads *Bodell*. In *Bodell*, the court examined whether an insurer had a duty to defend against an investigation and eventual criminal action against the plaintiff by the United States Postal Inspection Service, a federal administrative agency. 119 F.3d at 1413. The court concluded that a reasonable reading of the statute "precludes the tender of a defense in all criminal actions and certain civil actions brought by the state, county or city officials" but not, as in that case, by federal officials. *Id.* at 1417 (citing *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 837 n.15, 274 Cal. Rptr. 820 (1990) ([O]n its face this provision does not apply to relief sought by the *federal* government.")). The court reasoned that Section 533.5 in its original form was intended to bar coverage for "all civil and criminal actions" brought by state prosecuting authorities, and that it was later amended to apply only to criminal proceedings and actions under the UCL. *Id.* at 1417. Contrary to Rizzo's assertions, the

statute's legislative history shows that it was originally intended to apply to all actions, criminal and civil, brought by *state* prosecuting authorities, and the amendment discussed in *Bodell* did not disturb the broad prohibition on a duty to defend in state criminal actions.[11]  *Id.* at 1417.

In California, "it is well-established that an insurer is not required to provide a criminal defense to an insured under a liability policy obligating the insurer to pay 'damages' for which the insured is found liable."  *Stein v. Int'l Ins. Co.*, 217 Cal. App. 3d 609, 614, 266 Cal. Rptr. 72 (1990).  Although Rizzo attempts to distinguish the cases cited by ICSOP, he cites to no case in which a California court has imposed a duty to defend against criminal charges in a state court as reasonable and necessary to the defense of a covered action.  *See id.*; *see also United Pac. Ins. Co. v. Hall*, 199 Cal. App. 3d 551, 556, 245 Cal. Rptr. 99 (1988) (declining to impose a duty to defend a parallel proceeding in juvenile court and noting that "the insurer has no obligation to defend an insured in criminal . . . proceedings . . .").  In light of the plain meaning of Cal. Ins. Code § 533.5, the Court finds that no duty to defend the Criminal Actions would exist, even if the Civil Actions were not otherwise excluded from the Policy.

//
//
//
//

---

[11]  On August 18, 2013, Rizzo filed a supplemental brief notifying the Court of a recent California appellate decision, *Mt. Hawley Ins. Co.*, 215 Cal. App. 4th 1385.  *Mt. Hawley* does not change the result here.  The *Mt. Hawley* court agreed with the Ninth Circuit's decision in *Bodell* and held that Cal. Ins. Code § 533.5 "does not preclude an insurer from agreeing to provide a defense for criminal actions against its insured *brought by federal prosecutors*."  215 Cal. App. 4th at 1390.  Like *Bodell*, *Mt. Hawley* did not disrupt the well-settled rule that, under Section 533.5, an insurer may not be required to provide a defense in a criminal action brought by state law enforcement officials.  Because the criminal action in *Mt. Hawley* was federal, the court concluded that the insurance company did have a duty to defend in accordance with the terms of the contract.  *Id.* at 1423.

**E.** **ICSOP is Entitled to Summary Judgment on Rizzo's Claims for Breach of Contract for the Duty to Indemnify and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Where there is no duty to defend, there can be no duty to indemnify. *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 961, 103 Cal. Rptr. 2d 672 (2001) ("It is . . . well settled that because the duty to defend is broader than the duty to indemnify, a determination that there is no duty to defend automatically means there is no duty to indemnify.") (internal quotation marks and citation omitted). Thus, ICSOP is also entitled to summary judgment on Rizzo's claim for breach of contract as to the duty to indemnify.  Moreover, because there is no potential for coverage under the Policy, there can be no breach of the covenant of good faith and fair dealing. *See Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235, 83 Cal. Rptr. 3d 410 (2008) ("As a general rule . . . there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy.").   Accordingly, ICSOP is also entitled to summary judgment on that claim.

## V.

## CONCLUSION

In light of the foregoing, ICSOP's Motion for Summary Judgment is **GRANTED** in full.  Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED:  August 30, 2013

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE