SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Ezra D. Landes (SBN 253052)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
ezra@spertuslaw.com
amy@spertuslaw.com

Attorneys for Plaintiff Robert A. Rizzo

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. RIZZO, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation, and CHARTIS CLAIMS, INC., a Delaware corporation.<br><br>　　　　　　Defendants. | Case No. CV-12-04347-DMG (FMOx)<br><br>Hon. Dolly M. Gee<br><br>**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER (DOC. NO. 54) AND JUDGMENT (DOC. NO. 55) (FRCP 59(e), 60(b); L.R. 7-18); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Concurrently filed with Request for Judicial Notice]*<br><br>Date:　　October 18, 2013<br>Time:　　9:30 a.m.<br>Crtrm:　　7 |

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 18, 2013 at 9:30 a.m., or as soon thereafter as this matter may be heard before the Honorable Dolly M. Gee in Courtroom 7 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff Robert A. Rizzo ("Mr. Rizzo") will and hereby does move the Court, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Central District of California Local Rule 7-18, to reconsider its Order granting Defendant ICSOP's Motion for Summary Judgment (Docket No. 54) and Judgment (Docket No. 55). Mr. Rizzo respectfully requests that the Court reconsider its ruling, alter or amend its Judgment and relieve Mr. Rizzo from the Order and Judgment on the grounds that the Court "fail[ed] to consider material facts presented to the Court before such decision" (L.R. 7-18), and "committed clear error" resulting in a decision that is "manifestly unjust." *School Dist. No.1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Mr. Rizzo's concurrently filed Request for Judicial Notice, the Court's file in this matter, and such other oral and documentary evidence as may be presented at the hearing on this Motion.

This Motion is made following a conference of counsel pursuant to L.R. 7-3, which occurred on September 12, 2013.

Dated: September 19, 2013     SPERTUS, LANDES & UMHOFER, LLP

By: /S_____
James W. Spertus
Ezra D. Landes
Attorneys for Plaintiff Robert A. Rizzo

ii.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..................................................................................... 1

II. DISCUSSION ............................................................................................ 3

    A. RULES AUTHORIZING A MOTION FOR RECONSIDERATION... 3

    B. ICSOP WAIVED ITS RIGHT TO RELY ON EXCLUSIONS
       O AND P IN CONNECTION WITH ITS DUTY TO *DEFEND*........... 4

    C. THE DISMISSAL WAS PREMATURE BECAUSE THE COURT
       HAS NOT RESOLVED DAMAGE CLAIMS THAT WERE
       INDEPENDENT OF THE DUTY TO DEFEND................................... 6

    D. THE AG FAC CONTAINED CLAIMS THAT WERE NOT
       "INSEPARABLY INTERTWINED" WITH THE CLAIMS
       ALLEGING DISHONESTY, FRAUD, MALICE, OR WRONGFUL
       ACT FOR GAIN, PROFIT, OR ADVANTAGE. .................................. 8

    E. BECAUSE EXCLUSIONS O AND P DO NOT APPLY, MR.
       RIZZO IS ENTITLED TO A DEFENSE OF THE CRIMINAL
       ACTIONS....................................................................................... 14

III. CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Aerojet-General Corp. v. Transport Indem. Co.*,
   17 Cal.4th 38 (1997)..................................................................................3, 15

*B & E Convalescent Center v. State Compensation Ins. Fund*,
   8 Cal.App.4th 78 (1992).............................................................................3, 15

*Buss v. Super. Ct. (Transamerica Ins. Co.)*,
   16 Cal.4th 35 (1997).................................................................................10, 14

*Canadian Ins. Co. of Cal. v. Rusty's Island Chip Co.*,
   36 Cal.App.4th 491 (1995)..........................................................................1, 5

*CNA Casualty of Cal. v. Seaboard Surety Co.*,
   176 Cal.App.3d 598 (1986)............................................................................10

*Foremost Ins. Co. v. Wilks*,
   206 Cal.App.3d 251 (1988).............................................................................5

*Miller v. Elite Ins. Co.*,
   100 Cal.App.3d 739 (1980).............................................................................5

*Mirpad, LLC v. Cal. Ins. Guarantee Assn.*,
   132 Cal.App.4th 1058 (2005).........................................................................10

*Montrose Chem. Corp. v. Super. Ct.*,
   6 Cal.4th 287 (1993) .....................................................................................10

*Mt. Hawley Insurance Co. v. Lopez*,
   215 Cal.App.4th 1385 (2013).........................................................................14

*People ex rel. Harris v. Rizzo*,
   214 Cal.App.4th 921 (2013).............................................................................9

*School Dist. No.1J, Multnomah County v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993).............................................................................4

*State Farm Gen. Ins. Co. v. Mintarsih*,
   175 Cal. App. 4th 274 (2009).........................................................................13

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

**STATUTES AND RULES**

Fed.R.Civ. Proc. § 59(e) ................................................................................... 3

Fed.R.Civ. Proc. § 60(b) ................................................................................... 4

C.D. Cal. L.R. 7-18 ........................................................................................... 4

Cal. Ins. Code § 533.5 (2013) ......................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On August 30, 2013, the Court issued an Order (Doc. No. 54) granting Defendant ICSOP's motion for summary judgment on the narrow ground that Exclusions O and P of the underlying Policy relieved ICSOP from its duty to defend Mr. Rizzo. Entering Judgment (Doc. No. 55) based upon this Order (Doc. No. 54) was clear error for several reasons.

First, ICSOP waived its right to assert Exclusions O and P as bases for denying a defense by never denying Mr. Rizzo a defense and never withdrawing a defense in any coverage determination based on Exclusions O and P. ICSOP withdrew its defense based <u>solely</u> on Exclusion EE of the Policy, and in its withdrawal letter <u>confirmed</u> that it was only reserving its right to deny Mr. Rizzo *indemnification* based on Exclusions O and P. (Doc. No. 20-17 (ICSOP's April 28, 2011 withdrawal letter) at p.4 ("Furthermore, to the extent <u>any damages awarded</u> fall within the exclusions relating to crime and fraudulent acts or personal profit (Exclusions O and P), coverage would not apply."). This is a clear waiver of ICSOP's right to contest its duty to <u>defend</u> Mr. Rizzo based on Exclusions O and P. *Canadian Ins. Co. of Cal. v. Rusty's Island Chip Co.*, 36 Cal.App.4th 491, 498 (1995) ("Canadian's failure to reserve its right to contest coverage under the policy's exclusions of coverage for willful acts or trademark infringement waived its right to assert those exclusions as a basis for denying coverage in the federal action."). This is why Mr. Rizzo argued to the Court that the merits of the underlying litigation would have to be resolved before application of Exclusions O and P could be evaluated. Respectfully, the Court erred in relying on Exclusions O and P to find that ICSOP had no duty to *defend* Mr. Rizzo because those exclusions were reserved by ICSOP for indemnification analysis only.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Second, even if ICSOP had not waived its right to argue in its summary judgment motion that Exclusions O and P applied to its duty to *defend* Mr. Rizzo, by exercising its discretion to defend Mr. Rizzo during phases of this case ICSOP voluntarily assumed an obligation to *pay* for the services it expressly agreed in writing to provide.  Mr. Rizzo's Complaint asserted valid claims related to ICSOP's refusal to honor its obligation to pay for the defense it agreed in writing to provide, and those claims were unrelated to the duty-to-defend issues.  Specifically, ICSOP miscalculated the amount of the self-insured retention Mr. Rizzo was obligated to pay, and improperly, unilaterally and retroactively set an hourly rate for counsel that was unacceptable to counsel, was rejected by counsel, and was grossly below market rates and what is reasonable under the circumstances of this case.  ICSOP never retained alternate counsel for Mr. Rizzo, and an insurance company cannot <u>agree</u> to pay for a defense and then <u>refuse</u> to pay for it.  All of these claims against ICSOP are unrelated to the duty-to-defend issue, and Mr. Rizzo is entitled to pursue these claims whether or not ICSOP had a duty to defend Mr. Rizzo.  It was clear error for the Court to enter judgment for ICSOP without allowing Mr. Rizzo to pursue these unrelated claims.

Third, the Court erred in ruling that Exclusions O and P applied to the negligence claims that were *successfully* defended in the Civil Actions, which dismissals were *affirmed* by the Court of Appeal.  The dismissed claims could not be "inseparably intertwined" with the other allegations of excluded wrongful conduct that the Court believes fall within the scope of Exclusions O and P.  At a minimum, the Court's reasoning would support finding no duty to defend a Second Amended Complaint that may be filed in the future, but the reasoning does not support finding no duty to defend the AG FAC through the date the Court of Appeal affirmed the dismissal with prejudice of the allegations that Mr. Rizzo wastefully and negligently expended City funds when he approved the

2.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

contracts of Angela Spaccia and Police Chief Randy Adams. The AG FAC did not contain *any* allegations establishing a relationship between the dismissed negligence claims and the other claims. As set forth in great detail below, the allegations relating to the approval of contracts are *not* related to any other allegations of wrongdoing in the AG FAC and are, therefore, "separable."

Fourth, because ICSOP waived the argument that Exclusions O and P apply to its *defense* obligations, rather than its *indemnity* obligations, Mr. Rizzo is entitled to defense costs associated with the Criminal Actions as "reasonable and necessary" costs incurred to defend the Civil Actions. *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61 (1997). The Court's Order only considered whether the law imposes a "duty to defend" the Criminal Actions, but failed to consider that Mr. Rizzo is not seeking to impose such a duty on ICSOP, and is only seeking reimbursement of "defense costs" incurred by him in connection with his defense of the Criminal Action because Mr. Rizzo <u>must</u> defend the Criminal Actions "to avoid or at least minimize liability" in the Civil Actions. *Id.* Mr. Rizzo is entitled to "defense costs" under the Policy, which is not a defined term (Docket No. 20-1 (Policy), at p.1 (Sections I.A.2, I.A.3, I.B.1 (insuring agreements); p.8 (Section II.HH) (defining "ultimate net loss")), and any ambiguities in a policy are to be resolved in Mr. Rizzo's favor. *B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 99-100 (1992). The defense of the Criminal Actions is a necessary part of the defense of the Civil Actions under the unique facts of this case, as discussed on detail below.

## II. DISCUSSION

### A. RULES AUTHORIZING A MOTION FOR RECONSIDERATION.

A party may seek reconsideration of a ruling on a summary judgment motion pursuant to Federal Rules of Civil Procedure 59(e) (motion to alter or

3.

amend a judgment) or 60(b) (relief from a final judgment, order, or proceeding) and Central District of California Local Rule 7-18, which provides "[a] motion for reconsideration of the decision on any motion may be made . . . on the grounds of . . . a manifest showing of a failure to consider material facts presented to the Court before such decision." (L.R. 7-18). "Reconsideration is appropriate if the district court . . . committed clear error or the initial decision was manifestly unjust." *School Dist. No.1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Respectfully, reconsideration of the Court's Order (Docket No. 54) and Judgment (Docket No. 55) is necessary in this case because the Court committed "clear error" and "fail[ed] to consider material facts presented to the Court."

### B. ICSOP WAIVED ITS RIGHT TO RELY ON EXCLUSIONS O AND P IN CONNECTION WITH ITS DUTY TO *DEFEND*.

The Court denied Mr. Rizzo's motion and granted ICSOP's motion on the narrow ground that Exclusions O and P apply, but the Court failed to consider the material fact that ICSOP never denied Mr. Rizzo a defense, and never withdrew its defense, based on Exclusions O and P. ICSOP withdrew its defense based solely on Exclusion EE of the Policy and its claim that the AG "does not seek money damages from Mr. Rizzo." (Docket No. 20-17 (ICSOP's April 28, 2011 withdrawal letter) at p.4). In its withdrawal letter, ICSOP confirmed that it was only reserving its right to deny Mr. Rizzo *indemnification* based on Exclusions O and P. (*Id.* ("Furthermore, to the extent any damages awarded fall within the exclusions relating to crime and fraudulent acts or personal profit (Exclusions O and P), coverage would not apply."). This is why Mr. Rizzo argued to the Court that the merits of the underlying litigation would have to be resolved before application of Exclusions O and P could be evaluated. It was clear error for the Court to cite policy exclusions not preserved by ICSOP in its coverage determination as a basis for finding no duty to *defend*.

4.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

California courts have clearly held that a reservation of rights letter limited to certain grounds <u>waives</u> the insurer's right to contest coverage on other grounds known to the insurer at the time <u>the letter</u> was written. *Canadian Ins. Co. of Cal. v. Rusty's Island Chip Co.*, 36 Cal.App.4th 491, 498 (1995) (where letter failed to mention exclusions from coverage that insurer later relied upon at trial) ("Canadian's failure to reserve its right to contest coverage under the policy's exclusions of coverage for willful acts or trademark infringement waived its right to assert those exclusions as a basis for denying coverage in the federal action."); *Foremost Ins. Co. v. Wilks*, 206 Cal.App.3d 251, 258 (1988) ("Foremost in its September 26 letter did not reserve the future right to deny coverage under this exclusion and thereby waived its right to assert the exclusion as a defense to coverage."); *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739 (1980) ("If a liability insurer with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving such notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage.").

Mr. Rizzo filed the instant action because ICSOP acted in bad faith when it <u>withdrew</u> a defense based on Exclusion EE of the Policy, and the Court has now ruled that Exclusion EE does <u>not</u> provide ICSOP with a basis for withdrawing a defense. (Order at p.21, lns.7-9 ("Because both the AG FAC and the City's Cross-Complaint state claims that may lead to an award of damages as defined in California, there is no triable issue that both actions are for 'damages' as required under the Policy.").) ICSOP then argued for the first time in its summary judgment motion, after the instant action was filed, that it has no duty to *defend* Mr. Rizzo based on Exclusions O and P, even though to this day ICSOP has never once taken that position in a coverage determination sent to Mr. Rizzo. Mr. Rizzo agued this point in his opposition to ICSOP's summary

5.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

judgment motion, but the point was not considered by the Court. (Rizzo's Opposition to MSJ (Docket No. 21), at p.17, ln.26-p.18, ln.2 ("Although ICSOP did not rely on 'Exclusions O and P' when it initially agreed to defend Mr. Rizzo, and also did not rely on these exclusions as a basis to subsequently withdraw its defense, ICSOP now asserts that it can exercise its discretion to deny Mr. Rizzo a defense based on these exclusions.").)

It should not be relevant to this action whether an attorney for ICSOP, after the fact, decides to invoke Exclusions O and P as justification for ICSOP's bad faith refusal to deny Mr. Rizzo a defense based on a different exclusion. The evidence in this case established that in April 2011, Mr. Rizzo was denied a defense based on Exclusion EE, not Exclusions O and P. ICSOP reserved its right to rely upon Exclusions O and P for purposes of denying Mr. Rizzo *indemnification* only, but it did not reserve the right to deny Mr. Rizzo a *defense* based on Exclusions O and P, and therefore ICSOP waived the right to deny a defense based on Exclusions O and P. ICSOP should not be allowed to invoke Exclusions O and P for the first time in a summary judgment motion in this action.

### C. THE DISMISSAL WAS PREMATURE BECAUSE THE COURT HAS NOT RESOLVED DAMAGE CLAIMS THAT WERE INDEPENDENT OF THE DUTY TO DEFEND.

Even if ICSOP could rely upon Exclusions O and P, which it cannot, it was error for the Court to dismiss the entire action because there are damage claims resulting from ICSOP's failure to pay Mr. Rizzo's counsel that the parties agreed to resolve after the duty to defend issue was resolved by the Court. As the Court recognized in its Order, "Exclusions O and P both allow ICSOP to pay for defense costs of such claims and suits in its discretion, provided that the Insured will reimburse ICSOP in the event of an adverse judgment." (Order at p.4, lns.15-17 (emphasis added).) On December 16, 2010, ICSOP exercised this

6.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

discretion and expressly agreed in writing to defend Mr. Rizzo in the Civil Actions. (Order at p.6, lns.19-20.) Additionally, on July 27, 2012, ICSOP expressly agreed in writing to defend the appeal of the trial court's dismissal of the AG FAC. (Order at p.6, lns.26-27.) ICSOP, however, then failed to pay the amounts due to Mr. Rizzo's counsel, and to this date has never paid counsel amounts due. The Court's August 30, 2013 Order and Judgment erroneously dismissed Mr. Rizzo's entire Complaint without considering that Mr. Rizzo has asserted valid claims seeking damages resulting from ICSOP's failure to pay amounts due, regardless of ICSOP's duty to defend Mr. Rizzo.

Mr. Rizzo's Complaint seeks declarations from the Court regarding: (1) the amount of the hourly rate that ICSOP should have paid to Mr. Rizzo's counsel during the period of time that ICSOP agreed to defend Mr. Rizzo; (2) the amount that ICSOP should have paid during the period of time between the tender to ICSOP and the time when ICSOP gave notice to Mr. Rizzo's counsel that it would defend Mr. Rizzo; (3) the percentage of the $250,000 self-insured retention paid in full by Mr. Rizzo that Mr. Rizzo was responsible for paying, and the amount he is now entitled to receive from ICSOP as a reimbursement for overpaying the self-insured retention; (4) the amount of the hourly rate to be applied to the $250,000 self-insured retention; and (5) the amount still owed by ICSOP that ICSOP never paid despite its express promise to pay. (Complaint, ¶ 68 & p.31-32 (prayer for relief)).

Regardless of whether ICSOP had a *duty* to defend Mr. Rizzo, ICSOP *agreed* to defend Mr. Rizzo on December 16, 2010 and then withdrew its defense on April 28, 2011. (Order, p.6, lns.21-23.) ICSOP also *agreed* to defend Mr. Rizzo on July 27, 2012 with regard to the AG's appeal, and then refused to pay one penny for the work done after the briefs were filed, including preparing for and attending oral argument on the appeal. Mr. Rizzo is entitled to proceed on

7.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

1  his claims against ICSOP for failing to make these promised payments,
2  regardless of ICSOP's duty to defend Mr. Rizzo under the Policy.

### D. THE AG FAC CONTAINED CLAIMS THAT WERE NOT "INSEPARABLY INTERTWINED" WITH THE CLAIMS ALLEGING DISHONESTY, FRAUD, MALICE, OR WRONGFUL ACT FOR GAIN, PROFIT, OR ADVANTAGE.

In its Order, the Court held that, under Exclusion O, ICSOP is not required to defend a claim "[a]rising out of an alleged willful commission of a crime by [an Insured] or other dishonest, fraudulent, or malicious act" and Exclusion P does not require ICSOP to defend claims "[a]rising out of [the Insured's] wrongful act for gain, profit, or advantage to which you are not legally entitled." (Order at p.21, lns.14-18).  The Court held that although the "AG's FAC raises claims that theoretically need not arise out of dishonesty, fraud, malice, or wrongful act for gain, profit, or advantage" (Order at p.22, lns.16-17) "those claims are so 'inseparably intertwined' with Rizzo's wrongful act for gain, profit, or advantage to which he was not entitled that they do not take the suit as a whole outside the scope of Exclusion P."  (Order at p.24, lns.17-20).  The Court also held that "[t]he AG FAC contains no allegations to support any claim that does not 'arise out of' alleged acts of dishonesty.  Thus, the AG FAC contains no claims or allegations that are separate and independent acts falling within Exclusion O."  (Order at p.25, lns.5-7).

This ruling constitutes clear error for two reasons.  First, the Court misstated the facts because Mr. Rizzo obtained final judgments in his favor from the Court of Appeal on the AG's negligence and fraud claims.  The trial court's dismissal with prejudice of the AG's second cause of action in the AG FAC, which sought "to hold Rizzo liable for negligence in approving the employment contracts of Spaccia and Adams," was affirmed by the Court of Appeal, which held that "these acts are within the authority of the defendants; [and] there is <u>no</u>

8.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

1  liability for their negligent approval of contracts." *People ex rel. Harris v. Rizzo*,
2  214 Cal.App.4th 921, 943 (2013).  The Court of Appeal specifically held that
3  "[t]he negligence cause of action . . . is barred by legislative immunity." *Id.* at
4  947.  The AG's third cause of action for fraud, which sought to hold Mr. Rizzo
5  liable for the misleading labeling of an ordinance, was similarly dismissed with
6  prejudice on appeal.  The Court of Appeal specifically held that the cause of
7  action "is wholly barred by the legislative privilege." *Id.*  Consequently, all
8  defense costs incurred by Mr. Rizzo through the date of the Court of Appeal
9  ruling *must* be reimbursed by ICSOP because Exclusions O and P cannot
10 possibly apply to these dismissed claims, and a carrier is not permitted to parse
11 defense costs among covered and non-covered claims.  In its August 30, 2013
12 Order, however, the Court erroneously stated that "[o]n March 20, 2013, a
13 California Court of Appeal reversed the Superior Court's dismissal and
14 remanded the case with instructions to grant leave to amend as to all claims
15 except claim (5)."  (Order, p.5, lns.7-9 (citing *Harris*, 214 Cal.App.4th 921,
16 951).)  This is a clear factual misstatement by the Court.  *Harris*, 214 Cal.
17 App.4th at 951 ("Leave to amend the complaint was properly denied with respect
18 to (1) the second cause of action, for negligence; [and] (2) the third cause of
19 action, for fraud.").).

20       Second, the dismissed claims were clearly "separable" from the other
21 claims in the FAC, which the Court found excluded by Exhibits O and P, and
22 because the dismissed claims <u>are</u> separable from the AG's other claims alleging
23 dishonesty, fraud, malice, or wrongful act for gain, profit or advantage, it was
24 clear error for the Court to grant summary judgment for ICSOP on the entire
25 case.  The AG has not filed any Second Amended Complaint.  If the AG does
26 file a Second Amended Complaint in the future, Mr. Rizzo may or may not
27 tender that complaint to ICSOP in light of the Court's ruling on Exclusions O
28 and P, but the Civil Actions have thus far ended with the Court of Appeal

9.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

decision *affirming* the dismissal of two causes of action with prejudice that cannot possibly fall within the scope of Exclusions O and P.  All of the defense costs in the Civil Actions to date, therefore, must be paid by ISCOP because if even a single claim in a multi-count complaint is potentially covered, the insurer must defend the entire action.  *Buss v. Super. Ct. (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48-49 (1997).  As the Court found, the AG FAC sought to hold Mr. Rizzo personally liable for damages based on allegedly excessive compensation paid to Ms. Spaccia and Police Chief Adams that was allegedly negligently approved by Mr. Rizzo.  (Order at p.18, lns.16-19).  In its Order, the Court held that "[i]t is clear from the AG FAC as a whole that the claims arise out of a deliberate and conscious agreement between Rizzo and his co-defendants—an 'I scratch your back, you scratch mine' arrangement, so to speak—none of which can be cleanly severed from any lesser claims of mere negligence or waste."  (Order at p.24, lns.12-16).  However, the AG FAC did not contain any allegations of such arrangements between Mr. Rizzo and Ms. Spaccia or between Mr. Rizzo and Police Chief Adams, nor does it contain any allegations that in any way connect the dismissed Spaccia/Adams negligence and waste allegations to the other allegations that may fall within Exclusions O and P.  The allegations involving Mr. Rizzo's purportedly negligent approval of the Adams and Spaccia contracts were dismissed with prejudice, and are therefore clearly "separable."[1]

---

[1] As long as these claims are *potentially* separable, ICSOP has a duty to defend the entire action. *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 606 (1986) ("[T]he duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is not covered."); *Mirpad, LLC v. Cal. Ins. Guarantee Assn.*, 132 Cal.App.4th 1058, 1068 (2005) (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 289 (1993)) ("It is settled that 'the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it *cannot*.'"); *id.* at 300

With regard to the allegations of Mr. Rizzo's allegedly wasteful and negligent approval of Police Chief Adams's contract, the severability of these claims is not based on mere speculation, and the AG FAC did not allege that "the claims arise out of a deliberate and conscious agreement between Rizzo and" Police Chief Adams. The AG made no such allegations and Police Chief Adams was not criminally charged by the District Attorney with any crime. On October 3, 2011, Police Chief Adams sued the City of Bell for indemnity and alleged the following:

> 6. On or about April 11, 2009, Adams, who was at that time serving his seventh year as the Police Chief for the City of Glendale, publicly announced his retirement from the Glendale Police Department. At or around that time, the City called Adams, expressing its interest in employing Adams as Police Chief for the City. Adams informed the City that, after a 37-year career in public service, he wanted to retire permanently from employment and was not interested in pursuing other opportunities. Notwithstanding Adams' response, the City persistently pursued Adams, indicating that it needed someone with his credentials, experience and long-standing reputation to serve as its Police Chief in order to fix the numerous problems with the City's Police Department. Although still intent on permanent retirement, Adams informed the City that he would consider coming out of retirement to work for the City if the terms of such employment were fair and adequate in light of his circumstances, his experience and reputation, and numerous other considerations. During these talks Adams interacted primarily with Robert A. Rizzo ("Rizzo"), the City's Chief Administrative Officer, who represented to Adams that he had the authority to recruit and hire employees for the City, and Pier' Angela Spaccia ("Spaccia"), Assistant to the City's Chief Administrative Officer.
>
> 7. Soon thereafter, Adams entered into contract negotiations with the City for the position of Police Chief. Adams engaged in an arm's length negotiation with the City at the City's request through Spaccia, relating to the terms of his employment contract. This negotiation spanned over two months and included several drafts of employment contracts.

---

("[A] bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty.").

11.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

> 8. In the course of his due diligence, Adams asked Spaccia whether Rizzo had the legal authority to enter into such a contract on behalf of the City. Spaccia informed Adams that Rizzo had such authority and that his employment contract was enforceable and non-fraudulent. Thus, Adams did not, and had no reason to believe, that there was any impropriety surrounding his hiring, contract, or salary relating thereto.
>
> 9. Additionally, Adams contacted the Los Angeles County District Attorneys' office to inquire as to the propriety of the City's offer. Personnel from the Los Angeles County District Attorneys' office encouraged Adams to accept the City's offer of employment.
>
> 10. On May 29, 2009, following months of negotiations and due diligence, and for adequate consideration as set forth therein, Adams signed an employment contract with the City to serve as its Police Chief, and subsequently began his employment with the City. . . .
>
> 11. Adams was formally recognized and welcomed at a City Council meeting in August of 2009 at which time no concerns were raised regarding his employment.

(Rizzo's Request for Judicial Notice (concurrently filed), Ex. A, at p.9-10, ¶¶ 6-11). Separately, in December 2011, Ms. Spaccia filed a sworn declaration in the Criminal Action, in which she stated the following:

> 2. I was acting as an intermediary in the negotiations between Robert Rizzo, the CAO of the City of Bell, and Randy Adams, then the Chief of Police of the City of Glendale.
>
> 3. During these negotiations, Randy Adams told me that he had spoken with Steve Cooley, the District Attorney of Los Angeles, and discussed his plan of becoming the Chief of Police of the City of Bell. Randy Adams told me that he wanted to check out the City of Bell to make sure there were no issues and that he discussed with Cooley the salary he would receive. Cooley responded that he knew of no problems at Bell and that if they wanted to pay you that much money you should take it.
>
> 4. At the same time, Randy Adams told me that he had also checked with someone at the FBI. Randy Adams used a specific name but I cannot recall the name at this time. Randy Adams told me that, according to the FBI official with whom he spoke that there were no problems at the City of Bell of which the FBI official knew.

(*Id.* at p.5, ¶¶ 2-4).

Clearly, the mere existence of these statements by Police Chief Adams and Ms. Spaccia, regardless of their truth, confirms that the AG's claims alleging that

12.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

1  Mr. Rizzo wastefully and negligently approved Police Chief Adams's contract
2  are at least potentially severable from all other claims of wrongdoing by Mr.
3  Rizzo alleged in the AG FAC.  Mr. Rizzo approved a high salary for Police Chief
4  Adams based on a number of circumstances that had nothing to do with Mr.
5  Rizzo receiving any favors in return from Police Chief Adams.  More
6  importantly, the AG does not *allege* any connection whatsoever between the
7  alleged negligence and wasteful spending occurring in connection with Police
8  Chief Adams's contract and the other wrongdoing alleged in the FAC, and this
9  Court held that the allegations in the FAC are what determine whether
10 Exclusions O and P apply.

11 In this case, it is pure speculation and error to conclude that the allegations
12 involving Mr. Rizzo's approval of Ms. Spaccia's and Police Chief Adams's
13 contracts are "inseparably intertwined" with the other allegations of wrongdoing
14 contained in the FAC.  This case is wholly unlike the forced servitude or
15 molestation cases cited by the Court as a basis for making its "inseparably
16 intertwined" finding.  (Order, p. 23, *citing State Farm Gen. Ins. Co. v. Mintarsih*,
17 175 Cal. App. 4th 274, 280, 95 Cal. Rptr. 3d 845 (2009) (where employer found
18 liable for false imprisonment negligently failed to provide medical care during
19 period of false imprisonment).)  Negligent acts can certainly be incidental to acts
20 involving willful misconduct, but the dismissed negligence, waste and fraud
21 claims from the AG FAC were not inseparably intertwined with other allegations
22 of willful misconduct.  Unlike the negligence claim at issue in *Mintarsih,* which
23 occurred during the period of false imprisonment in that case, the Police Chief
24 Adams contract was not tied by the AG to any other allegation of willful
25 misconduct alleged anywhere else in the AG FAC, and that dismissed claim, at a
26 minimum, is separable from the other claims and not intertwined with the claims
27 alleging dishonesty, fraud, malice, or wrongful act for gain, profit, or advantage.
28 ICSOP must at a minimum, therefore, defend Mr. Rizzo in the Civil Action

13.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

through the date that the Court of Appeal affirmed the dismissal with prejudice of the negligence and waste claims involving approval of Ms. Spaccia's and Police Chief Adams's contracts. *Buss v. Super. Ct. (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48-49 (1997) ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not.").

### E. BECAUSE EXCLUSIONS O AND P DO NOT APPLY, MR. RIZZO IS ENTITLED TO A DEFENSE OF THE CRIMINAL ACTIONS.

Because ICSOP did not withdraw its defense based upon Exclusions O and P, Mr. Rizzo is entitled to a defense of the Criminal Action as "reasonable and necessary" costs incurred to defend the Civil Actions. In its Order, the Court pointed out that Mr. Rizzo "cites to no case in which a California court has imposed a duty to defend against criminal charges in a state court as reasonable and necessary to the defense of a covered action." (Order at p.28, lns.9-11). However, there are no known cases that involve the unique facts present here where the AG has expressly argued that "judicial economy" would be served by staying the Civil Actions because a conviction in the Criminal Action will "resolve the civil action without further litigation." (Docket No. 20-19 at p.56-57). It is the AG's position that Mr. Rizzo's conviction in the Criminal Action will result in civil liability. Mr. Rizzo therefore <u>must</u> defend the Criminal Actions "to avoid or at least minimize liability" in the Civil Actions.

The Court also held that, under Insurance Code section 533.5, an insurance policy cannot impose a "duty to defend" a criminal action.[2] However, Mr. Rizzo

---

[2] The Court did not accept ICSOP's argument that Section 533.5 prohibits the defense of any criminal actions as a matter of public policy, and the law is clear that there is no such public policy in California. *Mt. Hawley Insurance Co. v. Lopez*, 215 Cal.App.4th 1385, 1417 (2013) ("[T]here is no public policy in

14.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*

1 is not seeking to impose upon ICSOP a "duty to defend" the Criminal Actions.
2 Rather, Mr. Rizzo is seeking reimbursement for "defense costs" associated with
3 the parallel Criminal Actions because Mr. Rizzo's defense of the Criminal
4 Actions "amount[s] to a reasonable and necessary effort to avoid or at least
5 minimize liability." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th
6 38, 61 (1997).

7     Mr. Rizzo is entitled to "defense costs" under the Policy, and "defense
8 costs" is not a defined term. (Docket No. 20-1 (Policy), at p.1 (Sections I.A.2,
9 I.A.3, I.B.1 (insuring agreements); p.8 (Section II.HH) (defining "ultimate net
10 loss")). Any ambiguities in a policy are to be resolved in the insured's favor.
11 *B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78,
12 99-100 (1992). Resolving ambiguities in Mr. Rizzo's favor, under the unique
13 facts of this case, requires finding that the term "defense costs" includes the
14 defense costs associated with the Criminal Actions, at least through the date that
15 the Court of Appeal affirmed the dismissal with prejudice of the negligence and
16 fraud allegations.

17 **III.   CONCLUSION**

18     For the foregoing reasons, Mr. Rizzo respectfully requests that the Court
19 grant his Motion and alter and/or amend its Order and Judgment accordingly.

20 Dated:  September 19, 2013    SPERTUS, LANDES & UMHOFER, LLP

22     By:  /S_____
23        James W. Spertus
       Ezra D. Landes
24        Attorneys for Plaintiff Robert A. Rizzo

---

California against insurers contracting to provide a defense to insureds facing criminal charges, as opposed to indemnification for those convicted of criminal charges."); *id.* at 1423 (No "California court ever held that it is against public policy for an insurer to agree to provide a defense to criminal charges.").

15.

*PLAINTIFF ROBERT A. RIZZO'S MOTION FOR RECONSIDERATION*